1   Ira D. Kharasch (CA Bar No. 109084)
    Scotta E. McFarland (CA Bar No. 165391)
2   Victoria A. Newmark (CA Bar No. 183581)
    Pachulski Stang Ziehl & Jones LLP
3   10100 Santa Monica Boulevard, 11th Floor
    Los Angeles, California  90067-4100
4   Telephone: 310/277-6910
    Facsimile: 310/201-0760
5   Email: ikharasch@pszjlaw.com
          smcfarland@pszjlaw.com
6         : vnewmark@pszjlaw.com
7
8   *[Proposed] Attorneys for Debtor and*
    *Debtor in Possession/Petitions to Practice*
9   *in Nevada are Pending*

    Sallie B. Armstrong (NV Bar No. 1243)
    Downey Brand
    427 West Plumb Lane
    Reno, Nevada 89509
    Telephone: 775/329-5900
    Facsimile: 775/786-5443
    Email: sarmstrong@downeybrand.com

    *[Proposed] Attorneys for Debtor and*
    *Debtor in Possession*

10
11              **UNITED STATES BANKRUPTCY COURT**
12
              **FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| 13  In re: | Case No. 10-51432-GWZ |
| 14  SPECIALTY TRUST, INC., | Chapter 11 |
| 15                          Debtor. | |
| 16  In re | Case No. 10-51437-GWZ |
| 17  SPECIALTY ACQUISITION CORP, | Chapter 11 |
| 18                          Debtor. | |
| 19  In re | Case No. 10-51440-GWZ |
| 20  SAC II, | Chapter 11 |
| 21                          Debtor. | |

22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | |
|---|---|
| In re | Case No. 10-51441-GWZ |
| SAC D-1, LLC, | Chapter 11 |
| Debtor. | **DECLARATION OF NELLO GONFIANTINI III IN SUPPORT OF THE FOLLOWING: (1) DEBTORS' MOTION FOR ORDER DIRECTING JOINT ADMINISTRATION OF RELATED CHAPTER 11 CASES PURSUANT TO FED. RULE BANKR. P. 1015(b) AND LOCAL RULE 1015(b); (2) MOTION OF SPECIALTY TRUST FOR ORDER LIMITING SCOPE OF NOTICE; AND (3) DEBTORS' MOTION FOR ORDER (A) AUTHORIZING DEBTORS TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001** |

I, Nello Gonfiantini III, declare:

1.     I am the current chairman and chief executive officer of the above-captioned debtors and debtors in possession Specialty Trust, Inc., *et al.* (the "Debtors"). Except as otherwise indicated, the statements made herein are based on my personal knowledge or from my review of the Debtors' books and records.

2.     I make this declaration in support of the (1) *Debtors' Motion for Order Directing Joint Administration of Related Chapter 11 Cases Pursuant to Fed. Rule Bankr. P. 1015(b) and Local Rule 1015(b)* (the "Joint Admin Motion"); (2) *Motion of Specialty Trust for Order Limiting Scope of Notice* (the "Motion to Limit Notice"); and (3) *Debtors' Motion for Order (a) Authorizing Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (b) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (the "Cash Collateral Motion" and together with the Joint Admin Motion and the Motion to Limit Notice, the "Motions"). Each capitalized term not otherwise defined herein shall have the meaning ascribed in each of the applicable Motions.

3.     Specialty Trust, Inc. ("Specialty Trust") is a privately held mortgage finance company that acquires and holds, in a tax-advantaged real estate investment trust or REIT structure, mortgage loans and mezzanine loans secured by property located primarily in Nevada, Arizona and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

California. I founded Specialty Trust in 1997. Specialty Trust is held by approximately 435 shareholders, most of whom consist primarily of individuals, family trusts, and local businesses' pension and profit sharing plans. The total capital invested by the shareholders is approximately $170 million.[1]

4.      Loans are generally made at low loan-to-value ratios, usually 50% or less. Most loans have terms of one to three years. The majority of Specialty Trust's mortgage loan balances are secured by first deeds of trust on the underlying real property, with the remaining mortgage loan balances secured by junior liens. Specialty Trust's mortgage loans may be secured by mortgages on unimproved as well as improved real property and non-income producing as well as income-producing real property.

