Jennifer A. Smith (NV Bar No. 610)
jsmith@lionelsawyer.com
LIONEL SAWYER & COLLINS
1100 Bank of America Plaza
50 West Liberty Street
Reno, Nevada 89501
(775) 788-8624 (Telephone)
(775) 788-8682 (Fax)

Richard W. Esterkin (CA Bar No. 70769)
resterkin@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue, 22nd Fl.
Los Angeles, CA 90071-3132
(213) 612-1163 (Telephone)
(213) 612-2501 (Fax)

Attorneys for Deutsche Bank National
Trust Company, as Indenture Trustee

**Electronically Filed May 11, 2010**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>SPECIALTY TRUST, INC.,<br><br>                Debtor. | Case No.: 10-51432-GWZ<br>Chapter 11 |
| In re:<br><br>SPECIALTY ACQUISITION CORP,<br><br>                Debtor. | Case No.: 10-51437-GWZ<br>Chapter 11 |
| In re:<br><br>SAC II,<br><br>                Debtor. | Case No.: 10-51440-GWZ<br>Chapter 11 |
| In re:<br><br>SAC D-1, LLC,<br><br>                Debtor. | Case No.: 10-51441-GWZ<br>Chapter 11<br><br>**PRELIMINARY LIMITED OBJECTION OF DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE TRUSTEE TO DEBTORS' MOTION FOR INTERIM ORDERS (A) AUTHORIZING DEBTORS TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (B) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**<br><br>Hearing Date: May 13, 2010<br>Hearing Time: 2:00 p.m. |

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 WEST LIBERTY ST.
RENO,
NEVADA 89501
(775) 788-8666

Deutsche Bank National Trust Company, solely in its capacity as indenture trustee under those certain Indentures dated July 1, 2005 and May 1, 2008 related to Specialty Trust, Inc., each as amended and restated, (the "**Indenture Trustee**") respectfully submits the following limited opposition to the Debtor's Motion for Interim and Final Orders (A) Authorizing Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "**Motion**"):

1. The Indenture Trustee is the indenture trustee under two trust indentures, one of which was most recently amended and restated as of August 1, 2006 (the "**2006 Indenture**") and one of which was most recently amended and restated as of March 1, 2009 (the "**2009 Indenture**"). According to the Motion, the noteholder beneficiaries under the 2006 Indenture are owed an aggregate amount of $1.46 million, and the noteholder beneficiaries under the 2009 Indenture are owed an aggregate amount of $35.44 million.[1] According to Mr. Gonfiantini's declaration in support of the Motion, the amounts owed to the noteholder beneficiaries under the 2006 Indenture are secured by amounts owed to Specialty Acquisitions under a single loan to "5th & Lincoln, LLC," and the amounts owed to the noteholder beneficiaries under the 2009 Indenture are secured by the amounts owed to the Debtors under multiple loans.[2]

2. The Indenture Trustee does not oppose the Debtor's use of cash collateral to continue its business operations. The Indenture Trustee believes, however, that the Motion raises two issues that are not adequately dealt with in the Debtor's proposed order and that ought to be addressed in any interim order that the Court may enter on the Motion.

3. First, the Motion takes the position that the noteholders for whom the Indenture Trustee acts as indenture trustee (collectively, the "**Noteholders**") are "adequately protected" by an equity cushion in the collateral securing the Debtors' obligations to the Noteholders. The

---

[1] Motion at 6:6-12.

[2] *Declaration of Nello Gonfiantini III in Support of the Following: (1) Debtors' Motion for Order Directing Joint Administration of Related Chapter 11 Cases Pursuant to Fed. Rule Bankr. P. 1015(b) and Local Rule 1015(b); (2) Motion of Specialty Trust for Order Limiting Scope of Notice; and (3) Debtor's Motion for Interim and Final Orders (A) Authorizing Debtors to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001* (Docket No. 37) (the "**Gonfiantini Declaration**") at Ex. B.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

DB2/21711968.1

2

only evidence in support of that assertion is the Gonfiantini Declaration. The Gonfiantini Declaration does not contain any competent evidence as to the value of that security.

4.   Federal Rule of Evidence 602 provides that: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." In this case, the Gonfiantini Declaration states that the matters stated in the declaration are "based upon my personal knowledge <u>or from my review of the Debtor's books and records</u>." Gonfiantini Declaration at ¶ 1 (emphasis added). Thus, by his own admission, Mr. Gonfiantini lacks personal knowledge of certain matters stated in his declaration, and his declaration fails to separate those matters as to which he has personal knowledge from those matters that are based upon his review of the Debtor's books and records as to which he would not have personal knowledge. Thus, the Gonfiantini Declaration is not competent evidence upon which this Court can rely in considering the Motion.

5.   In addition, the Gonfiantini Declaration fails to provide an adequate basis upon which this Court could consider Mr. Gonfiantini's opinions as to the value of the loans securing the Debtors' obligations to the Noteholders. Under Federal Rule of Evidence 702, if expert testimony would assist the trier of fact, "a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient knowledge, facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The Gonfiantini Declaration is devoid of facts that would qualify Mr. Gonfiantini to testify as an expert regarding the valuation of the real estate collateral securing the loans that secure the Debtors' obligations to the Noteholders, the facts or data upon which Mr. Gonfiantini's opinions of value are based, or how Mr. Gonfiantini applied appraisal principles to the particular properties that he purports to value. Thus, Mr. Gonfiantini's opinions as to the value of the Noteholders' collateral are not admissible opinion testimony. Indeed, it appears that Mr. Gonfiantini's sole basis for his conclusions are appraisals obtained

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

DB2/21711968.1

3

from third party appraisers, none of whom have submitted their own declarations.[3] As a result, Mr. Gonfiantini's opinions of value appear to be merely restatements of the opinions of others and are, thus, inadmissible hearsay. Fed.R.Evid. 802.

