McDONALD CARANO WILSON LLP
KAARAN E. THOMAS (NV Bar No. 7193)
100 West Liberty St., 10th Floor
Reno, Nevada 89501
Telephone Number: (775) 788-2000
Facsimile Number: (775) 788-2020
E-mail Address: kthomas@mcdonaldcarano.com

*Electronically filed on June 22, 2010*

*Proposed Counsel for Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>SPECIALTY TRUST, INC., et al<br><br>Debtors | Case No. 10-51432-GWZ<br>Jointly Administered<br><br>Chapter 11<br><br>**OMNIBUS RESPONSE OF OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO OBJECTIONS TO APPLICATION PURSUANT TO FED. R. BANKR. P. 2014(a) FOR ORDER UNDER SECTION 1103 OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF FTI CONSULTING, INC. AS FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS NUNC PRO TUNC TO JUNE 11, 2010 [Docket Nos 232 and 233]**<br><br>(AFFECTS ALL DEBTORS)<br><br>Hearing Date:    June 22, 2010<br>Hearing Time:    11:00 a.m. |

The Official Committee of Equity Security Holders (the "Committee") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") files this omnibus response to the objections to the Committee's Application for entry of an order under section 1103 and 327 of the Bankruptcy Code, authorizing the employment and retention of the consulting firm of FTI Consulting, Inc., together with its wholly owned subsidiaries, agents,

286993

independent contractors and employees ("FTI"), as financial advisors to the Committee filed by Taberna Preferred Funding VII, Ltd ("Taberna") and U.S. Bank National Association (USB") [Docket Nos 232 and 233] (the "Objections"). This Omnibus Response is supported by the Declaration of Michael A. Tucker, Senior Managing Director with FTI Consulting, Inc. (the "Tucker Declaration") and Kaaran Thomas, Esq., of McDonald Carano Wilson LLC, proposed counsel for the Committee, (the "Thomas Declaration") the record in this case and the points and authorities below. In support of this response, the Committee respectfully states as follows:

## Background

1. On May 24, 2010, an Equity Committee was appointed by the Office of the United States Trustee and made up of five shareholders who were willing to serve.

2. On May 28, 2010, the application was filed to employ McDonald Carano Wilson LLP as Counsel for the Official Committee of Equity Security Holders. The Committee immediately began the process of interviewing financial advisors. The Committee interviewed Alix Partners, Mesirow Financial and FTI. In addition, at Debtors' invitation, Committee members attended Debtors' interviews with Debtors' potential advisors, Alvarez and Marsal and Imperial Capital. The Debtor eventually selected Imperial Capital. Upon the Committee's selection of FTI the two firms, FTI and Imperial Capital began the task of coordinating the work between the two firms. The Committee and the Debtors had discussed the limited budget and the need for coordination during the entire interview process, and the firms were selected, in part, on the basis of their ability to coordinate their respective expertise to the benefit of the Debtors' estates and parties in interest.

3. FTI made its presentation to members of the Committee and their Counsel on June 9, 2010 and was notified that they had been selected on June 11, 2010.

4. The Committee's position is to some extent aligned with that of the Debtors and with all parties in interest, including the objecting parties, in that all parties will benefit if the Debtors' going concern value is preserved and maximized. On the other hand, the Committee's interests also diverge from the Debtors'. The Debtors have only one employee. Their business is conducted, and financial decisions are made, by Specialty Financial Corp, a separate corporation. [Declaration of Nello Gonfiantini III Doc 37 par 6]. By way of example, and without limiting the scope of the Committee's divergent interests, three of Debtors' largest loans have been made to entities affiliated with Specialty Financial Corp. These loans and the relationship between Specialty Trust, Inc. and Specialty Financial Corp. must be examined. Specialty Financial Corp. has a potential conflict of interest with respect to the review and analysis of it's (and its affiliates) relationship with the Debtors. The Committee is charged with the fiduciary duty to investigate this relationship.

### Response to Objections

**A. The Committee cannot learn anything from FTI that it could not obtain from Imperial Capital**

5. Imperial Capital has not been charged with investigating the relationship between Debtors and their borrowers [see Imperial Capital task list Docket 233 page 3]. Furthermore, their job is to assist the Debtors, not to assist the Committee [see Imperial Capital Task list].

6. Specialty Trust's Statement of Financial Affairs [doc. 112 page 23] indicates that in the year prior to the Chapter 11 filing numerous transfers were made to insiders, including over $2.5 million to Nadador LLC. Of this sum paid to Nadador LLC $560,000.00 was paid on April 20, 2010.

**B. The Committee's interests are "inherently aligned" with the Debtors**

7. With respect, for the reasons set forth above, this assertion is partially correct but also partially incorrect. While both Debtors and the Committee are concerned with maximizing

286993                                                                                              Page 3 of 6

the value of Debtors' assets (as all parties in interest should be) Debtors' management, Specialty Financial Corp. has no incentive to investigate itself.

