1    Ira D. Kharasch (CA Bar No. 109084)
     Scotta E. McFarland (CA Bar No. 165391)
2    Victoria A. Newmark (CA Bar No. 183581)
     Pachulski Stang Ziehl & Jones LLP
3    10100 Santa Monica Boulevard, 11th Floor
     Los Angeles, California  90067-4100
4    Telephone: 310/277-6910
     Facsimile:  310/201-0760
5    Email: *ikharasch@pszjlaw.com*
            *smcfarland@pszjlaw.com*
6             *vnewmark@pszjlaw.com*

7    *Attorneys for Debtors and Debtors in*
     *Possession*
8

Sallie B. Armstrong (NV Bar No. 1243)
Downey Brand
427 West Plumb Lane
Reno, Nevada 89509
Telephone: 775/329-5900
Facsimile:  775/786-5443
Email: *sarmstrong@downeybrand.com*

*Attorneys for Debtors and Debtors in*
*Possession*

9

## UNITED STATES BANKRUPTCY COURT

10

### FOR THE DISTRICT OF NEVADA

11

| | |
|---|---|
| In re: | Chapter 11 |
| SPECIALTY TRUST, INC., et al. | **Jointly Administered under Case No. 10-51432-GWZ** |
| ☑ Affects this Debtor<br>☐ Affects all Debtors<br>☐ Affects Specialty Acquisition Corp.<br>☐ Affects SAC II<br>☐ Affects SAC D-1, LLC | Case Nos.<br>10-51432<br>10-51437<br>10-51440<br>10-51441 |
| | **DEBTOR'S MOTION FOR ORDER (I) AUTHORIZING THE SALE OF CERTAIN REAL PROPERTY LOCATED AT N. DURANGO DRIVE AND DEER SPRINGS WAY IN LAS VEGAS, NEVADA, FREE AND CLEAR OF LIENS, AND (II) WAIVING THE 14-DAY STAY UNDER F.R.B.P. 6004(h)** |
| | **Date:    July 19, 2010**<br>**Time:    11:00 a.m.** |

**TO THE HONORABLE GREGG W. ZIVE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES ENTITLED TO NOTICE:**

Above-captioned debtor and debtor in possession, Specialty Trust, Inc. ("Specialty Trust" or the "Seller"), pursuant to sections 105, 362, and 363 of title 11 of the United States Code, 11 U.S.C.

*PACHULSKI STANG ZIEHL & JONES LLP*
*ATTORNEYS AT LAW*
*LOS ANGELES, CALIFORNIA*

1    §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of

2    Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004 of the Local Rules of Bankruptcy

3    Practice of the United States District Court for the District of Nevada (the "Local Rules"), hereby

4    moves this Court for entry of an order substantially in the form of <u>Exhibit 1</u> hereto (the "Sale

5    Order"):  (a) authorizing Specialty Trust to sell certain real property located at the northwest corner

6    of N. Durango Drive and Deer Springs Way in the City of Las Vegas, Nevada, free and clear of

7    liens, to SDMI Centennial Hills, LLC (the "Purchaser") or to such other bidder that submits the

8    winning bid for the Property, and (b) waiving the 14-day stay under Bankruptcy Rule 6004(h) (the

9    "Motion").

10    The relief sought in the Motion is based upon the facts and argument set forth herein, the

11    Declaration of Nello Gonfiantini III (the "Gonfiantini Declaration") filed concurrently herewith, and

12    the Declaration of Charles E. Jack IV, MAI (the "Jack Declaration") filed concurrently herewith.  In

13    support of this Motion, the Seller represents as follows:

## I.

## BACKGROUND

**A.    <u>Jurisdiction and Venue</u>**

17    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334.  This is a

18    core proceeding pursuant to 28 U.S.C. §157(b)(2).  Venue for proceedings on this Motion is proper

19    in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**B.    <u>General Background</u>**

21    On April 20, 2010 (the "Petition Date"), Specialty Trust and its affiliated debtors and debtors

22    in possession (the "Debtors") commenced the above-captioned cases (the "Cases") by filing

23    voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued

24    in the possession of their property and have continued to operate and manage their business as

25    debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee,

26    examiner or committee has been appointed in the Cases.

