# GATE WAY MASTER PLANNED COMMUNITY CONCEPTUAL PLAN



**N**



# SUBJECT'S 103.93 ACRES WITHIN GATE WAY MASTER PLANNED COMMUNITY CONCEPTUAL PLAN



N



**PART TWO - FACTUAL DATA** (continued)

# AERIAL MAP



## PART TWO - FACTUAL DATA (continued)

---

## SITE DATA

| | |
|---|---|
| **Location:** | Highway 160 & Hacker Street; Thousandaire Blvd. & Eberhard Road, Pahrump, Nye County, NV |
| **Census Tract Number:** | 58.17 |
| **Assessment District:** | No |
| **Access:** | Property has access from Highway 160 |
| **Zoning General Plan Town of Pahrump:** | Mixed Use, Residential, High Density; Commercial Uses |
| **Cross Streets:** | Highway 160; Hacker Street; Thousandaire Blvd.; Eberhard Road. |
| **Accessibility / Visibility:** | The subject property has accessibility and visibility from Highway 160 |
| **Support Facilities:** | Average – The subject property is approximately five miles from distance of goods and services. |
| **Topography:** | Gently Sloping |
| **Surface Drainage:** | Appears adequate |
| **Soils:** | A soil analysis for the site has not been provided for the preparation of this appraisal. In the absence of a soil report, it is a specific assumption that the site has adequate soils to support the highest and best use. |
| **Subsoil Conditions:** | It is assumed that there are no hidden or unapparent conditions to the property, soil, or subsoil, which would render them more or less valuable. Subsurface oil, gas or mineral rights were not considered in this report unless otherwise stated. |
| **Archeological Site:** | No visual evidence of archaeological significance. (See Scope and Extent of Data Collection Process in page 17 of this report.) |
| **Wetland Area:** | No |
| **Wildlife:** | The subject is not located within a wildlife preservation area. |
| **Noise:** | Minimal Highway noise |

## PART TWO - FACTUAL DATA (continued)

| | |
|---|---|
| **Elevation Variation:** | 0% to 3% Elevation Variation |
| **Street Improvements:** | Highway 160 is a two lane paved road with no curbs or gutters. Thousandaire, Eberhard and Hacker roads are dirt roads with minimal access. |
| **Easements:** | There are no known nuisances, hazards, encroachments or easements that appear to have a negative effect on value.  All existing utility easements are presumed to be in existence and within normal setback lines. |
| **Airport Sphere of Influence:** | No |
| **Utilities:** | All utilities appear to be available to the site, but are not warranted. |
| **School District:** | 3200360 Pahrump School District |
| **On – Site Improvements:** | None |
| **Off-Site Improvements:** | Highway 160 is a two lane paved road; All other roads are dirt. |

**Adjacent Uses:**

| | |
|---|---|
| **North:** | Vacant Mixed Use Land |
| **West:** | Vacant Mixed Use Land |
| **South:** | Vacant Mixed Use Land |
| **East:** | Vacant Mixed Use Land |

| | |
|---|---|
| **Unit of Comparison:** | Price per acre; price per paper unit; price per SF |
| **Relationship to and conformity with surroundings:** | Good |
| **Functional adequacy:** | Good |
| **Allowable Uses in the District:** | Commercial/ Residential |
| **Major Flaws in the Site:** | None |
| **Environmental:** | It is assumed that there are no potentially hazardous materials (i.e. toxic waste) resulting from past use of the property, construction or maintenance of any of the buildings.  Such a condition may or may not be present. The appraiser is not qualified to detect such substances.  Therefore, if desired, the client should retain an expert in the field. |

**PART TWO - FACTUAL DATA** (continued)

_____

**Comments:**                    The physical and functional characteristics of the subject parcels meet the desires and standards of typical purchasers in the market. Overall the site has an average location compared to competing sites in the market.

## THE HIGHEST AND BEST USE

Highest and best use is defined as "that reasonable and probable use that supports the highest present value, as defined, as of the effective date of the appraisal." Alternatively, that use from among reasonably probable and legal alternative uses, found to be physically possible, appropriately supported, financially feasible, and which results in highest land value.