5.      Specialty Trust currently holds loans with a total amount owing from its borrowers of approximately $167 million, which loans have a book value of approximately $121 million. Specialty Trust also owns outright or through its subsidiaries REO property (property obtained through foreclosures or similar actions from its loan portfolio) with a current market value of approximately $55 million. Approximately 94% of these latter REO properties are held by three debtor subsidiaries of Specialty Trust, which include Specialty Acquisition Corp., SAC II, and SAC D-1, LLC.[2] Specialty Acquisition Corp. and SAC II are wholly owned subsidiaries of Specialty Trust, and SAC D-1, LLC is a wholly owned subsidiary of Specialty Acquisition Corp.

6.      Specialty Trust works in conjunction with three non-debtor affiliated entities that provide primary services to Specialty Trust. These entities include Specialty Financial Corp., which is responsible for Specialty Trust's day-to-day management and operations, Specialty Mortgage Corp., which originates and services certain of Specialty Trust's real estate loans, and Specialty Capital, LLC, a registered broker/dealer providing brokerage services to individual and institutional customers. I hold, directly or indirectly, 100% of the ownership interest in each of these three entities.

---

[1] I personally own approximately 5.9% of such shares.
[2] Specialty Trust transfers most of the REO properties to its subsidiaries for insurance purposes as well as to maintain compliance with regulations governing REITs.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

7.       In return for a management fee, Specialty Financial Corp. ("SFC") manages and runs Specialty Trust's day-to-day business operation and funds virtually all of Specialty Trust's overhead (except for one part-time employee), including the retention and payment of the individuals that manage Specialty Trust's business operations, and the payment of the rent and utilities on the building occupied by Specialty Trust.  As part of its general management duties, SFC evaluates prospective real estate loans, generates loan originations and manages the loan and asset portfolio of Specialty Trust.  This general management arrangement is fairly typical in a REIT structure, and has been in place between Specialty Trust and SFC, or SFC's predecessor,[3] for approximately 12 years.

8.       Specialty Trust currently maintains a $29.25 million term loan (the "Term Loan") which includes three participating commercial banks of which US Bank is the agent bank.  The Term Loan is secured by liens in certain qualified real estate and loans.  The non-default rate of interest under the Term Loan is the sum of (i) LIBOR plus 3%, plus (ii) 5% per annum of PIK interest.

9.       Additionally, Specialty Trust has $36.9 million outstanding under a secured and collateralized investment note program.  This note program contains individual notes (the "Notes") with maturities ranging from 1 month to 10 years and annual interest rates varying from 4.5% to 8.5%.  The Notes are comprised of two series of notes issued under two separate indentures, in aggregate amounts outstanding of $1.46 million (the "Old Notes") and $35.44 million (the "New Notes").  The Old Notes and the New Notes are secured separately by eligible assets comprised of real estate, loans, and other collateral that are pledged separate from the Term Loan collateral.

10.      Specialty Trust also has approximately $29 million in unsecured subordinated notes (the "Subordinated Notes") maturing on January 30, 2037.

11.      The Term Loan is secured by qualified real estate loans and REOs with a current fair market value of $86.52 million.  The approximate $1.46 million owed to holders of the Old Notes is secured by an REO with a current fair market value of approximately $6.4 million.  The approximate $35.44 million owed to the holders of the New Notes is secured by real estate loans and REOs with a

---

[3] Prior to March 31, 2006, Specialty Mortgage Corp., which I also owned, was the entity that managed Specialty Trust's operations.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

4

current fair market value of $59.89 million. The Debtors' secured debt is apparently also secured by additional qualified assets in the form of stock in subsidiaries. The Debtors are presently investigating the status and beneficiary of the stock pledge. Debtor subsidiaries Specialty Acquisition Corp., SAC D-1, LLC, and SAC-II, and non-debtor subsidiaries JFP 1330, LLC, 5th & Lincoln, LLC, Oak Creek Condominiums, LLC are guarantors of the Term Loan.