6.  Apart from the absence of admissible evidence demonstrating that the Noteholders are adequately protected by the Debtors' proposed use of their cash collateral, the Debtor's statements in the Motion raise grave concern over the health of the loan portfolio that secures the Noteholders. To begin with, the Debtors have not provided this Court with any information regarding the status of that loan portfolio, i.e.: (a) whether the loans are current or delinquent, (b) if delinquent, when the last payment was made, (c) whether there have been any requests by the obligors under those loans to restructure the loans, waive defaults under the loans or forbear from exercising default remedies under the loans and (d) the financial condition of the borrowers under the loans. That omission is not only glaring, it speaks volumes about the condition and value of the collateral that is supposed to provide adequate protection to the Noteholders.

7.  In addition, simple mathematics suggests that the Debtors' loan portfolio is in substantial distress. According to the Debtors' proposed budget, the Debtors anticipate collecting a total of $231,818 in interest income over the 23 week duration of the budget. Dividing that sum by the 23 weeks and multiplying the result by the 52 weeks in a year yields projected annual interest income of $524,110. The Motion states that "Specialty Trust currently holds loans with a total amount owing from its borrowers of approximately $167 million." Gonfiantini Declaration at ¶ 5. Dividing the $524,110 in interest income by the $167 million in loans yields an average interest rate of 3.1%. If the average yield on the Debtors' loan portfolio is only 3.1%, either the Debtors made a large number of very low interest rate loans or the Debtors' projections anticipate substantial defaults during the period covered by the Budget.

---

[3] Gonfiantini Declaration at ¶ 17 ("The Debtors have obtained recent third party appraisals of the real estate in which the Debtors have interests that have been pledged to the Prepetition Secured Lenders, copies of which appraisals have been provided to the Indenture Trustee and U.S. Bank, as applicable, and are summarized in Exhibit B hereto.").

& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

DB2/21711968.1

4

8. Finally, according to the Debtors' budget, the Debtors will begin the budget period in the week of April 23, 2010 with cash of $1,582,384. By the end of the week beginning September 23, 2010, that cash balance will have been eroded to $257,672, despite the projected sale of real estate during the week of September 6, 2010 for $150,000. Thus, the Debtors' own budget reflects that the Debtors' post-petition operations are cash flow negative, which ought to create significant doubt about the Debtors' long term prospects, as well as their ability to adequately protect the Noteholders for the Debtors' proposed use of the Noteholders' cash collateral.

9. In sum, the absence of any admissible evidence as to the value of the loans securing the Debtors' obligations to the Noteholders, the absence of any information regarding the status of those loans, the fact that even a simple analysis of the Debtors' cash flow reveals that the Debtors must be experiencing a significant rate of defaults on their loans and the fact that the Debtors' own projections show a consistent loss of cash during their projected budget period preclude this Court from concluding that the Noteholders are adequately protected for the Debtor's proposed use of their cash collateral.

10. Second, apart from the Indenture Trustee's grave concern over the adequacy of the Noteholders' collateral, the largest single item in the Debtors' proposed budget is a management fee of $221,583 per month that the Debtors pay to Specialty Financial Corp., which is wholly owned by Mr. Gonfiantini.[4] The Motion fails to provide any information regarding how this management fee was calculated or, more importantly, how this management fee equates to the costs incurred by Specialty Financial Corp. in rendering management services to the Debtors. The Indenture Trustee does not object to the payment of the management fee, if the management fee merely covers the costs incurred by Specialty Financial Corp. in providing management services to the Debtor. The Indenture Trustee does not believe it to be appropriate, however, for the Debtors to fund Specialty Financial Corp.'s other business operations, if any, or a substantial profit to Mr. Gonfiantini at the expense of the Debtors' estates.

---

[4] Gonfiantini Declaration at ¶¶ 6 and 7.

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

1	11.	In conclusion, despite the Indenture Trustee's significant concerns noted above, the Indenture Trustee has concluded that, on an interim basis, the Debtors ought to be allowed to use the Noteholders' cash collateral, subject to the following:

(a) As adequate protection, the Noteholders ought to be granted a replacement lien on all estate property, other than avoiding power causes of action, which lien should be a first priority lien, subject only to such liens as may have been duly perfected on or before the petition date;

(b) The Debtors should be required to provide periodic reports reconciling the Debtors' actual cash receipts and expenditures to their budgeted amounts; and

(c) The Debtors' should be required to provide a budget for Specialty Financial Corp. detailing all of the costs incurred by Specialty Financial Corp. in connection with its provision of management services to the Debtors, including any compensation or other consideration provided by Specialty Financial Corp. to any of the Debtors' insiders.

Dated this 11th day of May, 2010.

LIONEL SAWYER & COLLINS


By: /s/ Jennifer A. Smith
     Jennifer A. Smith

MORGAN, LEWIS & BOCKIUS LLP


By: /s/ Richard W. Esterkin
     Richard W. Esterkin

Attorneys for Deutsche Bank National Trust Company, as Indenture Trustee

LIONEL SAWYER
& COLLINS
ATTORNEYS AT LAW
1100 BANK OF AMERICA PLAZA
50 West Liberty Street
RENO,
NEVADA 89501
(775) 788-8666

DB2/21711968.1

6