### C. The Court should "strictly scrutinize" FTI's applications for compensation

8. The Committee respectfully submits that both FTI and the Committee are aware that this Court and the office of the United States Trustee, as well as the Committee members, will carefully scrutinize the compensation applications of all professionals.

### D. Review of Deutsche Bank document request and attendance at Debtor's deposition is unnecessary

9. The Deutsche Bank document request, which will constitute part of the Deutsche Bank deposition of the Debtors on June 28, seeks information regarding the origination and management of all of the Debtor's loans pledged to secure the $36.9 million allegedly owed to Deutsche Bank [Declaration of Nello Gonfiantini III, doc. 37 para 9]. These loans, and the REO property that resulted from foreclosure on certain of the loans, constitute a significant portion of Debtor's assets. Debtor has asserted that the value of the property securing the loans is $66.29 million [Declaration of Nello Gonfiantini III Docket No.37 para 11]. The Committee and FTI are not in a position to determine, at this point, what time periods might be "relevant" to their inquiries regarding these loans and the collateral securing them  By way of example, however, the look-back period for certain types of avoidance actions extends to four years after the transfer [NRS Chapter 112.230]. Neither USB nor Taberna has submitted any declarations supporting their assertion that the investigation of these documents might be unnecessary. The Committee must also understand the collateral securing the Deutsche Bank loans in order to be prepared to appropriately respond to any actions Deutsche Bank may seek to take regarding this collateral. The Committee should not be required to limit the scope of its inquiry into Debtors' affairs at this early stage merely in order to save expenses. In addition, as set forth in the Tucker Declaration,

FTI has the ability to research large document productions using cost-efficient computer programs. These tools are not available to the Committee or its counsel.

**E.    The Financial Advisor will not provide a tangible benefit to the administration of the estate**

10.    Taberna asserts, without support, that Imperial Capital will "avail itself" to the Committee. It cites *In re Farmland Indus., Inc.*, 397 F.3d 647 (8th Cir.2005) to support its objection. However, the *Farmland Industries* case involved a dispute over the source of payment of contingent "success" fee claimed by a committee's financial advisor. The issue before this court is the employment of FTI, not the allowance or payment of compensation. FTI does not seek any "success fee" as part of its compensation.

**F.    The Application does not provide necessary information**

11.    Taberna asserts that the Application should provide a great detail about the anticipated services, citing *In re High Voltage Engineering Corp.*, 311 B.R. 320, 333-334 (Bankr. D. Mass. 2004). That case involved the employment of a restructuring firm on a contingent fee basis under 11 U.S.C. Section 328 and 330. FTI's application seeks employment under 11 U.S.C. Section 327. With respect, such detail could not be available at this early stage of the case and is more appropriate in connection with the applications for compensation that will be filed by FTI. That is why FTI would not, and does not seek, compensation on a contingent fee basis.

12.    Any issues regarding duplication of services will be addressed in the applications for compensation, as they always are.

**G.    Appointment of FTI creates "further disparity" in representation**

13.    The unsecured creditors in this case (omitting the creditors who hold contingent claims arising out of guarantees) consist largely of the noteholders for whom Bank of New York acts as indenture trustee [Specialty Trust, Inc. Schedule F, Doc.111-1 ECF pages 26-28]. Upon information and belief, Taberna holds one or more of the notes for which Bank of New York acts

as indenture trustee. Any consideration of the extent to which "unsecured creditors" are without adequate representation in this case should take into account the number of unsecured creditors, their claims and the Bank of New York's duties, under its indenture, to act on behalf of its noteholders. No such evidence is before the court at this time.

14. In addition, the Committee has, from the outset of this case, discussed sharing information with unsecured creditors. These discussions have been held with Taberna counsel and have not been pursued by Taberna. The Committee remains, and will remain, willing to share information to the extent permitted by its agreements with the Debtors. In addition, the Debtors are obliged to provide information to parties in interest under appropriate circumstances. Taberna has not demonstrated that it has either sought or been deprived of any information by either the Committee, the Debtors or their proposed financial advisors.

WHEREFORE, the Committee requests that the Objections of US Bank and Taberna VII be overruled, and for such other relief as is just.

DATED this 22nd day of June, 2010.

/s/ Kaaran E. Thomas
Kaaran E. Thomas (NV Bar No. 7193)
McDONALD CARANO WILSON LLP
100 West Liberty St., 10th Floor
Reno, Nevada 89501
Telephone:   (775) 788-2000
Facsimile:   (775) 788-2020
*Proposed Counsel for Official Committee of Equity Security Holders*