27    // //

28    // //

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

C.    **The Proposed Transaction**

As of the Petition Date, Specialty Trust owned approximately 3.62 acres of undeveloped real property located at the northwest corner of N. Durango Drive and Deer Springs Way in the City of Las Vegas, Nevada (the "Property"). The Property is situated across the street from the Centennial Hills Hospital Center approximately two miles west of the Interstate 95 freeway.

Specialty Trust acquired the Property on April 20, 2010 at the public sale of the Property upon the foreclosure of Specialty Trust's lien on the Property for a credit bid in the amount of $1,800,000. There were no competing bids at the foreclosure sale.

On May 20, 2010, Specialty Trust entered into an exclusive broker's agreement with Colliers International ("Colliers") to list the Property for sale.[1] The Property was listed for sale on www.propertyline.com and on Colliers' website, www.colliers.com. In addition, Colliers sent out an email broadcast to approximately 4,400 brokers and potential buyers nationwide.

Specialty Trust received three bids for the Property, all from non-insiders. Of the three bids that were received, the initial bid of the Purchaser was significantly higher. After arms-length negotiation with the Purchaser and in consultation with Colliers and real estate and bankruptcy counsel, Specialty Trust entered into that certain *Purchase and Sale Agreement* dated June 29, 2010 (the "Purchase Agreement"),[2] pursuant to which the Purchaser agrees to purchase the Property for $1,900,000 in cash.

Specialty Trust is requesting authority to sell the Property free and clear of liens pursuant to section 363(f) of the Bankruptcy Code. There are no known encumbrances against the Property. It is anticipated that the brokerage commission to be paid in connection with the sale will be 5-6% of the purchase price. Thus, Specialty Trust is authorized to sell the Property free and clear of liens because, among other things, the purchase price exceeds the value of all liens against the Property. 11 U.S.C. § 363(f)(3).

// //

---

[1] The Debtors' application for an order authorizing the Debtors to retain Colliers as the broker for the Property was approved by the Court pursuant to its order entered on June 11, 2010. (Docket No. 186 in Case No. 10-51432).
[2] A true copy of the Purchase Agreement is attached hereto as Exhibit 2.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**D.    Disclosures Pursuant to Local Rule 6004(b)(5) and (6)**

The following disclosures about the proposed transaction are made pursuant to Local Rule 6004(b)(5) and (6):

Date, time and place of the hearing on the proposed sale.  On June 22, 2010, in open court, the Court approved an order shortening time for hearing on this Motion and set a hearing on this Motion on July 19, 2010, at 11:00 a.m. (the "Sale Hearing").  The Debtors will serve a notice of the date and time of the Sale Hearing.  The Sale Hearing will take place at the United States Bankruptcy Court located at the C. Clifton Young Federal Building, 300 Booth Street, Reno, Nevada 89509.

Name of the proposed buyer.  SDMI Centennial Hills, LLC or its nominee.

A description of the property to be sold.  All of Specialty Trust's right, title and interest in the Property.

Terms and conditions of the proposed sale, including the price and contingencies.

1.    *Sale price* – The sale price will be $1,900,000 in cash.

2.    *Contingencies* – There are two primary buyer contingencies to close, one of which has not been satisfied.  First, there is a due diligence contingency in the Purchase Agreement, whereby if the Purchaser does not deliver to Seller a "Notice of Due Diligence Approval" (as defined in the Purchase Agreement) by June 30, 2010, the Purchase Agreement shall automatically terminate without financial penalty to the Purchaser.  *See* Purchase Agreement, at § 3(b).  The Seller delivered a Notice of Due Diligence on July 1, 2010, and thus the due diligence contingency has been satisfied.  Second, there is a contingency that enables the Purchaser to terminate the Purchase Agreement at its option in the event of exceptions to the title report.  *See* Purchase Agreement, at § 4(a)(ii).  This contingency has not yet been satisfied.

If the Purchaser opts not to proceed with the transaction and/or the Purchase Agreement terminates for any other reason, Specialty Trust intends to seek approval at the Sale Hearing of the proposed sale to one of the other interested parties on substantially the same terms as set forth in the Purchase Agreement.