"The definition immediately above applies specifically to the highest and best use of land. It is to be recognized that in cases where a site has existing improvements on it, the highest and best use may very well be determined to be different from the existing use. The existing use will continue, however, unless and until land value in its highest and best use exceeds the total value of the property in its existing use..." "Implied within these definitions is recognition of the contribution of that specific use to community environment or to community development goals in addition to wealth maximization of individual property owners. Also implied is that the determination of highest and best use results form the appraiser's judgment and analytical skill, i.e., that the use determined from analysis represents an opinion, not fact to be found. In appraisal practice, the concept of highest and best use represents the premise upon which value is based."[1]

Highest and best use of a property is typically discussed as both vacant and as currently improved or proposed. In addition, there is discussion about the ideal improvement the property could support as indicated in the neighborhood analysis of this report. This ideal improvement can then be compared to the proposed buildings for differences that would affect value.

### A. HIGHEST AND BEST USE ANALYSIS (Vacant Land)

**1. Legally Permissible:**

The subject property is located in the Town of Pahrump, Nye County, NV. The general plan land designation is a mix of residential and commercial uses. Some of the legally permissible uses include low, medium and high density residential development, regional and neighborhood commercial uses.

**2. Physically Possible:**

The Site Data and Improvement Data sections of this report displayed detailed characteristics of the site. The subject property consists of two non-contiguous parcels totaling 103.93 acres within the 920 acre proposed master planned Gateway Community. Approximately 201.65 acre feet of water rights appropriated to the subject's 103.93 acres of vacant land allow for the legally permissible and physically possible development of the subject property. Although it would be physically possible to develop the subject parcels alone, due to the subject's physical location with the proposed Gateway Master Planned Community, it would also be physically possible to assemble with the adjacent parcels and remain part of the larger planned development.

---

[1] Byrl N. Boyce, Ed., Real Estate Appraisal Terminology (Cambridge, Mass: Ballinger Publishing Company, 1981), pp. 126-127.

# THE HIGHEST AND BEST USE

## A. HIGHEST AND BEST USE ANALYSIS (As Is – Vacant Land)

### 3. Financially Feasible:

The Regional/City and Neighborhood Sections earlier in this report discussed current and expected supply and demand for commercial and mixed use parcels in the region and the immediate vicinity of the subject property. There are several vacant land parcels in the subject's immediate district, none of the parcels can be developed without appropriate water rights to support the residential and commercial development. The water rights for the subject property have an estimated value of $12,500 per acre. The water rights could be sold off separate from the vacant land for approximately $2,521,000. However, the severance damage to the subject property by selling the water rights and leaving the vacant land fallow, would negatively impact the value of the vacant land more than the water rights value alone.

### 4. Maximally Productive:

In the final analysis, a determination must be made as to which physically possible and legally permissible use would produce a financially feasible use that generates the highest net return on the land for the longest period of time. An analysis of every possible use for the subject property that might be approved by local government during the site specific planning is beyond the scope of this report.

The subject site is in the path of development and has good access and visibility and adequate water rights to support development. Due to the physical location of the subject property within the proposed Gateway Master Planned Community, the maximally productive use of the subject property is to keep the appropriated water rights with the land and remain as part of the proposed Gateway Master Planned Community.

### 5. Conclusion:

Later in the report the reader will note that the test for economic feasibility to immediately start development is whether the bulk or wholesale market value is equal to or greater than the cost of production. In the subject's case, it  proved to be infeasible to continue to develop the subject property at the present time.

## B. THE IDEAL IMPROVEMENT

The ideal improvement for the subject property would be to develop into medium density and high density residential development according to the Gateway Master Planned Community zoning regulations.

## C. HIGHEST AND BEST USE ANALYSIS (As Proposed)

### 1. Legally Permissible:

The subject  property  is located  in  the Town of Pahrump, Nye County, NV.  The general plan land designation is a mix of residential and commercial uses.  Some of the legally permissible uses include low, medium and high density residential development, regional and neighborhood commercial uses.