12.    The real estate finance industry has experienced sharp contraction since 2007, when the national real estate market collapsed. Overall, there have been escalating rates of foreclosures on properties and many REITs, mortgage finance companies and real estate lenders have been forced to close operations. All players within Specialty Trust's target regions have largely been affected by the economic crisis leaving a considerable void in these markets.

13.    Specialty Trust has experienced a 37.2% decline in the value of its real estate loan portfolio between December 31, 2008 and December 31, 2009, while its REO portfolio has grown by 75.7%. It is my belief that the loan portfolio has stabilized and does not expect further material write downs to the portfolio beyond the year end 2009. Furthermore, Specialty Trust's management team has identified and is in a position to capitalize on undervalued opportunities derived from the recent real estate market fallout.

14.    Despite extensive and long-term negotiations with US Bank, Specialty Trust was not able to negotiate a restructuring of the US Bank debt that would give it the flexibility and requisite liquidity it needed to get through the current difficult economic environment. In light of a pending default under the Term Loan that would have occurred on April 20, 2010, which would give US Bank the immediate right to sweep all of the Debtors' cash, an event that would put the Debtors out of business, the Debtors were forced to file these chapter 11 cases. The chapter 11 will give the Debtors the breathing room to enhance their liquidity by selling certain of their assets, and give them time to prepare and confirm a plan of reorganization that pays all of their secured debt in full, which will allow the Debtors to maintain shareholder value.

15.    The Debtors have an immediate and critical need to use cash collateral in order to pay wages, management fees and other operating expenses and expenses of administration of the Cases. The Debtors' access to sufficient use of cash collateral is vital to the Debtors' operating their

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

business (as well as the business of non-Debtors) as a going concern and maximizing the value of their assets and estates.  Without the use of cash collateral, the Debtors cannot continue to operate or administer the Cases, and the Debtors and their estates would suffer immediate and irreparable harm.

16.    The Debtors require the use of cash collateral, in accordance with the budget attached hereto as Exhibit A to continue to fund operations and restructuring expenses in order to preserve the going concern value of their business and the businesses of their affiliates.

17.    It is my belief that the use of cash collateral should be permitted because of the equity cushion that exists in the assets pledged to the Prepetition Secured Lenders.  As noted above, the Term Loan, the Old Notes, and the New Notes are secured by different real estate interests.  The Debtors have obtained recent third-party appraisals of the real estate in which the Debtors have interests that have been pledged to the Prepetition Secured Lenders, copies of which appraisals have been provided to the Indenture Trustee and U.S. Bank, as applicable, and are summarized in Exhibit B hereto.

18.    The Debtors anticipate continuing operations while restructuring in chapter 11. Moreover, it is the Debtors' intent to actively market and sell owned real estate during these Cases and to use the cash generated to make new loans.  To this end, 33% of the REO in the portfolio has been listed with real estate sales professionals and is being actively marketed.  In addition, 27% of the REO portfolio is being assessed by real estate sales professionals with marketing and listing proposals expected in the next 30 days.  The remaining 40% of the REO portfolio is two properties, one is being held pending resolution of a lawsuit involving previous owner and title company; the other property is part of a larger master planned community with ongoing negotiations with other lender/owners to purchase the Debtors' interest.  The Debtors have also retained the services of two nationally recognized loan marketing companies.  These two companies have begun the marketing efforts for two of the more significant loans in the Debtors' portfolio.  The remainder of the portfolio is being assessed and marketing plans will be developed as appropriate.