*Whether an auction is contemplated.* It is contemplated that an auction will be held in the courtroom at the Sale Hearing. The Seller proposes the following overbid procedures be applied to the auction:

1. The initial overbid increment must be in an amount of not less than $2,000,000. Subsequent overbids must be in increments of at least $100,000.

2. Parties wishing to present an overbid at the hearing must provide written notice of their intent to overbid to the Seller's counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., Los Angeles, California 90067, Attn: Ira Kharasch (ikharasch@pszjlaw.com), by no later than 5:00 p.m. two business days before the hearing. By such time, proposed overbidders must also provide the Seller: (i) a good faith deposit in the amount of $100,000, and (ii) evidence satisfactory to the Seller of their financial ability to close the sale on or before July 30, 2010, including but not limited to evidence of cash on hand in an amount of not less than $2,000,000.

3. A sale of the Property to an overbidder will be on the same terms, except as to price, and without contingencies (including but not limited to financing contingencies), of the Seller's proposed sale to the Purchaser. The sale to the overbidder must close on or before July 30, 2010.

4. The acceptance of any overbid will be in the Seller's sole discretion. The Seller reserves the right, based solely on its business judgment and discretion, to request that the Court confirm the best overall offer.

5. In the event that overbids are made at the Sale Hearing, the Seller reserves the right to designate one or more back-up buyers to close the sale of the Property for the amount of such back-up buyer's last bid. In the event that the Court confirms a back-up buyer, the sale to an overbidder must close on or before seven business days after the back-up bidder is notified by the Seller that the successful bidder did not timely close.

*Deadlines for the closing of the proposed sale or deadlines that are conditions to closing the proposed transaction.* The Purchase Agreement provides that the Seller must seek a sale hearing on or before July 15, 2010, if possible, and otherwise at the earliest possible date on the Bankruptcy Court's calendar and that the Seller shall diligently process the approval. *See* Purchase Agreement, at § 1.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  <u>Whether the proposed purchaser has submitted or will be required to submit a good faith</u>

2  <u>deposit and, if so, the conditions under which the deposit may be forfeited.</u>  The Purchaser shall

3  deliver into escrow an earnest money deposit of $100,000 on the Effective Date of the Purchase

4  Agreement. *See* Purchase Agreement, at § 2. The Purchaser's interest in the deposit shall be

5  forfeited if the transaction fails to close due to the Purchaser's default. *See* Purchase Agreement, at

6  §§ 10(b) & (c).

7  <u>Any provision whereby the debtor seeks relief from the fourteen (14) day stay imposed by</u>

8  <u>Bankruptcy Rule 6004(h).</u>  Specialty Trust seeks relief from the fourteen (14) day stay imposed by

9  Bankruptcy Rule 6004(h). *See* Sale Order, at ¶ 14.

10  **II.**

11  **BASIS FOR RELIEF**

12  **A.**  **<u>The Proposed Sale Should Be Approved</u>**

13  **1.**  **Standards for the Sale of Estate Property**

14  A debtor may use, sell, or lease property of the estate outside the ordinary course of business

15  only after notice and a hearing. *See* 11 U.S.C. § 363(b)(1).

16  The bankruptcy court has considerable discretion in deciding whether or not to approve the

17  use of estate property by a debtor in possession in the light of a "sound business justification." *See*

18  *Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 15 (9th Cir. BAP 1987) (citing *In re Baldwin*

19  *United Corporation*, 43 B.R. 888, 905 (S.D. Ohio W.D. 1984); *In re Lionel Corporation*, 722 F.2d

20  1063, 1066 (2d Cir. 1983); *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir. 1986)). It has

21  been held that debtors are entitled to "a presumption that in making a business decision the directors

22  of a corporation acted on an informed basis, in good faith and in the honest belief that the action

23  taken was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656

24  (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993).