---

**C. HIGHEST AND BEST USE ANALYSIS (As Proposed)**

**2. Physically Possible:**

The Site Data and Improvement Data sections of this report displayed detailed characteristics of the site. The subject property consists of two non-contiguous parcels totaling 103.93 acres within the 920 acre proposed master planned Gateway Community. Approximately 201.65 acre feet of water rights appropriated to the subject's 103.93 acres of vacant land allow for the legally permissible and physically possible development of the subject property. Although it would be physically possible to develop the subject parcels alone, due to the subject's physical location with the proposed Gateway Master Planned Community, it would also be physically possible to assemble with the adjacent parcels and remain part of the larger planned development.

**3. Financially Feasible:**

The Regional/City and Neighborhood Sections earlier in this report discussed current and expected supply and demand for commercial and mixed use parcels in the region and the immediate vicinity of the subject property. The current markets (commercial land and improved property) are unstable and may continue to remain unstable for the next 6 to 12 months. The over supply of Residential lots and dwellings is expected to be absorbed in approximately 18-24 months. Later in the appraisal the reader will note that the current Bulk or Wholesale Market Value of the entire Gateway Master Planned Community is less than the cost of production making it financially infeasible to develop the subject property at this time.

**4. Maximally Productive:**

In the final analysis, a determination must be made as to which physically possible and legally permissible use would produce a financially feasible use that generates the highest net return on the land for the longest period of time. An analysis of every possible use for the subject property that might be approved by local government during the site specific planning is beyond the scope of this report.

The subject site is in the path of development and has good access and visibility. The maximally productive use for the subject property would be to remain a part of the proposed Gateway Development and maintain the existing water rights.

**5. Conclusion:**

Later in the report the reader will note that the test for economic feasibility to immediately start development of the proposed Gateway Development is whether the bulk or wholesale market value ($111,713,000) is equal to or greater than the cost of production ($186,020,000). In the proposed Gateway Development's case, it proved to be infeasible to start the development at the present time. Further analysis in the discounted cash flow indicated that development of the Gateway Development and subsequently the subject property will be economically feasible if the property were to be held for three years before starting development (i.e. Prospective Bulk or Wholesale Market as of 3/5/2015 ($200,305,000) is greater than the prospective Cost of Production as of 3/5/2015 ($199,009,000) indicating the highest and best use is to hold for three years before completing entitlements and starting construction.

**APPRAISAL METHODOLOGY**

Every real property is different and there are many types of value that can be estimated for any real property.  For this appraisal assignment, the  appraiser is estimating the market value of the subject property as of March 5, 2010.  The definition of Market Value has been defined in the Purpose of the Appraisal section of this report.  The subject property and type of value desired have been identified and so the appraisal problem has been defined.

In the appraisal process, it is my intention to present a properly supported value conclusion for the subject property.  The market data, analysis, and conclusions presented in the report guide a reader in reaching a similar value conclusion as the appraiser.

In the LAND VALUE SECTION of an appraisal report, market data and other information pertaining to land value are presented along with an analysis of the data and reasoning that lead to the land value estimate.  The factors that affect land value should be presented in a clear and precise manner.  The narrative should lead the reader to the land value estimate.

Depending on a specific appraisal assignment, any of the following six methods may be used to value land.

1.     Sales Comparison
2.     Allocation
3.     Extraction
4.     Subdivision Development
5.     Land Residual
6.     Ground Rent Capitalization

In the COST APPROACH, and estimated reproduction or replacement cost of the building and land improvements "as if completed" as of the date of the appraisal is developed, together with an estimate of the losses in value that have taken place due to design and plan on neighborhood influences.  To the depreciated building cost estimate, entrepreneurial profit and the estimated value of the land are added.  The total represents the value indicated by the cost approach.

In the SALES COMPARISON APPROACH, the subject property is compared to similar properties that have been so0ld recently or for which listing prices or offering figures are known.  Data for generally comparable properties are used and comparisons are made to demonstrate a probable price at which the subject property would be sold if offered on the market.

In the INCOME CAPITALIZATION APPROACH, the "as if complete" rental income to the property is shown with deductions for vacancy and collection loss and expenses.  The prospective net operation income of the property is estimated.  To support this estimate, comparable properties may be reviewed along with available operation cost estimates.  An applicable capitalization method and appropriate capitalization rates are developed and used in computations that leads to value indications.