19.    With respect to budgeted REO-related expenditures, the Debtors anticipate that additional expenditures may be required if the Debtors take title to certain resort property collateral located in Sedona, Arizona during the Budget period.  The loan secured by the Sedona property is

6

80662-001\DOCS_LA:219157.2

non-performing, and the Debtors have recorded a notice of default. However, until foreclosure proceedings are completed, it is unknown what maintenance costs will be required. It is my belief that a special variance of up to $250,000 for potential foreclosure and maintenance expenditures related to the Sedona property is necessary and appropriate.

20.      The four (4) Debtors are seeking an order that authorizes the joint administrative of their four related chapter 11 cases. The Debtors, as stated previously, are affiliated entities with financial affairs and business operations that are closely related. There are approximately five hundred (500) creditors, equity security holders and other interested parties in the Debtors' chapter 11 cases. Based upon discussions with counsel, I anticipate that numerous notices, applications, motions, other pleadings, hearings, and orders in these cases will affect all of the Debtors. With four affiliated debtors, each with its own case docket and approximately five hundred total potential creditors and interest holders, the failure to administer these cases jointly would result in numerous duplicative pleadings being filed and served. Such duplication of substantially identical documents would be extremely burdensome and wasteful of the Debtors' cash as well as that of other interested parties and would be confusing to parties being served with multiple copies of the same pleadings. Further, joint administration will also protect parties in interest by ensuring that such parties in interest in each of the Debtors' respective chapter 11 cases will be apprised of the various matters before the Court in all of these cases.

21.      Also, because there are just fewer than five hundred creditors, interest holders and other parties in interest in the Specialty Trust case alone, service of pleadings filed in that case should be limited as requested in the Motion to Limit Notice in order to help control the cost and administrative burden on Specialty Trust. It is my opinion, based upon my knowledge of the business, that many of the creditors would not be interested in receiving copies of all the Limited Notice Matters but would find service of all such motions on all parties wasteful.

*[Balance of page intentionally blank]*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

1    I declare under penalty of perjury that the foregoing is true and correct and that this

2  declaration was executed this 3rd day of May, 2010 at Reno, Nevada.

3

                                    Nello Gonfiantini III

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

80662-001\DOCS_LA:219157.2

## Exhibit A

### Budget

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

**DIP Operating Budget**

**SPECIALTY TRUST, INC.**

| | Week Beginning | | | | | |
|---|---|---|---|---|---|---|
| | 26-Apr | 3-May | 10-May | 17-May | 24-May | 31-May |
| **Beginning Cash Balance** | $ 1,582,384 | $ 1,702,918 | $ 1,746,345 | $ 1,744,345 | $ 1,737,845 | $ 1,737,845 |
| Interest Revenue | 4,183 | | | | | 4,134 |
| Principal Repayments on Mortgage Loans Held for Investment | | 43,427 | | | | |
| Sale of Real Estate Owned | | | | | | |
| Other Cash Receipts | 116,351 (1) | | | | | |
| **Total Cash Receipts** | $ 120,534 (1) | $ 43,427 | $ - | $ - | $ - | $ 4,134 |
| **Cash Disbursements** | | | | | | |
| Payroll, Servicing Dept. | | | | | | |
| Management Fees | | | | 2,000 | | 2,000 |
| Traditional Legal | | | | | | |
| Accounting and Tax Services; Moss Adams 2009 audit & tax | | | | | | |
| Real Estate & Related Professionals-New West Development | | | | | | |
| Other REO & Foreclosure Expense | | | | | 6,500 | 38,809 (6) |
| Investment in Real Estate Owned and Loan fundings | | | | | | |
| Financing Provided for Sale of REO | | | | | | |
| Directors Fees | | | | | | |
| **Interest Expense** | | | | | | |
| **Bankruptcy Related Expenses** | | | | | | |
| Professional Fees | | | | | | |
| US Trustee Fees | | | | | | |
| **Total Disbursements** | $ - | $ - | $ 2,000 | $ 6,500 | $ - | $ 40,809 |
| **Ending Cash Balance** | $ 1,702,918 | $ 1,746,345 | $ 1,744,345 | $ 1,737,845 | $ 1,737,845 | $ 1,701,170 |