25  Where a proposed transaction is supported by a sound business justification, courts consider

26  the facts and circumstances in deciding whether the fairness of the sale has been assured, including

27  (i) whether the property has been given adequate marketing, (ii) whether the transaction has been

28  negotiated and proposed in good faith, (iii) whether the purchaser is proceeding in good faith, and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(iv) whether the proposed sale is an arm's length transaction. *See, e.g., In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841-42 (Bankr. C.D. Cal. 1991); *see also Matter of Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. Del. 1987); *In re Alpha Industries, Inc.*, 84 B.R. 703, 705-06 (Bankr. Mont. 1988); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176-77 (D. Del. 1991); *In re Planned Systems, Inc.*, 82 B.R. 919, 923 (Bankr. S.D. Ohio. 1988).

**2.    The Proposed Sale of the Property Is Supported by a Sound Business Justification**

The proposed sale of the Property is supported by a sound business justification. Due to the impact of the economic downturn on the Debtors' business, the Debtors are experiencing severe liquidity issues. Since the Property has not been pledged to any of the holders of the Debtors' secured debt, the sale proceeds will be unencumbered cash that the Debtors plan to use for operations and to pay expenses of administration of the Cases. If the Property is not sold, the estate will run out of cash by the end of August. In addition, selling the Property now will also reduce expenses of the estate. The Property is undeveloped and thus is not generating any income to pay for its holding costs such as property taxes.

**3.    The Proposed Sale Is Fair**

The facts and circumstances indicate that the proposed sale is fair to the estate for the following reasons:

First, the Property has been exposed to the market. By the time of the Sale Hearing, Colliers will have marketed the Property for approximately two months, including listing the Property for sale with *Property Line* and on Colliers' website and by directly contacting its nationwide network of approximately 4,400 brokers and potential buyers. In addition, the public foreclosure sale at which Specialty Trust acquired the Property was noticed for and held on April 20, 2010 in accordance with Nevada foreclosure laws, which provided an opportunity for interested parties to become aware of the status of the Property. Finally, notice of the auction and Sale Hearing will be served on all parties that have expressed an interest in the Property during the marketing period, thereby providing an opportunity for overbids at the Sale Hearing.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Second, the transaction was negotiated in good faith and at arm's length. The Purchaser is not an "insider" or "affiliate" of the Debtors, and has no other connections with Specialty Trust or its principals. The terms and conditions of the transaction were negotiated by Mr. Gonfiantini in consultation with Colliers and real estate and bankruptcy counsel.

Third, the purchase price fairly reflects the terms of the transaction and current market conditions for like properties. The Property was appraised by Charles E. Jack IV, MAI in October 2009 for $3.63 million. *See* Jack Declaration, at ¶ 3. The comparable sales utilized by Mr. Jack in the fall of 2009 for his valuation were derived from sales that ranged from September of 2008 to September of 2009. *Id.* Most of these acquisitions were special circumstance acquisitions, as the volume of relevant comparable sale transactions that closed in 2009 were at all time lows for the past several years. *Id.*

In recent months in 2010, transactions from pressured banks and/or credit unions (those with capital issues and/or TARP recipient status) or other challenged sellers are closing at levels significantly below the level of the sales closing at the end of 2008 and during 2009. *Id.* at ¶ 4. Further, buyers that were end users of acquired properties, such as Walgreens, CVS, and Chase Bank, were one of the few buyer types operating in the market in 2009 given the very low volume of closed sales transactions during 2009. *Id.* at ¶ 5. These buyer types were also prevalent in the previous time frame when better market conditions prevailed and remained in the market when many other buyers exited. *Id.* There have been fewer "strategic" purchases by well-capitalized buyers in 2010. *Id.* at ¶ 6. More of the transactions this year appear now to be geared towards investors and speculators with all-cash terms looking to purchase land comparable to the subject property at market bottom prices. This has generally led to a material decline of varying degrees in different markets when comparing properties appraised in 2009 to properties that have been subsequently appraised in 2010.

A 30-day close is a relatively quick time-frame and generally would impact the price any property would command in this presently challenging market. *Id.* at ¶ 7. In his prior appraisal, Mr. Jack opined at a market exposure time of 12 months or 360+/- days as being the requisite time of

1    hypothetical market exposure that would have been required prior to achieving the valuation in the

2    appraisal. *Id.*

3        Accordingly, based on the foregoing, the Debtors believe that the transaction is fair and that

4    consummating the transaction, which will result in the estate realizing an immediate cash infusion of

5    $1,900,000, is in the best interest of the estates and should be approved.