# APPRAISAL METHODOLOGY

---

**APPRAISAL METHODOLOGY** (continued)

In the LAND RESIDUAL METHOD of land valuation is simply an extension of the previously indicated approaches and feasibility. Subtracting the hard and soft costs of development, as well as the developer's profit, from the present value of the future benefits indicates a residual to raw vacant land. The Land Residual Method is a good check of the results from previous value approaches.

The subject property consists of two non-contiguous parcels totaling 103.93 acres and 201.65 acre feet of water rights. The subject property is located within the proposed Gateway Master Planned Community. In order to determine the subject's value per acre, the entire 920 acre proposed development must be valued.

1. First the Sales Comparison Approach will be used to determine the "As Is" Market Value of the entire 920 acres.

2. Next, the Land Residual Technique will be used to determine the "As Is" market value Of the entire 920 acre development. The sales comparison approach will be used to determine the aggregate retail of the 4,630 finished residential lots, the 11 multi-family super pads and the 6 commercial super pads.

3. A discounted cash flow analysis will be performed to determine the "as if complete" bulk or wholesale market value of the entire project if sold to a single buyer. If the bulk or wholesale market value is less than the cost of production, this will show economic infeasibility and determine the highest and best use for the entire project will be to hold for future development. If this proves to be true, then further analysis will be done to determine when the project will be ready for development and when the finished product should enter the market.

4. Next, the results from the Sales Comparison Approach and the Land Residual Technique will be reconciled into an indication of value for the entire 920 acres. The value per acre will then be multiplied by the 103.93 acres to determine the "as is" market value of the subject property.

5. Conversations with The Focus Group a major water rights brokerage firm in Las Vegas, NV indicated that although water rights are not valued as high as they were in 2004-2005, they have not decreased in value as significantly as vacant land values. The Focus Group indicated the value per acre foot for water rights in the subject's immediate district are approximately $12,500 per acre foot.

6. Lastly, the final "as is" market value of the subject property will be allocated between the value of the vacant land and the value of the subject's 201.65 acre feet of water rights.

## THE SALES COMPARISON APPROACH

---

**I. Sales Comparison Approach for 920 Acres Vacant Mixed Use Land (Fee Simple)**

I have searched the market for similar land sales and listings in the subject's district and have specifically researched those areas near the subject property.  Special emphasis was given to sales that were considered competitive with the subject property.  I have judged that the following sales will offer objective support for the value of the subject property.

Following is the physical data of these sales along with the comparison grid and the appraiser's analysis of adjustments made in the grid.

## THE SALES COMPARISON APPROACH

### COMPARABLE LAND SALES MAP



## LAND SALE COMPARISON #1

**Location:** Miller Lane & Main Street, Fernley, NV

**Identification:** Assessor's Parcel Numbers: #021-041-07 & 09
Lyon County, NV

**Thomas Map Guide:** N/A

**Date of Sale:** 9/2008

**Documentation:** Instrument No. 432013 Official Records,
Lyon County, NV.

**Buyer:** DB-BB Investments, LLC

**Seller:** SCC-Canyon II, LLC

**Sale Price:** $3,800,000

**Property Rights Conveyed:** Fee Simple Interest

**Financing:** Conventional

**Cash Equivalency:** $3,800,000

**Conditions of Sale:** Arms Length

**Market Conditions:** **Unstable**

**Site Size:** 79.33 Acres

**Access:** Good

**Topography:** Mostly Level

**Building Improvements:** None

**Utilities:** Water Rights and Public utilities appear to be available to the site

**Zoning:** Residential

**Price Per Acre:** $47,901/Acre

## LAND SALE COMPARISON #1 CONT'D.

**Present Use at Time
of Sale:**     Vacant Land

**Highest and Best Use:**  Hold for Near Term Development 3-5 Years

**Verification:**    Loopnet; RealQuest; Lyon County Records

**Comments:**     This property is smaller in size when compared to the
subject property and has residential zoning. This property
was sold with adequate water rights for development.