Notes:
(1) $99k from proceeds of foreclosure of supplemental 2522 collateral
(2) Sale of Moreau property
(3) Partial sale of Hitt property
(4) Sale of 2522 property
(5) Hitt property foreclosure expense
(6) Sedona foreclosure expense $15K, other REO maintenance expense $10K
(7) Waterfront Sun West Bank payment
(8) Nadador loan funding equal to loan paydown

80562-001\DOCS_LA:219223v1

DIP Operating Budget.xls

**SPECIALTY TRUST, INC.**

**DIP Operating Budget**

| | 7-Jun | 14-Jun | 21-Jun | 28-Jun | 5-Jul | 12-Jul |
|---|---|---|---|---|---|---|
| Beginning Cash Balance | $ 1,701,170 | $ 1,738,597 | $ 1,502,014 | $ 1,462,014 | $ 1,439,148 | $ 1,320,325 |
| **Cash Receipts** | | | | | | |
| Interest Revenue | | | | | 45,927 | |
| Principal Repayments on Mortgage Loans Held for Investment | 43,427 | | | 4,134 | | |
| Sale of Real Estate Owned | | | | | | |
| Other Cash Receipts | | | | | | |
| **Total Cash Receipts** | $ 43,427 | $ - | $ - | $ 4,134 | $ 45,927 | $ - |
| **Cash Disbursements** | | | | | | |
| Payroll, Servicing Dept. | | 2,000 | | 2,000 | | 2,000 |
| Management Fees | | 221,583 | | | | 221,819 |
| Traditional Legal | 6,000 | | | | 6,000 | |
| Accounting and Tax Services; Moss Adams 2009 audit & tax | | | 15,000 | | | |
| Real Estate & Related Professionals-New West Development | | 13,000 | 25,000 | | | 13,000 |
| Other REO & Foreclosure Expense | | | | 25,000 (6) | | 25,000 |
| Investment in Real Estate Owned and Loan fundings | | | | | | |
| Financing Provided for Sale of REO | | | | | 50,000 | |
| Directors Fees | | | | | | |
| **Interest Expense** | | | | | | |
| **Bankruptcy Related Expenses** | | | | | | |
| Professional Fees | | | | | 108,750 | |
| US Trustee Fees | | | | | | |
| **Total Disbursements** | $ 6,000 | $ 236,583 | $ 40,000 | $ 27,000 | $ 164,750 | $ 261,819 |
| **Ending Cash Balance** | $ 1,738,597 | $ 1,502,014 | $ 1,462,014 | $ 1,439,148 | $ 1,320,325 | $ 1,058,506 |

Notes:
(1) $99k from proceeds of foreclosure of supplemental 2522 collateral
(2) Sale of Moreau property
(3) Partial sale of Hitt property
(4) Sale of 2522 property
(5) Hitt property foreclosure expense
(6) Sedona foreclosure expense $15K, other REO maintenance expense $10K
(7) Waterfront Sun West Bank payment
(8) Natas/air loan funding equal to loan paydown