6    **B.**    **The Sale Should Be Authorized Free and Clear of Liens**

7        Specialty Trust is requesting authority to sell the Property free and clear of liens pursuant to

8    section 363(f) of the Bankruptcy Code.  Section 363(f)(3) provides that estate property may be sold

9    free and clear any interest in the property if:

10        such interest is a lien and the price at which such property is to be sold is greater
         than the aggregate value of all liens on such property.
11

12    11 U.S.C. § 363(f)(3).

13        As noted above, there are no known encumbrances against the Property.  Brokerage

14    commissions will amount to 5-6% of the purchase price.  Accordingly, Specialty Trust should be

15    authorized to sell the Property free and clear of liens because the purchase price exceeds the value of

16    all liens against the Property.

17    **C.**    **The Purchaser Is a Good Faith Purchaser Pursuant to Section 363(m) of the**
              **Bankruptcy Code; Inapplicability of Section 363(n) of the Bankruptcy Code**
18

19        As discussed above, the purchase price was negotiated with the Purchaser at arm's length in

20    which the Purchaser acted in good faith without any collusion or fraud of any kind.  The Purchaser is

21    not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code.

22    Neither the Debtors nor the Purchaser has engaged in any conduct that would prevent the application

23    of section 363(m) of the Bankruptcy Code or cause the application of to the Purchase Agreement or

24    implicate section 363(n) of the Bankruptcy Code with respect to the consummation of the sale

25    transaction or the transfer of the Property to the Purchaser.  In addition, if a party other than

26    Purchaser is the successful bidder, the Debtors intend to make an appropriate showing at the Sale

27    Hearing that the purchase agreement with the other successful bidder is a negotiated, arm's length

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    transaction, in which the successful bidder at all times has acted in good faith under and otherwise in

2    accordance with such standards.

3        The Debtors thus request that the Court find that the Purchaser or other successful bidder has

4    purchased the Property in good faith within the meaning of section 363(m) of the Bankruptcy Code,

5    and is entitled to the protections of sections 363(m) and (n) of the Bankruptcy Code.

6                                          **III.**

7                                        **NOTICE**

8        In accordance with the Court's *Order Limiting Scope of Notice* entered on May 18, 2010

9    (Docket No. 98 of Case No. 10-51432), copies of the Motion will be served on the following parties

10   or their counsel of record:  (i) the Office of the United States Trustee, (ii) the twenty largest

11   unsecured creditors of the Debtors, (iii) secured banks US Bank National Association and Deutsche

12   Bank National Trust Company, (iv) counsel to the Committee of Equity Holders, (v) all known

13   parties asserting interests in the Property, (vi) federal and state governmental units listed in the

14   Registrar of Mailing Addresses of Federal and State Governmental Units kept by the clerk in

15   accordance with Bankruptcy Rule 5003(c) and LR 5003(c), (vii) the Purchaser, (viii) all potential

16   bidders, and (ix) all parties requesting notice pursuant to Bankruptcy Rule 2002(i).

17       The Debtors submit that the notice that they have provided of this Motion and the Sale

18   Hearing is reasonable and appropriate and should be approved by this Court as adequate and

19   sufficient notice.

20       In order that the estate may realize the proceeds of the sale as soon as possible, the Debtors

21   request, pursuant to Bankruptcy Rules 6004(h), that the order approving this Motion become

22   effective immediately upon its entry.

23                                          **IV.**

24                                    **CONCLUSION**

25       The Debtors respectfully request that this Court enter an order with the following relief:

26           (i)  granting this Motion and authorizing the sale of the Property to the Purchaser or

27                other successful bidder and approving the proposed Purchase Agreement in

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

substantially the form attached to this Motion, pursuant to the attached proposed order;

(ii) approving the form and manner of notice of this Motion, and of the proposed sale; and

(iii) granting such other and further relief as is just and proper.