**COMPARABLE LAND SALE #1 PARCEL MAP**

## LAND SALE COMPARISON #2

**Location:**                    Windimere at Providence Cliffs, Las Vegas, NV

**Identification:**              Assessor's Parcel Number 124-24-112
                                 Las Vegas, Nevada.

**Thomas Map Guide:**           N/A

**Date of Sale:**               10/21/09

**Documentation:**              Documentation Number, 91021003990
                                Las Vegas, NV.

**Buyer:**                      Ryland Homes Nevada, LLC

**Seller:**                     Vegas Valley KHI Acquisition

**Sale Price:**                 $5,841,000

**Property Rights
Conveyed:**                     Fee Simple Interest

**Financing:**                  Cash

**Cash Equivalency:**           $5,841,000

**Conditions of Sale:**         Arms length transaction.

**Market Conditions:**          Unstable

**Site Size:**                  100.08 Acres

**Access:**                     Good

**Topography:**                 Mostly Level

**Building Improvements:**      None

**Utilities:**                  Water Rights and all public utilities appear to be available
                                to the sight But not warranted.

**Zoning:**                     Residential

**Unit Price Per Acre:**        $58,360/Acre

## LAND SALE COMPARISON #2 CONT'D.

**Present Use at Time
of Sale:**                         Vacant Land

**Highest and Best Use:**          Near Term Development 2-3 Years

**Verification:**                  Loopnet; RealQuest; Clark County Records

**Comments:**                      This property is smaller in size and has residential zoning.
                                    This property was fully entitled at the time of the sale.

# COMPARABLE LAND SALE #2 PARCEL MAP



| LAND SALE COMPARISON #3 |
|---|

| | |
|---|---|
| **Location:** | Rio Wrangler Parkway, Reno, NV |
| **Identification:** | Assessor's Parcel Number 140-67<br>Washoe Co., NV |
| **Thomas Map Guide:** | N/A |
| **Date of Sale:** | 7/28/09 |
| **Documentation:** | Grant Deed recorded as Instrument 3831840 in Official Records, Washoe County, NV. |
| **Buyer:** | Lennar Reno |
| **Seller:** | Bailey & Dutton |
| **Sale Price:** | $6,600,000 |
| **Property Rights Conveyed:** | Fee Simple Interest |
| **Financing:** | Cash |
| **Cash Equivalency:** | $6,600,000 |
| **Conditions of Sale:** | Auction Sale. |
| **Market Conditions:** | Unstable |
| **Site Size:** | 76.56 Acres (696 Residential Lots) |
| **Access:** | Good |
| **Topography:** | Mostly Level |
| **Building Improvements:** | None |
| **Utilities:** | All public utilities appear to be available to the site |
| **Zoning:** | Residential |
| **Unit Price Per Acre:** | $86,206/Acre |

## LAND SALE COMPARISON #3 CONT'D.

**Present Use at Time
of Sale:**                   Finished Residential Lots

**Highest and Best Use:**     Hold Near Term 2-3 Years for vertical construction

**Verification:**              CoStar Group

**Comments:**               This property is smaller in size when compared to the
subject property.  This property was sold at auction and was
developed as 696 finished residential lots.