# SPECIALTY TRUST, INC.

**DIP Operating Budget**

| | 19-Jul | 26-Jul | 2-Aug | 9-Aug | 16-Aug | 23-Aug |
|---|---|---|---|---|---|---|
| Beginning Cash Balance | $ 1,058,506 | $ 1,043,506 | $ 1,016,506 | $ 915,567 | $ 658,748 | $ 643,748 |
| Interest Revenue | | | | | | |
| Principal Repayments on Mortgage Loans Held for Investment | | | 45,927 | 2,000 | | |
| Sale of Real Estate Owned | | | 4,134 | | | |
| Other Cash Receipts | | | | | | |
| **Total Cash Receipts** | $ - | $ - | $ 50,061 | $ - | $ - | $ - |
| | | | | | | |
| **Cash Disbursements** | | | | | | |
| Payroll, Servicing Dept. | | 2,000 | | 2,000 | | |
| Management Fees | | | | 221,819 | | |
| Traditional Legal | 15,000 | | 6,000 | | 15,000 | |
| Accounting and Tax Services: Moss Adams 2009 audit & tax | | | | 20,000 | | |
| Real Estate & Related Professionals–New West Development | | | | 13,000 | | |
| Other REO & Foreclosure Expense | | 25,000 (6) | | | | |
| Investment in Real Estate Owned and Loan fundings | | | | | | |
| Financing Provided for Sale of REO | | | | | | 46,443 (7) |
| Directors Fees | | | | | | |
| | | | | | | |
| Interest Expense | | | | | | |
| | | | | | | |
| **Bankruptcy Related Expenses** | | | | | | |
| Professional Fees | | | 145,000 | | | |
| US Trustee Fees | | | | | | |
| | | | | | | |
| **Total Disbursements** | $ 15,000 | $ 27,000 | $ 151,000 | $ 256,819 | $ 15,000 | $ 46,443 |
| **Ending Cash Balance** | $ 1,043,506 | $ 1,016,506 | $ 915,567 | $ 658,748 | $ 643,748 | $ 597,305 |

Notes:
(1) $99K from proceeds of foreclosure of supplemental 2522 collateral
(2) Sale of Moreau property
(3) Partial sale of Hiti property
(4) Sale of 2522 property
(5) Hiti property foreclosure expense
(6) Setona foreclosure expense $15K; other REO maintenance expense $10K
(7) Waterfront Sun West Bank payment
(8) Narrador loan funding equal to loan paydown

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## Exhibit B

**Collateral Valuation Summaries**

1

Deutsche Bank
Secured Investment Notes

REOs

| Debtor Owner | Development | Real Property Description | Real Property Current Appraised Value | Date of Appraisal | Appraiser | Percent Owned | Book Value of Real Property Collateral (where appraised value is less than face value of the note, 5% deducted from appraised value) |
|---|---|---|---|---|---|---|---|
| SAC II | Symphony | 100 Acres vacant Residential land in Sierra Vista, CA | $ 1,800,000.00 | 1/19/2010 | NAI Horizon | 100% | $ 1,710,000.00 |
| Specialty Acquisition | Consolidated | 54 Partially improved residential lots in Sparks, NV | $ 2,430,000.00 | 12/17/2009 | J. Campbell, MAI | 100% | $ 2,308,500.00 |
| SAC II and Specialty Trust *** | Duck Creek | 113 acres vacant residential land in Stockton, CA | $ 9,450,000.00 | 1/7/2010 | R. Dozier MAI | 100% | $ 8,977,500.00 |
| SAC II | Coolidge 140 | 140 acres farm land in Coolidge, AZ | $ 3,500,000.00 | 10/29/2009 | NAI Horizon | 100% | $ 3,325,000.00 |
| Specialty Acquisition | Cotton Lane | 15 acres Commercial zoned in Goodyear, AZ | $ 1,350,000.00 | 12/2/2009 | NAI Horizon | 100% | $ 1,282,500.00 |
| SAC II | Prime West Jordanelle * | 400 acres in master planned community in Park City, UT | $ 15,350,000.00 | 2/10/2010 | R. Dozier MAI | 100% | $ 12,017,908.83 |
| Specialty Trust | Mohave Vista ** | 73 acres vacant land zoned recreation in Havasu City, AZ | $ 1,690,000.00 | 8/20/2009 | LS Appraisal Services | 100% | $ 1,240,478.69 |
| SACII | 2522 Properties | residential undeveloped land entitled for 4 lots | $ 615,000.00 | 3/19/2010 | M. Frauenthal & Assoc. | 100% | $ 584,250.00 |
| SACII | Oakcreek Condo LLC | .98 acres unimproved multifamily land in Phoenix, AZ | $ 3,440,000.00 | 4/12/2019 | R. Dozier MAI | 100% | $ 3,268,000.00 |
| Specialty Acquisition | 5th & Lincoln, LLC **** | 1.60 acres vacant multifamily land in Phoenix, AZ | $ 6,400,000.00 | 4/12/2019 | R. Dozier MAI | 100% | $ 6,080,000.00 |
| **Total:** | | | $ 46,025,000.00 | | | | $ 40,794,137.52 |

80662-002\DOCS_LA:219242v1

\* Prime West Jordanelle book value is the loan amount plus an assessment owed.