Dated: July 2, 2010

DOWNEY BRAND LLP

Sallie B. Armstrong (Bar No. 1243)
Michelle N. Kazmar (Bar No. 10098)
DOWNEY BRAND LLP
427 West Plumb Lane
Reno, Nevada 89509
Telephone: 775/329-5900
Facsimile: 775/786-5443
E-mail: sarmstrong@downeybrand.com
          mkazmar@downeybrand.com

PACHULSKI STANG ZIEHL & JONES LLP

Ira D. Kharasch (CA Bar No. 109084)
Scotta E. McFarland (CA Bar No. 165391)
Victoria A. Newmark (CA Bar No. 183581)
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail: ikharasch@pszjlaw.com
          smcfarland@pszjlaw.com
          vnewmark@pszjlaw.com

Counsel for the Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# Exhibit 1

# Exhibit 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit 1**

**Proposed Form of Sale Order**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Ira D. Kharasch (CA Bar No. 109084)
Scotta E. McFarland (CA Bar No. 165391)
Victoria A. Newmark (CA Bar No. 183581)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California  90067-4100
Telephone: 310/277-6910
Facsimile:  310/201-0760
Email: *ikharasch@pszjlaw.com*
        *smcfarland@pszjlaw.com*
        *vnewmark@pszjlaw.com*

*Attorneys for Debtors and Debtors in
Possession*

Sallie B. Armstrong (NV Bar No. 1243)
Downey Brand
427 West Plumb Lane
Reno, Nevada 89509
Telephone: 775/329-5900
Facsimile:  775/786-5443
Email: *sarmstrong@downeybrand.com*

*Attorneys for Debtors and Debtors in
Possession*

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, California

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 |
| SPECIALTY TRUST, INC., et al. | **Jointly Administered under Case No. 10-51432-GWZ** |
| ☑ Affects this Debtor<br>☐ Affects all Debtors<br>☐ Affects Specialty Acquisition Corp.<br>☐ Affects SAC II<br>☐ Affects SAC D-1, LLC | Case Nos.<br>10-51432<br>10-51437<br>10-51440<br>10-51441 |
| | **ORDER (I) AUTHORIZING THE SALE OF CERTAIN REAL PROPERTY LOCATED AT N. DURANGO DRIVE AND DEER SPRINGS WAY IN LAS VEGAS, NEVADA, FREE AND CLEAR OF LIENS, AND (II) WAIVING THE 14-DAY STAY UNDER F.R.B.P. 6004(h)** |

On July 19, 2010, the Court held a hearing to consider the motion (the "Motion")[1] of above-captioned debtor and debtor in possession Specialty Trust, Inc. ("Specialty Trust" or the "Seller") pursuant to sections 105, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), Rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004 of the Local Rules of Bankruptcy Practice of the United States District Court for the District of Nevada (the "Local Rules") (a) seeking this Court's authorization to sell certain real property located at the northwest corner of N. Durango Drive and Deer Springs Way in the City of Las Vegas, Nevada (the "Property"), free and clear of liens, and (b) requesting a waiver of the 14-day stay under Bankruptcy Rule 6004(h).  Appearances at the hearing are as reflected in the record.  Upon consideration of (i) the Motion, (ii) the Declaration of Nello Gonfiantini III (the "Gonfiantini Declaration") filed in support thereof, (iii) the Declaration of Charles E. Jack IV (the "Jack Declaration") filed in support thereof, (iv) all other pleadings, declarations and papers with respect to the Motion and related matters, (v) the arguments of counsel and the testimony of the witnesses presented at the hearing on the Motion (the "Sale Hearing"), and (vi) such other authorities considered by the Court, it appearing that _____ ("Purchaser") submitted the highest and best offer for the Property; and upon consideration of any oppositions and objections thereto and the record in these cases; and it appearing that due and sufficient notice of the Motion, Sale Hearing, and the auction (the "Auction") has been given and that no other or further notice need by given; and it appearing that the relief provided in this Order is in the best interests of the Debtors, their estates, the creditors thereof and other parties in interest; and for other good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND** that:

A.      On April 20, 2010 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under Chapter 11 of the Bankruptcy Code.  The Debtors are continuing to manage their properties and operate their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

---

[1] Unless otherwise defined herein, capitalized terms have the meanings ascribed to them in the Motion.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

B.      This Court has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

C.      Due and sufficient notice of the Motion, the auction, and the Sale Hearing have been given.

D.      The requirements of Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure and Local Rule 6004 have been satisfied.