**COMPARABLE LAND SALE #3 PARCEL MAP**

## LAND SALES COMPARISON GRID (FEE SIMPLE ) 920 Acres as of 3/5/2010

| FACTOR | SUBJECT | NO. 1 | | NO. 2 | | NO. 3 | |
|---|---|---|---|---|---|---|---|
| Location | Highway 160 Pahrump, Nevada | Main Street & Miller Road, Fernley, Nevada | | Windimere Parkway Las Vegas, Nevada | | Rio Wrangler Parkway Reno, Nevada | |
| Date of Sale | 3/5/2010 | 9/19/2008 | | 10/21/2009 | | 7/28/2009 | |
| Sale Price | $60,270,120 | $3,800,000 | | $5,841,000 | | $6,600,000 | |
| Size (Acres) | 920 Acres | 79.33 Acres | | 100.08 Acres | | 76.56 Acres | |
| Price Per Acre | $65,511 | $47,901 | | $58,360 | | $86,206 | |
| CHARACTERISTIC SUBJECT | | | | | | | |
| Property Rights | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Financing Terms | Cash | Cash | | Cash | | Cash | |
| Conditions of Sale | Arm's Length | Arm's Length | | Arm's Length | | Distress Sale +10% | |
| Market Conditions | Negative | Less Negative | (10%) | Negative | -0- | Negative | -0- |
| Adjusted Price Per Acre | $65,511 | $43,111 | | $58,360 | | $94,826 | |
| PHYSICAL ADJUSTMENTS | | | | | | | |
| Size | 920 Acres | 79.33 Acres | (1,500) | 100.08 Acres | (1,000) | 76.56 Acres | (1,500) |
| Shape | Rectangular | Rectangular | -0- | Rectangular | -0- | Rectangular | -0- |
| Location | Average | Inferior | +10,000 | Similar | -0- | Superior | (10,000) |
| Water Rights | Yes | Yes | -0- | Yes | -0- | Yes | -0- |
| Zoning | Mixed \Use | Residential | +2,500 | Residential | +2,500 | Residential | +2,500 |
| Off-Sites/Utilities | Yes | Similar | -0- | Similar | -0- | Superior | (15,000) |
| Access | Good | Good | -0- | Good | -0- | Good | -0- |
| Highest & Best Use | Hold Near Term Development 3 Years | Similar | -0- | Similar | -0- | Similar | -0- |
| Area Reputation | Good | Inferior | +10,966 | Inferior | +10,966 | Similar | -0- |
| Entitlements | No | No | -0- | Yes | (5,000) | Yes | (5,000) |
| ADJUSTMENTS | | | | | | | |
| Size | (1,000); (1,500) | 41,611 | | 57,360 | | 93,326 | |
| Location | (10,000); +10,000 | 51,611 | | 57,360 | | 83,326 | |
| Zoning | +2,500 | 54,111 | | 59,860 | | 85,826 | |
| Off-Sites; Intracts | (15,000) | 54,111 | | 59,860 | | 70,826 | |
| Entitlements | (5,000) | 54,111 | | 54,860 | | 65,826 | |
| Area Reputation | +10,966 | 65,077 | | 65,826 | | 65,826 | |
| Net Adjustment | | +21,966 | | +7,466 | | (29,000) | |
| Adjusted Unit Price | $65,511 | $65,077 | | $65,826 | | $65,826 | |
| WEIGHTED VALUES | | | | | | | |
| Reliability (1-10) | | 8 | | 8 | | 8 | |
| Contribution (%) | | 0.333 | | 0.333 | | 0.333 | |
| Contribution ($) | $65,511 | $21,671 | | $21,920 | | $21,920 | |

*DOZIER APPRAISAL COMPANY*
47

## LAND RESIDUAL TECHNIQUE

---

I.    **Comparable Land Sales Analysis (continued)**

"The sales comparison approach may be used to value land that is actually vacant or land that is being considered as though vacant for appraisal purposes.  Sales comparison is the most common technique for valuing land and it is the preferred method when comparable sales are available.  To apply this method, sales of similar parcels of land are analyzed, compared and adjusted to provide a value indication for the land being appraised.   In the comparison process the similarity or dissimilarity of the parcels is considered."[2]

Adjustments to each of the sales is required for significant differences which effect value.  "The order in which quantitative adjustments are applied to the sale prices of comparable properties" is called the sequence of adjustments.  "The sequence of adjustments is determined by the market and through analysis of the data."[3]  Using the sequence, the appraiser obtains intermediate price figures and applies succeeding adjustments to each previously adjusted price.  The adjustments applied to the price of a comparable property reflect the sale's superiority or inferiority in regard to the real property rights conveyed, financing, conditions of sale, market conditions, location, and physical characteristics.

There are "basic elements of comparison that should always be considered in Sales Comparison Analysis"[4] and other physical differences.  All of the sales sold as fee simple estates as arm's length transactions and therefore, adjustments were not required for these aspects.

1.    **Property Rights, Financing Terms and Conditions of Sale:**

All comparable site sales were sold or listed as Fee Simple Estates.  Financing terms for the sales represented cash or its equivalent to the sellers.  Lastly, Conditions of Sale were based on an arm's length basis.  Comparable Sale #3 was a distress sale.  Therefore, an upward adjustment of 10% per acre was made to Comparable Sale #3.These three characteristics of the sale properties are equal to the assumptions being applied to the subject property.