\*\* Mohave Vista book value is the loan amount plus accrued interest

\*\*\* Specialty Trust purchased small parcel in the middle of the collateral for the Duck Creek loan to create contiguous project.

\*\*\*\* this asset is pledged as a loan to Deustch Bank for "old indenture".

80662-002\DOCS_LA:231924v1

80652-002\DOCS_LA:219241v2

Deutsche Bank
Secured Investment Notes

Pledged Loans

| Borrower | Loan Balance | ST Participation | Loan Type | Real Property Description | Appraised Value | Date of Appraisal | Appraiser | Senior Encumbrances | lower of appraisal or loan amount (net of senior encumbrances) | Book Value of Loan |
|---|---|---|---|---|---|---|---|---|---|---|
| Vero Desert Lakes | $ 7,500,000.00 | $ 7,500,000.00 | Mezz | 2300 acres undeveloped residential land in Coachella, Ca | $ 51,450,000.00 | 12/7/2009 | R. Dozier, MAI | $ 37,757,500.00 | $ 7,500,000.00 | $ 7,947,145.00 |
| Waterfront Partners LLC | $ 6,860,000.00 | $ 6,860,000.00 | 2nd d/t | 3.5 acres vacant land zoned mixed use in Downtown, Reno, NV | $ 18,000,000.00 | 1/11/2010 | J. Campbell, MAI | $ 4,000,000.00 | $ 6,860,000.00 | $ 6,860,000.00 |
| Nadador, LLC | $ 5,036,318.00 | $ 5,036,318.00 | 2nd d/t | 32 Home Fractional project in LaQuinta, CA | $ 23,557,000.00 | 12/1/2009 | R. Dozier, MAI | $ 14,800,000.00 | $ 5,036,318.00 | $ 2,792,669.00 |
| Nadador, LLC | $ 5,200,000.00 | $ 5,200,000.00 | Mezz | 32 Home Fractional project in LaQuinta, CA | $ 23,557,000.00 | 12/1/2009 | R. Dozier, MAI | $ 27,146,968.00 | $ - | $ - |
| Desert Land LLC | $ 5,000,000.00 | $ 871,000.00 | 1st d/t | 3.35 acres vacant com'l land in Las Vegas, NV | $ 60,300,000.00 | 6/1/2009 | The DeFederico Group | | $ 871,000.00 | $ 871,000.00 |
| | $ 29,596,318.00 | $ 25,467,318.00 | | | $ 176,864,000.00 | | | $ 83,704,468.00 | $ 20,267,318.00 | $ 18,470,814.00 |

US BANK

## REOs

| Debtor Owner | Development | Real Property Description | Real Property Current Appraised Value | Date of Appraisal | Appraiser | Percent Owned | Book Value of Real Property Collateral (where appraised value is less than face value of the note, 5% deducted from appraised value) |
|---|---|---|---|---|---|---|---|
| SAC II | Sierra Vista | 1811 acres in Sierra Vista, AZ | $ 8,150,000.00 | 3/11/2010 | NAI Horizon | 100% | $ 7,742,500.00 |
| SAC II | Coolidge 70 | 70 acres farmland in Coolidge, AZ | $ 2,090,000.00 | 10/29/2009 | NAI Horizon | 100% | $ 1,985,500.00 |
| | | | $ 10,240,000.00 | | | | $ 9,728,000.00 |