E.      Proper, timely, adequate and sufficient notice of the Motion and Sale Hearing and objection period have been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and Local Rules, and no other or further notice is required.

F.      The Debtors do not have sufficient available sources of working capital or funding to carry on the operation of their business without selling the Property.  The Debtors' ability to fund postpetition operations is essential to the Debtors' continued viability and the maximization of value for the estates.  In the absence of the sale, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors and the estates would occur.

G.      The transaction contemplated by the Purchase Agreement and related documentation have been negotiated at arm's length, in good faith and is in the best interests of the Debtors' estates and their creditors.  Specialty Trust has demonstrated that it is an exercise of sound business judgment to enter into the transaction contemplated by the Purchase Agreement and has appropriately exercised its fiduciary duty in maximizing the sale price for the Property.

H.      **[If auction is held**:  The Auction was conducted fairly, afforded bidders a reasonable opportunity to submit bids for the Property, and thereby fostered competitive bidding for the Property.]

H.      **[If no auction is held:**  No bids for the purchase of the Property were submitted to the Debtors other than the Purchaser's offer as reflected in the Purchase Agreement.  Purchaser is the only qualified bidder for the Property and therefore no Auction for the Property is necessary.]

I.      Purchaser has acted in good faith and is therefore a purchaser in good faith of the Property entitled to the protections of Bankruptcy Code section 363(m), and no evidence has been

1  presented that would support avoidance of the transaction pursuant to Bankruptcy Code section

2  363(n).

3      J.    The Property was sufficiently marketed for sale by Specialty Trust and its agents.

4      K.    The consideration being paid by Purchaser is fair and adequate consideration for the

5  Property and represents the highest and best offer and will achieve the highest and best value to the

6  Debtors, their estates and creditors.

7      L.    Based on the Jack Declaration and the Gonfiantini Declaration and other evidence in

8  the record, the Purchaser's purchase offer is market tested and is a reasonable offer based on the

9  current marketplace.

10     M.    Purchase is not an insider, as that term is defined by the Bankruptcy Code, of the

11  Debtors.  Furthermore, no insiders of the Debtors are receiving or retaining any benefit, property or

12  payments in connection with the sale of the Property or other transactions contemplated by the

13  Purchase Agreement except to the extent such insiders have allowed claims against or equity

14  interests in the Debtors and, as a result, may participate in a distribution of sale proceeds.

15     N.    Sale of the Property is permitted pursuant to one or more provisions of section

16  363(f)(1) – (5) of the Bankruptcy Code.  Those non-debtor parties with liens, claims, encumbrances

17  and interests of any kind or nature whatsoever in the Property who do not object to the Motion and

18  the relief requested therein, or who withdraw their objections to the sale, are deemed to have

19  consented pursuant to section 363(f)(2) of the Bankruptcy Code.

20     O.    All other findings of fact and conclusions of law stated by the Court orally on the

21  record at the Sale Hearing are incorporated herein by this reference.

22     **IT IS HEREBY ORDERED** that:

23     1.    The Motion is granted, and the Purchase Agreement (a copy of which is attached

24  hereto as Exhibit A) is hereby approved and incorporated herein by this reference.  All findings and

25  conclusions set forth above and set forth by the Court on the record at the Sale Hearing are

26  incorporated by reference and made part of this Order.

27     2.    **[If auction is held:**  The Auction was conducted fairly, afforded bidders a reasonable

28  opportunity to submit bids for the Property, and thereby fostered competitive bidding for the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Property.] **[If no auction is held:** Purchase is the only qualified bidder for the Property and therefore no Auction for the Property is necessary.]

     3.     All objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled are overruled in their entirety.

     4.     Purchaser is a good faith purchaser entitled to the protections afforded a purchaser pursuant to section 363(m) of the Bankruptcy Code. The sale of the Property is fair and reasonable, and no evidence has been proferred of any grounds to avoid the sale under section 363(n) of the Bankruptcy Code.

     5.     The Debtors are authorized to execute, deliver, fully perform under, consummate and implement the Purchase Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the transactions contemplated by the Purchase Agreement.