2.    **Time and Market Conditions:**

Market Value estimates assume an open and competitive marketplace.  Current market conditions leading up to the date of appraisal have been a period of increasing market activity.  Proper analysis of sales transactions in comparison to the subject is for circumstances to parallel the definition of Market Value.  To the extent that any of the conditions of a sale differ substantially from the elements in the definition, without appropriate adjustment, the transaction fails as evidence of Market Value.
The subject property is being appraised during negative market conditions. Comparable Sale #1 was sold during less negative market conditions.  Therefore, a downward adjustment of 10% per acre was made to Comparable Sale #1.

---

[2] The Appraisal of Real Estate, 12th Edition, (Chicago: Appraisal Institute, 2001), Page 337

[3] The Appraisal of Real Estate, 12th Edition, (Chicago: Appraisal Institute, 2001), Page 443

[4] The Appraisal of Real Estate, 12th Edition, (Chicago: Appraisal Institute, 2001), Page 426

## LAND RESIDUAL TECHNIQUE

---

**I.  Comparable Land Sales Analysis** (continued)

   **3.  Size Adjustment:**

      All three comparable sales are smaller than the subject property.  Therefore, downward adjustments were made according to size.

   **4.   Location Adjustment**

      Comparable sale #1 has an inferior location when compared to the subject.  Comparable sale #3 has a superior location compared to the subject property.  Therefore, appropriate adjustments were made according to location.

   **5.   Zoning Adjustment:**

      The subject property is zoned for a mixed-use commercial/residential development.  All three Comparable sales are zoned for residential uses only.  Therefore, an upward adjustment of $2,500 per acre was made to all three Comparable Sales.

   **6.   Off-Sites & Intracts Adjustment:**

      Comparable Sale #3 has superior improvements compared to the subject property.  Therefore, a downward adjustment of $15,000 per acre was made to comparable sale #3.

   **7.   Entitlements Adjustment:**

      Comparable Sale #2 & #3 were sold fully entitled.  The subject property is unentitled.  Therefore, a downward adjustment of $5,000 per acre was made to Comparable sale #2 & #3.

   **8.   Area Reputation Adjustment:**

      A matched pair was found between comparable sale #2 & #3.  They are exactly alike except comparable sale #2 has an inferior area reputation.  Comparable  #1 also has an inferior area reputation.  Therefore, an upward adjustment of $10,966 per acre was made to Comparable sale #1 & #2.

**Vacant Land  Conclusion for 920 Acres (Fee Simple):**

The land sales described in this report were representative of the current market in the subject's neighborhood.  These sales allowed for derivation of market adjustments to be applied for differences between the sales and subject property.  The results from the grid indicated a range of $65,077 to $65,828 per acre with an adjusted price per acre of $65,511 for the subject property.

Reliability factors from 1 to 10, 10 being the most comparable, were assigned to the comparable sales.  The sales were rated for reliability on the basis of size and number of adjustments.  Adding these factors together and dividing individually indicated a percent contribution for each sale.  Multiplying these contributions by the adjusted sale value indications per acre indicated a dollar contribution per sale.  Adding these dollar contributions together indicated a dollar per acre value for the subject site.  The market value indication of the site can therefore, be calculated as follows:

| 920 Acres Vacant Land | X | $65,511 per acre | = | $60,270,120 |
|---|---|---|---|---|
| "As Is " Market Value  – Fee Simple  (rounded) | | | = | $60,270,000 |

**LAND RESIDUAL TECHNIQUE**

---

**II.  Land Residual Technique ( Fee Simple) –920 Acres (4,630 Finished Residential Lots; 6 Commercial Super Pads and 11 Multi-Family Super Pads "As If Complete")**

   **A.    Cost of Production Analysis**

   Production cost is the cost of construction at current prices of an exact duplicate, or replica, using the same materials, construction standards design, layout, and quality of workmanship, and embodying all the deficiencies, superadequacies, and obsolescence of the proposed subject Parcel improvements.  In the analysis of the cost to develop subdivision Parcels (as if complete and ready for sale), the following have been recognized:

   **1. The "As Is" market value of the land by Direct Sales Comparison.**

   **2. Construction Costs:**

   a.  Hard costs:  Direct development costs associated with labor and materials of construction of streets, utilities (on and off site) and any other physical improvements.
   b.  Soft costs:  Indirect development costs associated with non-construction items such as land planning, engineering, marketing, municipal fees, appraisal, financing fees, interest and other entitlement costs.