80662-001\DOCS_LA:219244v1

US Bank

## Pledged Loans

| Borrower | Loan Balance | ST Participation | Loan Type | Real Property Collateral Description | Appraised Value | Date of Appraisal | Appraiser | Lower of Appraisal or Loan | Book Value of Loan |
|---|---|---|---|---|---|---|---|---|---|
| Ecco Holdings, LLC | $13,800,000.00 | $13,800,000.00 | First d/t | 640 acres vacant land in Pinal County, AZ | $14,450,000.00 | 1/20/2010 | R.L. Dozier, MAI | $13,800,000.00 | $13,800,000.00 |
| Nadador, LLC | $14,800,000.00 | $14,800,000.00 | First d/t | 32 home fractional project in LaQuinta, CA | $23,577,000.00 | 12/1/2009 | R.L. Dozier, MAI | $14,800,000.00 | $14,800,000.00 |
| Joshua Tree FKA NV Acquisitions, LLC | $4,225,000.00 | $4,225,000.00 | First d/t | 10 vacant residential acres in Las Vegas, NV | $3,840,000.00 | 2/1/2010 | Charles E. Jack, MAI | $3,840,000.00 | $3,648,000.00 |
| WHM Paloma Inv, LLC | $6,105,000.00 | $6,105,000.00 | First d/t | 855 acres vacant residential land in Gila Bend, AZ | $10,260,000.00 | 1/15/2010 | NAI Horizon | $6,105,000.00 | $6,105,000.00 |
| CIC&S LLC | $4,645,000.00 | $4,645,000.00 | First d/t | 54 Unit Apartment in Reno,NV | $3,593,000.00 | 1/29/2010 | J. Campbell, MAI | $3,593,000.00 | $3,413,350.00 |
| Desert Quail Air LLC | $20,000,000.00 | $20,000,000.00 | First d/t | Vacant Commercial Land in Las Vegas,NV | $13,420,000.00 | 6/30/2009 | The DiFederico Group | $20,000,000.00 | $20,000,000.00 |
| Esparanza, LLC | $12,789,459.00 | $12,789,459.00 | First d/t | 189 acres, finished res. lots, planned lots and con'l in Eloy, AZ | $5,886,000.00 | 2/8/2010 | R.L. Dozier, MAI | $5,886,000.00 | $5,591,700.00 |
| Fontana Fitness, LLC | $176,382.52 | $176,382.52 | First d/t | Com'l condo, Sparks, NV | $204,250.00 | 12/17/2009 | J. Campbell, MAI | $176,382.52 | $176,382.52 |
| Fontana Fitness, LLC | $275,547.91 | $275,547.91 | First d/t | Com'l condo, Sparks, NV | $326,500.00 | 12/17/2009 | J. Campbell, MAI | $275,547.91 | $275,547.91 |
| William D. Long | $160,000.00 | $160,000.00 | First d/t | residential lot in Gardnerville, NV | $325,000.00 | 12/5/2009 | Nancy Milligan | $160,000.00 | $160,000.00 |
| Denver 125 LLC | $4,300,000.00 | $4,300,000.00 | First d/t | 72 acres vacant land in Broomfield, CO | $5,580,000.00 | 1/22/2010 | James RE Service | $4,300,000.00 | $4,300,000.00 |
| Fontana Fitness, LLC | $290,308.70 | $290,308.70 | | Con'l condo, Sparks, NV | $265,000.00 | 12/17/2009 | J. Campbell, MAI | $265,000.00 | $290,308.70 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Marina Com'l Offices, LLC | $ 565,354.81 | $ 565,354.81 | First d/t | Com'l condo, Sparks, NV | $ 750,000.00 | 12/17/2009 | J. Campbell, MAI | $ 565,354.81 |
| Marina Village, LLC | $ 3,462,056.00 | $ 3,462,056.00 | First d/t | Condo Project in Sparks, NV | $ 2,510,000.00 | 12/17/2009 | J. Campbell, MAI | $ 2,510,000.00 |
| Total: | $ 85,594,108.94 | $85,594,108.94 | | | $184,986,750.00 | | | $ 76,276,285.24 |

| |
|---|
| $ 565,354.81 |
| $ 2,384,500.00 |
| $ 75,510,143.94 |

80662-002\DOCS_LA:2192.43v1