     6.     Pursuant to sections 105(a) and 363(b) and (f) of the Bankruptcy Code, on and as of the Closing Date (as defined in the Purchase Agreement), and except as expressly provided in the Purchase Agreement, Purchaser shall acquire all of Specialty Trust's and its bankruptcy estate's right, title and interest in and to the Property, free and clear of: (a) all mortgages, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, restrictions, constructive or resulting trusts, rights of first refusal, or charges of any kind or nature, if any, including, but not limited to, any restrictions on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership (collectively, "Interests"); and (b) all debts, claims (as that term is defined in the Bankruptcy Code), obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests and matters of any kind and nature, and whether imposed by agreement, understanding, law, equity or otherwise, arising in any way in connection with any acts, or failure to act, of any of the Debtors (collectively, "Claims"), whether arising before or after the commencement of the above-captioned Chapter 11 cases, with all such Interests and Claims released, terminated and discharged as to the Property. All such Interests and Claims, if any, shall attach to the proceeds of sale of the Property paid to Specialty Trust by Purchaser to the same extent and with the same priority, validity, force and effect as such Interests

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and Claims had against the Property immediately prior to the Closing, except (i) that such Interests and Claims shall not so attach to the proceeds paid to Specialty Trust by Purchaser if and to the extent otherwise agreed by the holder of any such Interests and Claims, (ii) as necessary to effect the terms of the Purchase Agreement, and (iii) subject to any rights, claims and defenses Specialty Trust may possess as to such holder.

7.      On the Closing, each of the Debtors' creditors and holders of Interests is authorized and directed to execute such documents and take all other actions as may be necessary to release its Interests in or Claims against the Property, if any, as such Interests or Claims may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing interests in or claims against the Property shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction and releases of all Interests or Claims which the person or entity has with respect to the Property, (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property, and (b) Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Order, which once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims of any kind or nature whatsoever in or against the Property.  The foregoing notwithstanding, the provision of this Order authorizing the sale of the Property free and clear of liens, claims, encumbrances and interests shall be self-executing, and notwithstanding the failure of the Debtors, Purchaser or any other party to execute, file or obtain releases, termination statements, assignments, consents or other instruments to effectuate, consummate and/or implement the provisions hereof or in the Purchase Agreement with respect to the sale of the Property, all Interests in or Claims against the Property shall be deemed unconditionally released, discharged, and divested.  This Order is and shall be binding upon and govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities

who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Property.

8.    Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

9.    At closing, Specialty Trust shall pay (a) all closing costs, and (b) the Colliers commission.  The automatic stay is hereby modified as necessary to permit the disbursements from escrow at closing set forth in subsections (a) and (b) of this paragraph 9.

10.    This Court shall retain jurisdiction to (a) interpret, enforce and implement the terms and provisions of the Purchase Agreement, all exhibits and amendments thereto and any releases, waivers and consents thereunder, and any agreements, transaction documents or other instruments executed in connection therewith, (b) resolve any disputes arising under or related to the Purchase Agreement and the closing requirements, except as otherwise provided therein, (c) compel delivery of the Property to Purchaser, and (d) interpret, implement and enforce the provisions of this Order.

11.    The provisions of the Purchase Agreement and this Order and any actions taken pursuant thereto shall survive entry of any order which may be entered confirming any plan of reorganization or liquidation for the Debtors or converting any of the Debtors' cases from chapter 11 to cases under chapter 7 of the Bankruptcy Code or dismissal of the Debtors' cases.  Nothing contained in any such plan or order shall conflict with, or derogate from, the provisions of the Purchase Agreement or this Order (as applicable).

12.    The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement is not material.

13.    The failure to specifically include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 7062, this Order shall be effective and enforceable immediately upon entry.

15.    This Order shall bind the Debtors, the estates, their creditors and interest holders, all of their respective officers, directors, and employees, any official or unofficial committee that has been or may be appointed in these cases, and any successor, trustee or other responsible person, including any trustee appointed under Chapter 7 of the Bankruptcy Code.

16.    The provisions of this Order and the Purchase Agreement are nonseverable and mutually dependent.

# # #

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**<u>Exhibit A</u>**

**Purchase Agreement**