   **3.  Developer's Profit:**  That profit level necessary to induce a typical developer to undertake the necessary approval, planning and construction to the point of completion of the Parcel subdivision of a given type.

   **4.  Cost Data Source:**

   Typical developer's cost estimates, as determined by local contractor bids and developer quotes and are utilized with reference to the "Marshall Valuation Service", published by Marshall and Swift Publication Company, is a nationally recognized cost estimating company located in Los Angeles, California.  The costs calculated by this method represent a typical bidding target range.  These costs are updated regularly to reflect changes and differences in construction costs by class of construction and location.  This method estimates direct and indirect costs associated with construction development as noted below.

   The cost of replacing a property is generally estimated on a square foot basis.  The value of the land is then added to the replacement cost estimate.  **This cost estimate includes the average architect's and engineers fees, including plans, plan check, building permits and survey to establish building lines and grades; also, normal interest on building funds during the period of construction and processing fees or service charges are included as well as sales tax on materials, normal site preparation, including excavation for foundation and back-fill, as well as, utilities from structure to lot line are figured for typical set-backs.  The contractor's overhead and profit, including job supervision, workmen's compensation, fire and liability insurance, unemployment insurance and so forth are all included.**

**LAND RESIDUAL TECHNIQUE**

---

**II.  Land Residual Technique ( Fee Simple)**

   **A. Cost of Production Analysis (continued)**

      **4.  Cost Data Source: (continued)**

      All other hard and soft costs to develop the land from its "as is" status will be taken into consideration in the cost of production.  Additional costs, not included in the Valuation Service, such as entrepreneurial profit, are estimated and are being included as additional indirect costs."

      **5.  Improvement Valuation  (Per Parcel)**

      The developer's cost estimates will be utilized to develop the cost of production cost estimate as cross-referenced by "The Marshall Valuation Service."

## LAND RESIDUAL TECHNIQUE
_____

### II.  Land Residual Technique (Fee Simple - continued)

   A. Cost of Production Analysis Calculations for 4,630 Residential Lots; 6 Commercial Super Pads; 11 Multi-family Super Pads.

   **Developer's Cost of Production Analysis (To Completion but Prior to Sell Off)**

| Hard Cost | | Subtotal | Total |
|---|---|---|---|
| • **Off-Site Street Improvements** | **Included** | | |
| • **On-Site** (for entire project) | **$105,000,000** | | |
| **Subtotal On-Site Costs** | $105,000,000 | | |
| **Total of Hard Costs** | | **$105,000,000** | |
| **Soft Costs** (not already included in hard costs) | $750,000 | | |
| **Total Soft Cost** | $750,000 | **$750,000** | |
| **Total Hard & Soft Costs** | | | **$105,750,000** |
| Developer's Incentive (Hard and Soft Costs) | | **$10,000,000** | |
| **Total Development Costs** | | | **$115,750,000** |
| Plus: Land Value (920 Acres)* | $60,270,000 | | |
| Plus: Developer's Incentive (of Land Value) | $10,000,000 | | |
| Market Value Indication Via Cost of Production for Entire Gateway Project | | | $186,020,000 |
| **Rounded Bulk or Wholesale Value Indication Rounded** | | | **$186,020,000** |

It is concluded that the wholesale or bulk market value indication by the cost approach of the subject entire Gateway Community "as if complete" is as follows:

| | |
|---|---|
| **TOTAL WHOLESALE OR BULK VALUE BY COST** | $186,020,000 |
| **TOTAL VALUE INDICATION FOR SUBJECT** (rounded) | **$186,020,000** |

**\*The reader will note the prospective cost of production as of 3/5/2015 is $204,555,000.  The difference between the current cost of production and the prospective cost of production is due to a mark-up on the land during the 3 year holding period.**

## LAND RESIDUAL TECHNIQUE

**I. Sales Comparison Approach for the Aggregate Retail of  4,630 Finished Lots as of 3/5/2015(Fee Simple)**

I have searched the market for similar land sales and listings in the subject's district and have specifically researched those areas near the subject property.  Special emphasis was given to sales that were considered competitive with the subject property.  I have judged that the following sales will offer objective support for the value of the subject property.

Following is the physical data of these sales along with the comparison grid and the appraiser's analysis of adjustments made in the grid.

