KAARAN E. THOMAS (NV Bar No. 7193)
ALVIN J. HICKS  (NV Bar No. 1178)
McDONALD CARANO WILSON LLP
100 West Liberty Street,10th Floor
Reno, Nevada  89501
Telephone:    (775)788-2000
Facsimile:     (775)788-2020
Email: kthomas@mcdonaldcarano.com

*Electronically filed on March 25, 2011*

Counsel for Official Committee of Equity Security
Holders

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| In re: | Case No. 10-51432-GWZ |
|---|---|
| SPECIALTY TRUST, INC., | Chapter 11 |
| Debtor. | |
| In re: | Case No. 10-51437-GWZ |
| SPECIALTY ACQUISITION CORP, | Chapter 11 |
| Debtor. | |
| In re: | Case No. 10-51440-GWZ |
| SAC II, | Chapter 11 |
| Debtor. | |
| In re: | Case No. 10-51441-GWZ |
| SAC D-1, LLC | Chapter 11 |
| Debtor. | CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS (DATED March 25, 2011) |
| | **(AFFECTS ALL DEBTORS)** |

# TABLE OF CONTENTS

Page

I. DEFINITIONS AND RULES OF CONSTRUCTION ...................................................1

    A.    Definitions. ..........................................................................................................1

    B.    Rules of Construction. .....................................................................................10

II. DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND
INTERESTS .................................................................................................................11

    A.    Summary and Classification of Claims and Interests. ................................11

    B.    Allowance and Treatment of Unclassified Claims (Administrative Claims
and Priority Tax Claims).................................................................................12

        1.    Administrative Claims. .........................................................................12

        a.    Allowance of Administrative Claims.....................................................12

        b.    Treatment of Administrative Claims. ..................................................13

    C.    Classification and Treatment of Classified Claims and Interests. ...........14

        1.    Class 1 (US Bank Secured Claims).....................................................14

        a.    Class 1A US Bank ST Secured Claims...............................................14

        b.    Class 1B US Bank SAC II Secured Claims.........................................15

        2.    Class 2 (ST Deutsche Bank Secured Claims) ....................................16

        3.    Class 3 (Other Secured Claims)..........................................................18

        4.    Class 4 (ST SAC II Secured Claims) ..................................................20

        5.    Class 5 (ST SAQ Secured Claims) .....................................................20

        6.    Class 6 (Wasatch County SAC II Claim)............................................20

        7.    Class 7 (Unsubordinated Unsecured Claims Excluding Classes 9
and 10)...................................................................................................21

        8.    Class 8 (Intercompany Claims)...........................................................22

        9.    Class 9 (Subordinated Claims against Specialty Trust (BONY))..............22

        10.    Class 10 (US Bank Unsecured Guaranty Claims Against SAQ,
SAC II and SAC D-1) ...........................................................................23

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 00067-6049

11.    Class 11 (Allowed Interests) ........................................................23

III. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............25

A.    Assumption of Executory Contracts and Unexpired Leases .........................25

1.    Assumption of Agreements. ..........................................25

2.    Cure Claims. ...............................................................25

3.    Objections to Assumption. ..........................................26

4.    Resolution of Claims Relating to Assumed Agreements. ........................26

B.    Rejection of Executory Contracts and Unexpired Leases ............................27

1.    Rejected Agreements. ..................................................27

2.    Bar Date for Rejection Damage Claims. ........................27

C.    Post-Petition Contracts and Leases. ..............................................................27

IV. MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN ........................27

A.    Funding of the Plan. .....................................................................................27

B.    Creation of the Liquidating Trust and Appointment of the Liquidating
Trustee. ........................................................................................................28

1.    Management of the Liquidating Trust ...........................28

2.    Funding of the Liquidating Trust ..................................30

3.    Powers and Duties. .......................................................30

4.    Terms of Loan to Liquidating Trust. .............................31

5.    Termination of the Liquidating Trust. ...........................32

6.    Issuance and Distribution of Liquidating Trust Interests. .......................32

7.    Additional Provisions of the Liquidating Trust Agreement. ....................32

A.    Objections to Claims. ...................................................................................33

B.    Distribution of Property Under the Plan. .....................................................33

1.    Manner of Payments Under the Plan. ............................33

2.    No De Minimis Distributions. .......................................34

3.    No Distribution With Respect to Disputed Claims. ......................34

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, 39TH FLOOR
LOS ANGELES, CALIFORNIA 90067-6049

4.    Delivery of Distributions and Undeliverable/Unclaimed Distributions. ................................................................. 34

5.    Estimation of Disputed Claims for Distribution Purposes ..................... 35

A.    Turnover of Books and Records. ................................................. 35

B.    Full Satisfaction. ....................................................................... 35

C.    Compliance with Tax Requirements. ........................................... 36

D.    Setoff, Recoupment and Other Rights. ........................................ 36

E.    Conditions to Effectiveness. ...................................................... 36

F.    Authorization of Entity Action. .................................................. 37

VI.    OTHER PLAN PROVISIONS ............................................................... 38

A.    Exculpation:  No Liability for Solicitation or Prosecution of Confirmation. ........................................................................... 38

B.    Revocation of Plan/No Admissions. ............................................ 38

C.    Modifications of the Plan ........................................................... 38

D.    Dissolution of Committee. .......................................................... 39

E.    Exemption from Certain Transfer Taxes. ...................................... 39

F.    Successors and Assigns. .............................................................. 39

G.    Saturday, Sunday or Legal Holiday. ............................................. 39

H.    Headings ................................................................................... 39

I.    Governing Law .......................................................................... 40

J.    Form of Agreements and Documents ............................................ 40

VIII.    EFFECT OF CONFIRMATION OF THE PLAN ................................... 40

A.    Discharge and Injunction. .......................................................... 40

B.    Payment of U.S. Trustee Fees. .................................................... 41

C.    Retention of Jurisdiction. ........................................................... 41

IX.    RECOMMENDATION AND CONCLUSION ......................................... 43

# LIST OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
| --- | --- |
| A | Class 7 A Creditors |
| B** | Preliminary Term Sheets for Exit Facility |
| C | Liquidating Trust Agreement |
| D* | Initial Trustee and Trust Board of Advisors |
| E* | Schedules of Assumed Agreements (with Cure Amounts) |

- *Exhibits marked with an Asterisk will be filed on or before the Exhibit Filing Date.
- **The Preliminary Term Sheets will be filed two weeks prior to the Confirmation Hearing.

This Plan of Reorganization is proposed by the Official Committee of Equity Security Holders of Specialty Trust, Inc. in the above-captioned chapter 11 cases ("Proponent"):

## I.

## DEFINITIONS AND RULES OF CONSTRUCTION

### A.    Definitions.

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

"2005 Indenture" means that certain Indenture between Specialty Trust, Inc. and Deutsche Bank National Trust Company dated as of July 1, 2005 related to Specialty Trust, Inc. Collateralized Investment Notes.

"2008 Indenture" means that certain Second Amended and Restated Indenture between Specialty Trust, Inc. and Deutsche Bank National Trust Company dated as of March 1, 2009 related to Specialty Trust, Inc. Collateralized Investment Notes

"Administrative Claim" means a Claim for administrative costs or expenses under Bankruptcy Code section 503.

"Allowed" or "Allowed _____ Claim" means:

(a)    with respect to a Claim arising prior to the Petition Date:

(i)    Either:  (1) a proof of Claim was timely filed; or (2) a proof of Claim is deemed timely filed either under Bankruptcy Rule 3003(b)(1)-(2) or by a Final Order; and

(ii)    Either:  (1) the Claim is not a Disputed Claim; or (2) the Claim is allowed by a Final Order or under the Plan; and

(b)    with respect to a Claim arising on or after the Petition Date, a Claim that has been allowed pursuant to Section II.B of the Plan.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date.  Moreover, any portion of a Claim that is satisfied, released or waived during the Cases is not an Allowed Claim.

"Associated Released Parties" means, with respect to a specified entity, its officers, directors, members (with respect to the Equity Committee); and professional advisors (law firms

and financial advisors) acting in their capacity as such, in connection with formulating the Plan and participating in the Chapter 11 cases;

"Ballot" means the ballot to vote to accept or reject the Plan.

"Ballot Tabulator" means an entity designated by the Committee to tabulate Ballots.

"Ballot Deadline" means the deadline established by the Court for the delivery of executed Ballots to the Ballot Tabulator.

"Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as the same may be amended from time to time to the extent applicable to the Cases.

"Bankruptcy Rules" means, collectively, (a) the Federal Rules of Bankruptcy Procedure and (b) the local rules of the Court, as applicable in the Cases.

"Base Rate" shall mean, as of any date of determination, the Adjusted Daily LIBOR Rate in effect and reset each Business Day plus 2.00%; each change in the Base Rate shall take effect simultaneously with the corresponding change or changes in the Adjusted LIBOR Rate, as applicable.

"Business Day" means a day that is not a Saturday, Sunday, or legal holiday.

"Cases" means the Debtors' cases under chapter 11 of the Bankruptcy Code.

"Causes of Action" means causes of action which are Property of the Estate as of the Effective Date including without limitations any actions that arise pursuant to sections 542-553 of the Bankruptcy Code.

"Claim" means a claim as defined by Section 101(5) of the Bankruptcy Code against one or more of the Debtors or one or more of the Debtors' property.

"Class" means a class of Claims or Interests as classified in Section II.C.

"Committee" means the Official Committee of Equity Security Holders

"Confirmation Date" means the date of entry of the Confirmation Order.

"Confirmation Order" means an order of the Court, in form and substance satisfactory to the Committee confirming the Plan.

"Court" means the United States Bankruptcy Court for the District of Nevada, or any other court that exercises jurisdiction over the Cases.

"CRO" shall mean Grant Lyon or any successor appointed by the Court, in his capacity as Chief Restructuring Officer.

"Cure Claims" means the right to payment of cash or the distribution of other property (as the parties may agree or the Court may order), as necessary to cure defaults under an executory contract or unexpired lease of the Debtors, or as otherwise required by Bankruptcy Code section 365(b) as a condition of assumption, so that the Liquidating Trust may assume the contract or lease pursuant to Bankruptcy Code section 1123(b)(2).

"Debtors" means, collectively, (i) Specialty Trust, Inc., a Maryland corporation REIT, (ii) Specialty Acquisition Corp., a Delaware corporation, (iii) SAC II, a Nevada limited liability company and (iv) SAC D-1, LLC, an Arizona limited liability company.

"Deutsche Bank" means Deutsche Bank National Trust Company in its capacity as indenture trustee under the 2005 Indentures or the 2008 Indentures, as the context requires.

"Deutsche Bank ST 2005 Collateral" means all of the real and personal property and other interests securing payment of the notes subject to the 2005 Indenture.

"Deutsche Bank ST 2008 Collateral" means all of the real and personal property and other interests securing payment of the notes subject to the 2008 Indenture.

"DIP Facility" means that certain debtor-in-possession financing facility, by and between Northlight Real Estate Group LLC and the Debtors, as approved by the Court pursuant to that certain order entered December 15, 2010 and as may be amended from time to time.

"DIP Lender" means the lender under the DIP Facility.

"Disallowed" or "Disallowed Claim" means a Claim, or any portion thereof, that:  (a) is not listed on the Debtors' Schedules, or is listed therein as contingent, unliquidated, disputed, or in an amount equal to zero, and whose holder has failed to timely file a proof of Claim; or (b) has been disallowed pursuant to order of the Court.

"Discharged Liabilities" has the meaning ascribed to it in Section VI of the Plan. Since the Plan is a Liquidating Plan none of the Debtors are entitled to a "discharge" as that term is defined in Bankruptcy Code Section 1141.

"Disclosure Statement" means the disclosure statement to accompany the Plan, as it

subsequently may be modified or amended, and all exhibits thereto.

"Disputed Claim" means (i) with respect to a Claim arising before the Petition Date (including a 503(b)(9) Claim), a Claim, or any portion thereof, as to which a proof of Claim has been filed or is deemed filed under Bankruptcy Rule 3003(b), and an objection or complaint with respect to such Claim (a) has been timely filed; and (b) has not been overruled or adjudicated against the objector by the Court pursuant to a Final Order or withdrawn, and (ii) with respect to an Administrative Claim, a Claim as to which a party in interest has objected within, if applicable, the time fixed for making such objection.

"Effective Date" means the first Business Day (a) that is at least thirty (30) days after the first day of the month next following the month of the Confirmation Date; (b) on which no stay of the Confirmation Order is in effect; and (c) on which the conditions set forth in Section IV.H. of the Plan have been satisfied or waived by the Committee.

"Equity Committee" means the official committee of equity security holders appointed in the Cases under Bankruptcy Code section 1102 by the U.S. Trustee.

"Estates" means the estates created in the Cases under 11 U.S.C. § 541.

"Exhibit Filing Date" means the last Business Day that is at least seven (7) days prior to the last date for timely objecting to the confirmation of the Plan.

"Exit Facility" means the senior secured credit facility designed to permit the Liquidating Trust to  satisfy its Plan obligations on and after the Effective Date, as described in Section IV.A. of the Plan.

"Exit Facility Documents" means the financing documents with respect to the Exit Facility. Exit Facility Documents will be Filed and finalized prior to the Effective Date.

"Filed" means duly and properly filed with the Court and reflected on the Court's official docket.  "File," "Files," and "Filing" are all conjugations of Filed.

"Final Order" means an order or judgment of the Court entered on the Court's official docket, or an order or judgment made in accordance with Article VI hereof or pursuant to the terms of the Liquidating Trust Agreement by a court of competent jurisdiction, which has not been stayed pending an appeal:

(a)    that has not been reversed, rescinded, stayed, modified, or amended;

(b)    that is in full force and effect; and

(c)    with respect to which:  (1) the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely-filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (2) any such appeal or petition has been withdrawn, dismissed or resolved by the highest court to which the order or judgment was timely appealed or from which review, rehearing, remand, or a writ of certiorari was timely sought.

Notwithstanding the foregoing, the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to any such order shall not prevent such order from being a "Final Order."

"General Unsecured Claim" means a Claim that is not secured by a lien on property of the Estates or subject to a right of setoff pursuant to section 553 of the Bankruptcy Code and that is not an Administrative Claim, a Priority Claim, or a Priority Tax Claim.

"Impair" or "Impaired".  A Claim is not "impaired" if the Plan

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365 (b)(2) of this title or of a kind that section 365 (b)(2) expressly does not require to be cured;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;

(D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease

subject to section 365 (b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and

(E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest..

"Intercompany Claims" means all Claims (whether arising from contract, tort or otherwise) held by any of the Debtors against any other Debtor, whether or not a proof of Claim is filed or deemed filed pursuant to Bankruptcy Code section 501 in any of the Cases.

"Interest" means the interest, whether or not asserted, of any holder of an equity security of the Debtors, as defined in Bankruptcy Code section 101(17), and includes all membership interests and other ownership interests in the Debtors, options, warrants and other instruments or right to participate in the profits of the Debtors or their operations, and rights to acquire or receive any of the foregoing interests.

"Liquidating Trust" or ("Trust") means the trust to be established on the Effective Date pursuant to the Plan, and governed pursuant to the Liquidating Trust Agreement.

"Liquidating  Trust Agreement" means the agreement pursuant to which the Liquidating Trust will be formed, implemented and governed.  A substantially final form of the Liquidating Trust Agreement is attached as Exhibit C to the Plan.  Any revisions or amendments thereto shall be filed by the Exhibit Filing Date.

"Liquidating Trust Assets" means all of the real and personal properties of the Debtors; all claims, causes of action, rights of setoff and recoupment and other general intangibles of the Debtors on the Effective Date including, but not limited to, its loan portfolio and receivables related thereto, its Causes of Action, shareholdings or membership interests in its subsidiaries.  The term is intended to have the broadest possible meaning, as in Bankruptcy Code Section 541.

"Management Fee" or "Management Fees" means the fee or fees paid to one or more management companies or managers for management and operation of Trust Assets, including without limitation, payment of costs of maintenance, taxes, assessments, and professional fees. The Management Fee also includes an allocation of general overhead of the Trust, including

Trustee fees and expenses.  The general overhead of the Trust will be allocated to each Trust Asset on a pro rata basis, based upon the value of each of the Trust Assets as determined by the Debtor's cost basis or as determined by the Trustee where no cost basis is reasonably ascertainable.  The general overhead  of the Trust will be reallocated by the Trustee  as to remaining assets in the Trust as each Trust Asset is sold.

"Liquidating Trustee" or "Trustee" means the trustee of the Liquidating Trust.

"Nadador First Lien Note" means that note in the original principal amount of $14,800,000 executed by Nadador LLC in favor of Specialty Trust, Inc. and pledged to US Bank.

"Net Proceeds" means the proceeds from sale of Trust Assets less: (1) costs of sale, including closing costs and reasonable commissions of sale,  (2) any Management Fees allocatable to the Trust Asset sold;  and (3) payment of any encumbrance on the Trust Asset sold.

"Non-Ordinary Course Administrative Claim" means any Administrative Claim, other than Ordinary Course Administrative Claims, 503(b)(9) Claims, Professional Fee Claims, Cure Claims, or U.S. Trustee Fees.

"Non-Recourse Restructured Note" means the Note or Notes issued by the Liquidating Trustee to holders of Class 3 Allowed Secured Claims.  The Restructured Notes shall be due and payable five (5) years from the Effective Date.  The Restructured Note shall be in an amount equal to the full amount of the Class 3 Allowed Claim and will not bear interest.

"Ordinary Course Administrative Claims" means Administrative Claims based upon liabilities that the Debtors incur in the ordinary course of their business for goods and services and that are unpaid as of the Effective Date.  Ordinary Course Administrative Claims do not include Professional Fee Claims, 503(b)(9) Claims, Cure Claims, U.S. Trustee Fees, tort claims, or other non-contractual claims upon which civil liability may be based that arose after the Petition Date but prior to the Effective Date.

"Petition Date" means April 20, 2010.

"Plan" means this " Chapter 11 Plan of Liquidation Proposed by the Official Committee of Equity Security Holders (Dated March 25, 2011) as it subsequently may be modified or amended.

"Priority Claim" means an Allowed Claim entitled to priority against any Estate under

Bankruptcy Code sections 507(a)(4), 507(a)(5), or 507(a)(7).

"Priority Tax Claim" means an Allowed Claim entitled to priority against one or more of the Estates under Bankruptcy Code section 507(a)(8), and excludes any Claims for taxes attributable to the period after the Petition Date.

"Professional Fee Claim" means a Claim under Bankruptcy Code sections 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred during the pendency of the Cases for which one or more of the Estates is liable for payment.

"Pro Rata" means proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim to (b) the Allowed Claim, is the same as the ratio of (x) the amount of consideration available for distribution on account of Allowed Claims in the Class or Classes which share in the relevant consideration distributed to (y) the amount of all Allowed Claims of the Class or Classes that will share in the relevant consideration distributed.

"Rejection Damage Claim" means a Claim arising under Bankruptcy Code section 365 from the rejection by any of the Debtors of a lease or contract.

"Replacement Lien" means a lien in the proceeds derived from any sale or liquidation of the Trust Assets that shall secure payment of the Restructured Notes issues to the holder or holders of a Class 1A or 1B Secured Claim, a Class 2A, 2B or 2C  Secured Claim, or a Class 3 Secured Claim to secure the payment by the Trust of an amount equal to:  (a) the Net Proceeds received upon the sale or liquidation of the property securing such claim less (b) the amount of such Net Proceeds paid to the holder of such Claim as a result of the sale of such Trust Assets.  The Replacement Lien shall be junior to existing liens including, without limitation, any lien that may be granted to secure the Exit Facility and any pre-petition lien that may secure any Class 1A, 1B, 2A, 2B, 2C or 3 Secured Claim.  All Claims secured by a Replacement Lien shall share in the Replacement Lien pro rata in accordance with the amount of their claim secured by a Replacement Lien.

"Restructured Note" means, with respect to Classes 1 and 2,  the Note or Notes issued by the Liquidating Trustee to holders of Class 1and 2 Allowed Secured Claims.  The Restructured Notes shall be due and payable five (5) years from the Effective Date.  The Restructured Note shall

be for the principal amount of the value of the collateral securing the Allowed Class 1, Class 2 or Class 3 Claim and will bear interest at the Base Rate, which interest will accrue and be paid at maturity, to the extent that it is not paid from the sale of properties securing the Restructured Note. A form of the Restructured Notes will be filed on or before _the Effective Date.

"Restructured Note" means, with respect to Class 3, the non recourse Note or Notes issued by the Liquidating Trustee to holders of Class 3 Allowed Secured Claims. The Restructured Notes will be due and payable five (5) years from the Effective Date. The Restructured Notes shall be in an amount equal to the full amount of the Class 3 Allowed Claim and will not bear interest.

While interest and principal on the Restructured Notes will not be due until maturity, the notes have to provide that they will be paid from the Net Proceeds of the sale of the properties securing the Restructured Notes (after payment of senior encumbrances) prior to maturity.

"SAC II" means SAC II, a Nevada limited liability company, one of the above-captioned debtors and debtors in possession.

"SAC D-1" means SAC D-1, LLC an Arizona limited liability company, one of the above-captioned debtors and debtors in possession.

"SAQ" means Specialty Acquisition Corp., a Delaware corporation, one of the above-captioned debtors and debtors in possession.

"Schedule of Assumed Agreements" means the schedule of executory contracts and unexpired leases that the Debtors will assume and assign to the Liquidating Trust on the Effective Date, together with proposed amount of Cure Claims. A substantially final form of the Schedule of Assumed Agreements and Cure Amounts will be filed by the Exhibit Filing Date as Exhibit E to the Plan. Any revisions or amendments thereto shall be filed by the Exhibit Filing Date and, upon such Filing, shall thereupon be set forth in Exhibit E to the Plan.

"Schedules" means the Schedules of Assets and Liabilities Filed by the Debtors, as such Schedules may have been, or may subsequently be, amended before the Effective Date.

"Secured Claim" means a Claim that is secured by a lien on the property of one or more of the Estates or that is subject to a right of setoff under section 553 of the Bankruptcy Code. A Claim is a Secured Claim only to the extent of the value of the holder of such Claim's interest in

the collateral that is property of one or more of the Estates or to the extent of the amount subject to setoff, as applicable, as determined under Bankruptcy Code section 506(a). Any defenses, counterclaims, rights of offset or recoupment of the Debtors or the Estates with respect to such Secured Claim shall vest in and inure to the benefit of the Liquidating Trust.

"Shareholder" means the holder of an equity security in Specialty Trust, Inc.

"ST" means Specialty Trust, Inc., a Maryland corporation REIT, one of the above-captioned debtors and debtors in possession.

"Trust Certificate" or "Trust Certificates" shall refer to the negotiable certificates to be issued by the Liquidating Trust upon the Effective Date to creditors and Shareholders pursuant to the provisions of the Plan.

"US Bank SAC II Collateral" means all of the real and personal property of SAC II that is secured by a US Bank Allowed Secured claim.

"US Bank ST Collateral" means all of the real and personal property of ST that is secured by a US Bank Allowed Secured claim.

"U.S. Trustee" means the Office of the United States Trustee for the District of Nevada.

"U.S. Trustee Fees" means fees or charges assessed against the Estates pursuant to 28 U.S.C. § 1930.

Williams Canyon Property" means that certain 28.09 acres of real property located in Silverado, California that is owned by SAC II.

"Williams Canyon Note" means that certain promissory note in the face amount of $841,050 issued by SAC II to ST and secured by a deed of trust on the Williams Canyon Property.

**B.** **Rules of Construction.**

1. The rules of construction in Bankruptcy Code section 102 apply to the Plan to the extent not inconsistent herewith.

2. Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3. A term that is used in the Plan and that is not defined in the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

4. The definition given to any term or provision in the Plan supersedes and controls

any different meaning that may be given to that term or provision in the Disclosure Statement.

5.    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.  No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially adversely affected.

7.    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.    Unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a portion of the Plan.

9.    Unless otherwise specified, all references to Sections or Exhibits are references to the Plan's Sections or Exhibits.

10.    The words "herein," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion hereof.

## II.

### DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS

**A.    <u>Summary and Classification of Claims and Interests.</u>**

This Section classifies Claims and Interests—except for Administrative Claims and Priority Tax Claims, which are not classified — for all purposes, including voting, confirmation, and distribution under the Plan.  A Claim or Interest is classified in a Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.

The proposed Plan treatment supersedes and replaces any agreements or rights those

entities may have in or against the Debtors, the Estates, or their respective property. All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

### B. Allowance and Treatment of Unclassified Claims (Administrative Claims and Priority Tax Claims).

#### 1. Administrative Claims.

##### a. Allowance of Administrative Claims.

Allowance of Ordinary Course Administrative Claims: An entity holding an Ordinary Course Administrative Claim may, but need not, File a motion or request for payment of its Claim. The Debtors, the Committee, the Liquidating Trust or any other party in interest may File an objection to an Ordinary Course Administrative Claim in their discretion. Unless an objection is filed to an Ordinary Course Administrative Claim, such Claim will be an Allowed Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim.

Allowance of Professional Fee Claims: Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be an Allowed Claim only if, and to the extent that:

(i)    on or before sixty (60) days after the Effective Date, the entity holding such Professional Fee Claim both Files with the Court a final fee application or a motion requesting allowance of the fees and reimbursement of expenses and serves the application or motion on the Debtors, the Committee (if prior to the Effective Date), the Liquidating Trustee (if after the Effective Date) and the U.S. Trustee; and

(ii)    the Court Allows such Claim by Final Order.

The Debtors, the Committee, the Liquidating Trustee or any other party in interest may File an objection to such application or motion by no later than thirty (30) days after the Filing and service of such application or motion. Entities holding Professional Fee Claims that do not timely File and serve a fee application or motion for allowance of a Professional Fee Claim will be forever barred from asserting those Claims against the Debtors, the Committee, the Liquidating

Trust, the Estates, or their respective property.

Allowance of Cure Claims:  Cure Claims shall be allowed in accordance with the procedures set forth in Section III.1.a.2 below.

Allowance of Non-Ordinary Course Administrative Claims:  Unless otherwise expressly provided in the Plan, Non-Ordinary Course Administrative Claims will be Allowed Claims only if:

(i)      on or before sixty (60) days after the Effective Date, the entity holding such Non-Ordinary Course Administrative Claim both Files with the Court a motion requesting allowance of the Non-Ordinary Course Administrative Claim and serve the motion on the Committee (if before the Effective Date), the Liquidating Trust (if after the Effective Date) and the U.S. Trustee; and

(ii)      the Court Allows such Claim by Final Order.

The Debtors, the Committee, the Liquidating Trust or any other party in interest may File an objection to such motion within thirty (30) days after the expiration of the deadline for the Filing of a Non-Ordinary Course Administrative Claim set forth in subparagraph (i), above (i.e., within ninety (90) days after the Effective Date), unless such time period for Filing such objection is extended by the Court.  Entities holding Non-Ordinary Course Administrative Claims that do not timely File and serve a request for payment will be forever barred from asserting those Claims against the Debtors, the Liquidating Trust, the Estates, or their respective property.

**b.      Treatment of Administrative Claims.**

Treatment of Allowed Ordinary Course Administrative Claims:  Unless otherwise agreed, Allowed Ordinary Course Administrative Claims will be paid by the Debtors' Estates or the Liquidating Trust in accordance with the terms and conditions of the particular transaction that gave rise to the Allowed Claim.

Treatment of Professional Fee Claims:  Unless otherwise agreed, an Allowed Professional Fee Claim will be paid by the Debtors' Estates or the Liquidating Trust, as applicable, within ten (10) days after the date on which the Court Allows such Claim by Final Order.

Treatment of Cure Claims:  The Debtors' Estates or the Liquidating Trust, as applicable, will pay the Allowed amounts of Cure Claims to the non-Debtor parties to the executory contracts or unexpired leases.

<u>Treatment of U.S. Trustee Fees Under 28 U.S.C. § 1930</u>:  The Debtors' Estates or the Liquidating Trust will pay to the U.S. Trustee all fees due and owing under 28 U.S.C. § 1930 on the Effective Date.

<u>Treatment of Non-Ordinary Course Administrative Claims</u>:  Unless the entity holding a Non-Ordinary Course Administrative Claim Allowed by the Court agrees to different treatment, the Debtors' Estates or the Liquidating Trust, as applicable, will pay the full amount of such Allowed Non-Ordinary Course Administrative Claim, without interest, on the later of:  (i) ten (10) days after the Effective Date, or (ii) ten (10) days after the Order Allowing such Claim becomes a Final Order.

<u>Treatment of Claims Under the DIP Facility</u>:  The DIP Lenders will be paid in cash in full the amount of their claims on the Effective Date or as soon thereafter is practicable, unless the DIP Lenders, or any of them, agree to a different treatment.

2.    <u>Priority Tax Claims.</u>

The Claims include an IRS Claim against ST of $177,560.37 and an IRS Claim against SAQ of $5,000.00.

Unless otherwise agreed, the Debtors' Estates or the Liquidating Trust will pay to an entity holding an Allowed Priority Tax Claim the full amount of the Allowed Priority Tax Claim, plus interest calculated at the federal judgment rate, in equal, amortized, annual installments beginning on the first anniversary of the Petition Date that falls on a date following the occurrence of the Effective Date and, thereafter, on each anniversary of the Petition Date through the fifth anniversary of the Petition Date.

C.    **Classification and Treatment of Classified Claims and Interests**.

1.    **Class 1 (US Bank Secured Claims)**

a.    **Class 1A US Bank ST Secured Claims**

<u>Classification</u>:  Class 1A consists of US Bank Allowed Secured Claims against ST.

<u>Impairment</u>:    Impaired

<u>Voting Rights</u>:  Class 1A is entitled to vote on the Plan.

Amount of Claim:  The Class 1A claim shall be in an amount equal to the Net Proceeds of the sale

of the Trust Assets subject to the liens securing the Class 1A Claim.

<u>Security For Claim</u>:  Holders of Allowed Class 1A Claims will retain their liens on the US Bank ST Collateral, which will be subordinated to the lien securing the Exit Facility.  To the extent that the holders of Class 1A Claims do not receive the Net Proceeds from the liquidation of their prepetition collateral because those Net Proceeds are used to repay the Exit Facility, the holders of Class 1A Claims shall receive a Replacement Lien.

<u>Payment of Class 1A Claim</u>:  The holders of the Class 1A Claims will be paid from the Net Proceeds of the liquidation of their collateral, following payment in full of the Exit Facility, and from the Net Proceeds of the collateral securing the Replacement Lien, to the extent of the obligation secured by that lien.

<u>Deficiency</u>:  In the event that the Net Proceeds of liquidation of the Trust Assets securing the Class 1A Claim are insufficient to pay the claim secured by the US Bank ST Secured Claim in full, any remaining balance owed on account of such claim shall be treated as a Class 7 Claim.

<u>Optional Right to Credit Bid</u>:  The holder of the US Bank Restructured Note shall have a one time option to credit bid an amount equal to or greater than any offer acceptable by the Trustee for property secured by said Note provided that the holder of the Note gives written notice of said credit bid to the Trustee within forty-eight (48) hours after notice by the Trustee to the holder of Trustee's acceptance of an offer to purchase the property. Any credit bid must include a cash component to satisfy: 1) the costs of the sale of that property (including any broker's commissions due on account of the sale), (2) the Management Fees allocated to the property for which the credit bid was submitted and (3) any senior lien; provided that, to the extent that any credit bid includes a cash component that is used to satisfy any senior lien, such holder shall receive a Replacement Lien to secure the repayment of such amount.

### b.    Class 1B US Bank SAC II Secured Claims

<u>Classification</u>:  Class 1B consists of US Bank Allowed Secured Claims against SAC II.

<u>Impairment</u>:    Impaired Disputed

<u>Voting Rights</u>:  <u>Disputed</u>

<u>Treatment</u>:    Class 1B shall on the same terms and conditions as the Class 1A Claim;  however,

Class 1B shall be paid only in the event:

(a) The Net Proceeds of US Bank's Class 1A Claim is insufficient to pay or satisfy the amount of US Bank's Allowed Claim and

(b) The Cause of Action seeking to avoid Class 1B's prepetition guaranty and deeds of trust is unsuccessful.

**2.    Class 2 (ST Deutsche Bank Secured Claims)**

Classification:    Class 2 consists of the Deutsche Bank Allowed Secured Claims under the 2005 Indenture and the 2008 Indenture which are held by the holders of notes issued pursuant to the Indenture appointing Deutsche Bank as Indenture Trustee.

Impairment:    Class 2 is Impaired.

Voting Rights:  Class 2 is entitled to vote on the Plan.

Class 2A  Deutsche Bank Claim pursuant to the 2005 Indenture

Treatment:    Amount of Claim:  The Class 2A claim shall be in an amount equal to the Net Proceeds of the sale of the Trust Assets subject to the liens securing the Class 2A Claim.

Security For Claim:    Holders of Allowed Class 2A Claims will retain their liens on their prepetition  Collateral, which will be subordinated to the lien securing the Exit Facility. The liens shall secure payment of a Restructured Note. To the extent that the holders of Class 2A Claims do not receive the Net Proceeds from the liquidation of their prepetition collateral because those Net Proceeds are used to repay the Exit Facility, the balance of the Class 2A Restructured Note shall be secured by the Replacement Lien.

Payment of Class 2A Claim:  The holders of the Class 2A Claims will be paid from the Net Proceeds of the liquidation of their collateral, following payment in full of the Exit Facility, and from the Net Proceeds of the collateral securing the Replacement Lien, to the extent of the obligation secured by that lien .

Deficiency:  In the event that the Net Proceeds of liquidation of the Trust Assets securing the Class 2A Claim are insufficient to pay the balance of the Restructured Note in full, any remaining balance owed on account of such claim shall be treated as a Class 7A Claim.

Optional Right to Credit Bid:  The holder of a note issued under the 2005 Indenture shall have a

one time option to credit bid an amount equal to or greater than any offer acceptable by the Trustee for property secured by said Note provided that the holder of the Note gives written notice of said credit bid to the Trustee within forty-eight (48) hours after notice by the Trustee to the holder of Trustee's acceptance of an offer to purchase the property. Any credit bid must include a cash component to satisfy: 1) the costs of the sale of that property (including any broker's commissions due on account of the sale), (2) the Management Fees allocated to the property for which the credit bid was submitted and (3) any senior lien; provided that, to the extent that any credit bid includes a cash component that is used to satisfy any senior lien, such holder shall receive a Replacement Lien to secure the repayment of such amount.

Class 2B Deutsche Bank Claim under the 2008 Indenture.

Classification:  Class 2B consists of the holders of claims pursuant to the 2008 Indenture.

Amount of Claim:  The Class 2B claim shall be in an amount equal to the Net Proceeds of the sale of the Trust Assets subject to the liens securing the Class 2B Claim.

Security For Claim:  Holders of Allowed Class 2B Claims will retain their liens on the Class 2B Collateral (except for the stock of SAC II), which liens will secure payment of a Restructured Note. In the event Class 2B accepts the Plan, Class 2B Restructured Note shall also be secured by a lien on all real and personal property of SAC II as of the Effective Date (the SAC II Stock Replacement Lien), which lien shall be subordinate to existing liens and to the lien securing the Exit Facility.  To the extent that the holders of Class 2B Claims do not receive payment of their Restructured Note because Net Proceeds are used to repay the Exit Facility, the holders of Class 2B Claims shall receive a Replacement Lien.

Payment of Class 2B Claim:  The holders of the Class 2B Claims will be paid from the Net Proceeds of the liquidation of their collateral, following payment in full of the Exit Facility, and from the Net Proceeds of the collateral securing the Replacement Lien, to the extent of the obligation secured by that lien .

Deficiency:  In the event that the Net Proceeds of liquidation of the Trust Assets securing the Class 2B Claim are insufficient to pay the Restructured Note in full, any remaining balance owed on account of such Restructured Note shall be treated as a Class 7A Claim.

Optional Right to Credit Bid:  The holder of  Class 2B Note shall have a one time option to credit bid an amount equal to or greater than any offer acceptable by the Trustee for property secured by said Note provided that the holder of the Note gives written notice of said credit bid to the Trustee within forty-eight (48) hours after notice by the Trustee to the holder of Trustee's acceptance of an offer to purchase the property. Any credit bid must include a cash component to satisfy: 1) the costs of the sale of that property (including any broker's commissions due on account of the sale), (2) the Management Fees allocated to the property for which the credit bid was submitted and (3) any senior lien; provided that, to the extent that any credit bid includes a cash component that is used to satisfy any senior lien, such holder shall receive a Replacement Lien to secure the repayment of such amount.

### 3.    Class 3 (Other Secured Claims)

This class includes the following Allowed Secured Claims asserted against the applicable Debtor on the chart below.

| Plan Subclass | Debtor against which Claim is Asserted Claim Amount |
|---|---|
| 3A | ST San Joaquin County, CA        $3,745.44 Orange County, CA        $8,286.11 |
| 3B | SAC II Pinal County, AZ claim $8,286.11 |
| 3C | SAC II Ryland Homes (Duck Creek Property) $1,000,000.00 |

Impairment:    Impaired

Voting Rights:  Class 3 is entitled to vote on the Plan.

Treatment:    Holders of Allowed Class 3A and 3B Claims will retain their liens on their Collateral. On the Effective Date, at the election of the Proponent, each Class 3 Claimant's

Collateral will either be abandoned or transferred to the Liquidating Trust. The Proponent will file a Notice of Abandonment as to each Class 3 Creditor whose collateral will be abandoned on or before the Exhibit Filing Date.

Abandonment of Collateral to any Class 3 Creditor shall be in full satisfaction of the Class 3 Creditor's claim.

In the event any Class 3 Collateral is transferred to the Liquidating Trust, the Class 3 Creditor will receive a non recourse Restructured Note for the full amount of their Allowed Claim on the Effective Date and the lien securing their Claim will be subordinated to the lien securing the Exit Facility. To the extent that the holders of Class 3 Claims do not receive the Net Proceeds from the liquidation of their prepetition Collateral because those Net Proceeds are used to repay the Exit Facility, the holders of Class 3 Claims shall receive a Replacement Lien.

Payment of Class 3 Claim:  The holders of the Class 3 Claims will be paid from the Net Proceeds of the liquidation of their collateral, following payment in full of the Exit Facility, and from the Net Proceeds of the collateral securing the Replacement Lien, to the extent of the obligation secured by that lien .

Restructured Note Deficiency:   In the event that the Net Proceeds of liquidation of the Replacement Lien securing a Class 3 Claim are insufficient to pay the Restructured Note in full, any remaining balance owed on account of such deficiency shall be treated as a Class 7A Claim.

Optional Right to Credit Bid:  The holder of the Class 3 Claim shall have a one time option to credit bid an amount equal to or greater than any offer acceptable by the Trustee for property securing their Claim, provided that the holder of the Claim gives written notice of said credit bid to the Trustee within forty-eight (48) hours after notice by the Trustee to the holder of Trustee's acceptance of an offer to purchase the property. Any credit bid must include a cash component to satisfy: 1) the costs of the sale of that property (including any broker's commissions due on account of the sale), (2) the Management Fees allocated to the property for which the credit bid was submitted and (3) any senior lien; provided that, to the extent that any credit bid includes a cash component that is used to satisfy any senior lien, such holder shall receive a Replacement Lien to secure the repayment of such amount.

### 4.    Class 4 (ST SAC II Secured Claims)

<u>Classification</u>:  Class 4 consists of the Allowed Secured Claims held on the Effective Date by ST against the real and personal property of SAC II.

<u>Impairment</u>:    Unimpaired

<u>Voting Rights</u>:  Class 4 is not entitled to vote on the Plan.

<u>Treatment</u>:    The Holder of Allowed Class 4 Claims will retain its rights against the collateral securing the SAC II Claims in accordance with the original terms of the ST SAC II promissory notes and the deeds of trust and other security interests securing the notes. On the Effective Date, the Collateral securing the Sac II Claims will be assigned to the Liquidating Trust.

### 5.    Class 5 (ST SAQ Secured Claims)

<u>Classification</u>:    Class 5 consists of the Allowed Secured Claims held by ST against real and personal property of SAQ:

(1) the Cotton Lane real property securing payment of a promissory note in the principal amount of $2,743,125.00 payable to ST.

(2) the Consolidated Phase 4 real property securing payment of a promissory note in the principal amount of $1,819,331.42 payable to ST.

(Collectively, the "Class 5 Collateral").

<u>Impairment</u>:    Unimpaired

<u>Voting Rights</u>:  ST, as the holder of the Class 5 claims, is not entitled to vote on the Plan.

<u>Treatment</u>:    The Holder of Allowed Class 5 Claims will retain its rights against the  Class 5 Collateral in accordance with the original terms of the SAQ promissory notes and the deeds of trust and other security interests securing the notes. On the Effective Date, the Class 5 Collateral shall be transferred to the Liquidating Trust.

### 6.    Class 6 (Wasatch County SAC II Claim)

<u>Classification</u>:  Class 6 consists of the Wasatch County disputed Secured Claim allegedly secured by the Jordanelle Property of SAC II. To the extent the Court determines the claim to be secured by an enforceable, properly perfected, unavoidable lien or security interest in property granted pursuant to applicable state law.

Impairment:    Impaired

Voting Rights:  Class 6 is entitled to vote on the Plan.

Treatment:    On the Effective Date, the Jordanelle Property will be abandoned in full satisfaction of the Jordanelle Claim.

**7.    Class 7 (Unsubordinated Unsecured Claims Excluding Classes 9 and 10)**

Classification:    Class 7 (and each subclass of Class 7) consists of General Unsecured Claims asserted against the applicable Debtor on the chart below.

| Plan Subclass | Debtor against which Claim is Asserted Claim Holders/Amounts |
|---|---|
| 7A Impaired | **ST**<br>See Exhibit "A"<br>Class 7A claims also include any deficiency claims of Classes 1 and 3 and Class 9 Claims in the event Class 9 Claims are determined not to be subordinated to Class 7 Claims. |
| 7B Impaired<br>Paid in cash in full without interest on Effective Date1* | **SAQ**<br>Tholl Fence/                                    $330.00 |
| 7C Impaired<br>Paid in cash in full without interest on Effective Date* | **SAC II**<br>Ballard Spahr/                          $13,107.36<br>NAI Horizon Valuation/                 $4,753.54<br>Samuels, Green & Steel LLP/        $3,600.00<br>Scythe & Spade of AZ LLC/          $5,000.00<br>Southwest Groundwater Consulting/  $5,454.29 |
| 7D Unimpaired | **SAC D-1**<br>None |

Impairment:    Impaired

Voting Rights:  Classes 7A – 7D are entitled to vote on the Plan.

Treatment:    Holders of Allowed Claims in Class 7A will each receive a certificate for their Pro Rata share of the distributions from Liquidating Trust.

---

[1] *US Bank Claims against ST, SAC II, and SAC D-1 are contingent based upon guarantees given by these Debtors with respect to US Bank's loan to Specialty Trust, Inc.  Debtors assert that US Bank is a fully secured creditor of ST and that the US Bank claims against all Debtors except for ST will be disallowed.

Allowed Claims in Class 7A shall bear interest at the federal judgment rate or such other rate as is necessary to comply with section 1129 of the Bankruptcy Code.

Holders of Allowed claims in Classes 7B and 7C will receive a payment of cash for the full amount of their Allowed Claims, without interest, on the Effective Date.

8.    **Class 8 (Intercompany Claims)**

Classification:  Class 8  consists of Intercompany Unsecured Claims asserted against the applicable Debtor on the chart below:

| Class 8A | Claims Against ST |
| | None |
| Class 8B | Claims Against SAQ. |
| | ST $2,518,063.71 Oak Creek |
| | ST $3,148,937.25 5th & Lincoln |
| | ST $3,953,281.71 JFP 1330 |
| Class 8C | Claims Against SAC II |
| | ST  $873,305.77 |
| Class 8D | Claims Against SAC D-1 |
| | None |

Impairment:    Unimpaired.

Voting Rights:  Class 8 is not entitled to vote on the Plan.

Treatment:     The Class 8 intercompany claims will be transferred to the Liquidating Trust. Holders of Allowed Class 8 Claims will transfer to the Liquidating Trust all of the legal, equitable and contractual rights to which their claims entitle them.

9.    **Class 9 (Subordinated Claims against Specialty Trust (BONY))**

Classification: Class 9 consists of the claims of holders of the unsecured notes of  ST  in the principal face amount of $29,064,444.45  issued pursuant to the Indenture appointing THE BANK

OF NEW YORK MELLON ("BONY") as Indenture Trustee and as more fully identified in Proof of Claim No. 33.

Impairment:  Impaired

Voting Rights:  Class 9 is entitled to vote on the plan.

Treatment:    Holders of Allowed Claims in Class 9 will each receive a certificate for their Pro Rata share of the distributions from the Liquidating Trust. In the event the Class 9 Claims are determined, by Final order of the Court, to be subordinated to Class 7 and 8 claims, The certificates will be satisfied from Trust assets after payment in full of the Claims in Classes 7 and 8, as applicable. In the event the Class 9 Claims are not found to be subordinate, the Class 9 Claims shall be paid as though the holders of Class 9 Claims were members of Class 7A.

Allowed Claims in Class 9 shall bear interest at the federal judgment rate or such other rate as is necessary to comply with section 1129 of the Bankruptcy Code.

**10.    Class 10 (US Bank Unsecured Guaranty Claims Against SAQ, SAC II and SAC D-1)**

Classification:  Class 10 consists of the US Bank's Guaranty Claims against SAQ, SAC II and SAC D-1. Class 10 Claims are contingent and unliquidated.

Impairment:  Impaired

Voting Rights:  Disputed

Treatment:  Class 10 Claims shall be disallowed.

**11.    Class 11 (Allowed Interests)**

Classification:  Class 11  consists of Interests asserted against the applicable Debtor on the chart below:

| Plan Subclass | Debtor against which Interest is Asserted |
|---|---|
| 11A | Specialty Trust, Inc. |

| 11B | Specialty Acquisition Corp. |
|-----|------------------------------|
| 11C | SAC II |
| 11D | SAC D-1 |

a.    Class 11A Specialty Trust, Inc.

Impairment:    Impaired

Voting Rights:  Class 11A is entitled to vote on the Plan.

Treatment:    Holders of Interests in Class 11A (Shareholders), will receive negotiable certificates in the Liquidating Trust that will be in the same amount  as the number of shares of common stock they held in ST. The certificates will be negotiable, but will be entitled to distributions from the Liquidating Trust only after all creditors have been paid in full in accordance with this Plan.

b.    Class 11B Specialty Acquisition Corp.

Impairment:    Impaired.

Voting Rights:  Class 11B is not entitled to vote on the Plan.

Treatment:    ST, as the holder of 100 % of the Interests in SAQ, will cancel all of the stock of SAQ on the Effective Date and cause all of the SAC assets, including Causes of Action, to the Liquidating Trust.

c.    Class 11C SAC II

Impairment:    Impaired

Voting Rights:  Class11C is not entitled to vote on the Plan.

Treatment:    ST, as the holder of 100 % of the Interests in SAQ II, will cancel all of the stock of SAC II on the Effective Date and cause all of the SAC II assets, including Causes of Action, to be transferred to the Liquidating Trust subject to existing and restructured Allowed Claims of Classes 1B and 2B..

d.    Class 11D SAC D-1 LLC

Impairment:    Impaired

Voting Rights:  Class 11D is entitled to vote on the Plan.

Treatment:   The Issued and outstanding interests in SAC D-1 LLC will be cancelled on the Effective Date and Debtors shall cause all of the assets of SAC D-1 LLC , including Causes of Action, to be transferred to the Liquidating Trust.

### III.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    **Assumption of Executory Contracts and Unexpired Leases.**

   1.    **Assumption of Agreements.**

On the Effective Date, the Debtors shall assume all executory contracts and unexpired leases of the Debtors listed on the Schedule of Assumed Agreements, (Exhibit "E") and assign the assumed executory contracts and unexpired leases to the Liquidating Trust.

The Committee reserves the right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date to:  (a) delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (b) add any executory contract or unexpired lease and provide for its assumption under the Plan.  The Committee will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to any agreement affected by the amendment.

The Confirmation Order will constitute a Court order approving the assumption, on the Effective Date, of all executory contracts and unexpired leases identified on the Schedule of Assumed Agreements.

   2.    **Cure Claims.**

Exhibit E will be filed by the Exhibit Filing Date and will contain a list of proposed amounts of Cure Claims for all contracts or leases scheduled to be assumed.  The Debtors or the Liquidating Trust shall pay Allowed Cure Claims on or before ten (10) days following the Effective Date, or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree.  In the event of a dispute regarding (a) the amount of any Cure Claim, (b) the ability of the Liquidating Trust to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, if applicable, or (c) any other matter pertaining to assumption, the cure payments

required by section 365(b)(l) of the Bankruptcy Code shall be made promptly when an order resolving the dispute and approving the assumption becomes a Final Order.  Pending a Final Order resolving such a dispute, the applicable lease or contract shall be neither assumed nor rejected, and the Liquidating Trust may, no later than ten (10) days following a Final Order resolving such dispute, elect to reject the lease or contract subject to the dispute.

### 3.    Objections to Assumption.

Any entity who is a party to an executory contract or unexpired lease that will be assumed under the Plan and that objects to such assumption or the amount of the proposed Cure Claim must File with the Court and serve upon interested parties a written statement and supporting declaration stating the basis for its objection.  This statement and declaration must be Filed and served by no later than ten (10) days prior to the Confirmation Hearing.  Any entity that fails to timely File and serve such a statement and declaration will be deemed to waive any and all objections to the proposed assumption of its contract or lease and the amount of the proposed Cure Claim.  In the absence of a timely objection by an entity who is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination as to the amount of any cure and compensation due under the executory contract or unexpired lease, and that the Liquidating Trust have demonstrated adequate assurance of future performance with respect to such executory contract or unexpired lease.  If Exhibit E is amended then any entity that is a party to an executory contract or unexpired lease that is affected by the amendment shall have fourteen (14) days from the giving of notice of any such amendment to object to the amendment.

### 4.    Resolution of Claims Relating to Assumed Agreements.

In accordance with the procedures set forth in Section III.A.2 relating to the payment of the Cure Claims with respect to executory contracts or unexpired leases that will be assumed under the Plan, payment of the Cure Claim shall be deemed to satisfy, in full, any pre-petition or post-petition arrearage or other Claim asserted in a filed proof of Claim or listed in the Schedules, irrespective of whether the amount of the Cure Claim is less than the amount set forth in such proof of Claim or the Schedules.  Upon the tendering of the payment of the Cure Claim, any such Claim with respect to such agreement shall be disallowed, without further order of the Court or

action by any party.

**B.    Rejection of Executory Contracts and Unexpired Leases.**

**1.    Rejected Agreements.**

On the Effective Date, the Debtors will reject all executory contracts and unexpired leases that are not set forth on the Schedule of Assumed Agreements.

The Confirmation Order will constitute a Court order approving the rejection, on the Effective Date, of all executory contracts and unexpired leases not previously assumed under the Plan.

**2.    Bar Date for Rejection Damage Claims.**

Any Rejection Damage Claim or other Claim for damages arising from the rejection of an executory contract or unexpired lease under the Plan must be Filed and served upon the Liquidating Trustee and counsel to the Liquidating Trust within thirty (30) days after the mailing of notice of the occurrence of the Effective Date. Any such Claims that are not timely filed and served will be forever barred and unenforceable against the Debtors, the Liquidating Trust, the Liquidating Trustee, the Estates, and their respective properties, and any persons or entities holding such  claims or claiming to have such claims,  will be barred from receiving any distributions under the Plan on account of such untimely claims.

**C.    Post-Petition Contracts and Leases.**

Except as expressly provided in the Plan or the Confirmation Order, all contracts, leases, and other agreements that the Debtors entered into after the Petition Date will be retained by the Liquidating Trust.

**IV.**

**MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

**A.    Funding of the Plan.**

Obligations required to be satisfied in cash under the Plan on and after the Effective Date will be satisfied from the Liquidating Trust's cash on hand, including the remaining proceeds of the DIP Facility, the lease or sale of assets, revenues, and the proceeds of the Exit Facility.

Proponent is currently soliciting Preliminary Term Sheets for the Exit Facility. The Exit

Facility will be a senior secured credit facility in the maximum principal amount of Twelve Million Dollars, designed to permit the Liquidating Trust to satisfy its Plan obligations on and after the Effective Date. Proponents expect that the Exit Facility will be secured by Trust Assets. Preliminary term sheets for Exit Facility proposals shall be filed at least two weeks prior to the Confirmation Hearing. At the Confirmation Hearing the Court will determine whether any of the preliminary term sheets shall be accepted as the Exit Facility under a confirmed Plan.

"Exit Facility Documents" means the financing documents with respect to the Exit Facility. Exit Facility Documents will be Filed and finalized prior to the Effective Date.

## B. Creation of the Liquidating Trust and Appointment of the Liquidating Trustee.

The Confirmation Order shall approve, effective as of the Effective Date, the Liquidating Trust Agreement, the establishment of the Liquidating Trust, and the appointment of the Liquidating Trustee. The Liquidating Trust will be organized for the primary purpose of liquidating and distributing assets transferred to it in an orderly and business like fashion over a period of time necessary to assure commercially reasonable liquidation of the assets of the Debtors through orderly collection activities and sales, including the pursuit and prosecution of the Causes of Action. The activities of the Liquidating Trust shall be reasonably necessary to, and consistent with, accomplishing the purposes of this Plan. The Liquidating Trust's liquidation of the assets transferred to it shall not be unreasonably prolonged and its liquidating purpose shall not become so obscured by business activities that its declared purpose of liquidation is lost or abandoned. The Liquidating Trust will have no objective to continue or engage in the conduct of trade or business, except to the extent reasonably necessary to, or consistent with, its liquidating purposes.

### 1. Management of the Liquidating Trust.

The Liquidating Trust Agreement shall provide for the appointment of one (1) person to act as the Liquidating Trustee to administer the Liquidating Trust for a period of five (5) years and for any subsequent periods of time as set forth in the Trust Agreement. The Liquidating Trustee shall be entitled to receive payment of reasonable compensation for his or her services payable on a monthly basis and reimbursement of reasonable expenses from the assets of the Liquidating Trust

without further Court approval, in accordance with the Liquidating Trust Agreement. Details regarding management of the Trust shall be set forth in the Trust Agreement.

Subject to supervision of the Board of Advisors, the Liquidating Trustee shall, among other things, have responsibility for formulating and implementing strategy with respect to the collections of obligations owed upon outstanding loans taken into the Trust, sale or other disposition of Trust Assets and with respect to the pursuit of the Causes of Action.

There also will be a Board of Advisors for the Liquidating Trust, which will initially consist of five (5) members selected as follows: two (2) representatives shall be selected by the holders of Class 1 and 2 Secured Claims; one (1) representative shall be selected by the holders of Allowed Unsecured Claims in Class 7A; one (1) representative shall be selected by the holders of Class 9 Allowed Unsecured Claims (Bank of New York Mellon or its successor); and one (1) representative shall be selected by the Committee on behalf of the holders of Class 11A Interests ( the Shareholders). The Liquidating Trust Agreement shall further provide (i) that as to any representatives of Classes 2, 7A, and 9, such Classes shall lose the right to have representatives serve on the Board of Advisors when all Claims pertaining to such Class are paid or otherwise settled by the Liquidating Trust, and (ii) for a mechanism for appointing successor members to the Board of Advisors of the Liquidating Trust. Among other things, the Advisors representing Classes 7A, 9 and 11A shall consult with the Liquidating Trustee as to strategy with respect to Causes of Action and will have approval rights with respect to certain actions taken by the Liquidating Trustee with respect thereto, including their settlement, release, transfer or abandonment.

The Board of Advisors shall have fiduciary responsibility to the Trust Beneficiaries; however, the responsibility shall be limited to matters on which the Board exercises discretionary authority.

Sales of Trust Assets shall be approved by the vote of sixty (60) per cent of the Board. Settlement of any Cause of Action shall be approved by eighty per cent (80%) of the Board.

The person serving as the initial Liquidating Trustee shall be selected and agreed upon by the representatives of the various Classes entitled to representation on the Board of Advisors (with the Committee acting on behalf of the Shareholders) and identified to the Court at the time of

Confirmation of the Plan. The members of the Board of Advisors for the Liquidating Trust representing the other various Classes entitled to representation shall be selected and identified by their respective constituencies (with the Committee acting on behalf of the Shareholders) on or before the Confirmation Date. In the event a majority of the representatives of the various Classes are unable to agree upon the identity of the proposed Liquidating Trustee on or before the Confirmation Date, the Court shall select the Liquidating Trustee from candidates who are qualified to perform such functions who are offered by any of the constituent parties.

## 2.    Funding of the Liquidating Trust.

The Liquidating Trust will be funded on or as soon as reasonably practicable following the Effective Date with the Liquidating Trust Assets and the Exit Facility.

For federal income tax purposes, a transfer of assets to the Liquidating Trust for the benefit of holders of Allowed Claims and Allowed Interests shall be treated as a transfer of assets to such holders to the extent that such holders are beneficiaries of the Liquidating Trust. The transfer will be treated as a deemed transfer to such holders followed by a deemed transfer by such holders to the Liquidating Trust. Such holders will be treated as the grantors and deemed owners of the Liquidating Trust. The Liquidating Trustee shall determine the valuations of the transferred property by the Liquidating Trustee. Such valuations shall be binding on the beneficiaries of the Liquidating Trust, and must be used for all federal income tax purposes.

## 3.    Powers and Duties.

The Liquidating Trust shall have the following rights, powers and duties:

a.    It shall hold all of the Liquidating Trust Assets and shall have full right, power and discretion to collect on obligations represented by outstanding loans taken into the Trust, and to manage such properties and to execute, acknowledge and deliver any and all instruments as may be appropriate or necessary, as determined by the Liquidating Trustee in his or her discretion;

b.    It shall make interim and final distributions of the Liquidating Trust Assets to the holders of beneficial interests in the Liquidating Trust pursuant to the terms of the Plan;

c.    It shall have authority to file objections to General Unsecured Claims;

d.    It may administer the collection, prosecution, settlement, assignment, conveyance

or abandonment of the Causes of Action and Avoidance Actions;

       e.    It shall file all tax and regulatory forms, returns, reports and other documents required with respect to the Liquidating Trust;

       f.    It shall file suit or any appropriate motion for relief in the Court or in any other court of competent jurisdiction to resolve any claim, disagreement, conflict or ambiguity in connection with the exercise of its rights, powers or duties; and

       g.    It may borrow such funds as the Liquidating Trust Agreement permits.

In connection with the above, the Liquidating Trust and the Liquidating Trustee shall, as of and after the Effective Date, be a representative of the Estates pursuant to Bankruptcy Code section 1123, appointed for the purposes of, among other things, pursuing the Causes of Action. In furtherance of that objective, the Liquidating Trustee shall have the rights of a trustee under Bankruptcy Code section 1106 as it relates to the Causes of Action. The Liquidating Trust shall have the full power and authority, either in its name or in any of the Debtors' names, to commence, if not already commenced, prosecute, settle, assign, convey and abandon any action related to collection of sums due on loans taken into the Trust and on the Causes of Action and Avoidance Actions, subject to the approval rights of the Board of Advisors set forth in the Liquidating Trust Agreement. The Liquidating Trust shall be authorized to retain professionals without Court approval (which may include existing professionals retained by the Committee, and which need not be "disinterested"). The reasonable professional fees (including any contingency fees), expenses, and costs of such professionals are to be paid out of the assets of the Liquidating Trust.

The Liquidating Trust may retain one or more firms to assist in the collection of sums owed on outstanding loans taken into the Trust, and to prosecute all Causes of Action held by the Liquidating Trust and all Avoidance Actions, subject to the discretion of the Liquidating Trust's Board of Advisors and the Liquidating Trustee.

    **4.**    **Terms of Loan to Liquidating Trust.**

The Exit Facility Lender will negotiate with the Committee and the representatives of Classes 1, 2, 7 and 9 and the Committee for an acceptable Exit Facility. The terms of the Exit Facility shall be binding upon the Liquidating Trust and the Liquidating Trustee.

1          **5.        Termination of the Liquidating Trust.**

2          The Liquidating Trust shall be irrevocable.  The Liquidating Trust shall terminate when the

3   Liquidating Trustee has performed all of his or her duties under the Plan and the Liquidating Trust

4   Agreement, including the final distribution of all the properties of the Liquidating Trust in respect

5   of holders of beneficial interests in the Liquidating Trust, which date shall not be more than five

6   (5) years and one (1) month after the Effective Date provided, however, the Court may, upon good

7   cause shown, order the Liquidating Trust to remain in existence for so long as shall be necessary to

8   prosecute the Avoidance Actions and the Causes of Action, and to liquidate and distribute all its

9   property.  The Court shall retain jurisdiction to interpret and enforce the terms of the Liquidating

10  Trust.

11         **6.        Issuance and Distribution of Liquidating Trust Interests.**

12         On the Effective Date, the Debtors shall issue and distribute the Trust Certificates and other

13  documents required to be issued or distributed pursuant to the Plan without the necessity of any

14  further act or action under applicable law, regulation, order or rule.

15         The issuance and distribution of the Trust Certificates and the transfer of assets to the

16  Liquidating Trust in connection with the Plan shall be, and shall be deemed to be, exempt from

17  registration under any applicable federal or state securities laws to the fullest extent permissible

18  under applicable non-bankruptcy law and under the Bankruptcy Code, including Section 1145(a)

19  of the Bankruptcy Code.  Without limiting the effect of Section 1145 of the Bankruptcy Code, all

20  documents, agreements and instruments entered into on or as of the Effective Date contemplated

21  by or in furtherance of the Plan shall become effective and binding in accordance with their

22  respective terms and conditions upon the parties thereto.  In addition, all of the Trust Certificates

23  issued pursuant to the Plan shall be deemed to be fully paid, non-assessable and freely tradable to

24  the fullest extent permissible under Section 1145 of the Bankruptcy Code.

25         **7.        Additional Provisions of the Liquidating Trust Agreement.**

26         In addition to the provisions in the Plan with respect to the Liquidating Trust, the

27  Liquidating Trust Agreement will provide for, among other things, other actions to be taken by the

28  Liquidating Trust and the Liquidating Trustee, the removal of the Liquidating Trustee or

appointment of successor Liquidating Trustees, the circumstances under which the Liquidating Trustee, in its capacity as such, will be liable for a action or inaction, the effect of actions by the Liquidating Trustee, and indemnification of the Liquidating Trustee.   The Liquidating Trust Agreement shall also contain language consistent with IRS Revenue Procedure 94-95 establishing the Liquidating Trust as a liquidating trust.  To the extent not set forth in the Plan, the functions and procedures applicable to the Liquidating Trust, the powers and duties of the Liquidating Trustee, and the rights of the holders of beneficial interests in the Liquidating Trust shall be governed by the provisions of the Liquidating Trust Agreement.

### A.    **Objections to Claims.**

Except as otherwise provided herein (regarding allowance of Administrative Claims), objections to any Claims shall be Filed and served upon the holder of the affected Claim no later than the date that is the later of (a) six (6) months after the Effective Date, unless extended by the Court, and (b) six (6) months after the date on which the affected proof of Claim has been filed, unless extended by the Court.

### B.    **Distribution of Property Under the Plan.**

The following procedures set forth in the Plan apply to distributions made pursuant to the Plan by the Debtors or the Liquidating Trust as applicable, which will make all distributions under the Plan unless otherwise provided.  In connection with the Plan, to the extent applicable, the Debtors and the Liquidating Trust, when making distributions under the Plan, shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

### 1.    **Manner of Payments Under the Plan.**

Payments to domestic entities holding Allowed Claims will be tendered in U.S. Dollars and will be made by checks drawn on a domestic bank or by wire transfer from a domestic bank. Payments made to any foreign creditors holding Allowed Claims may be paid, at the option of the Liquidating Trust, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**2.      No De Minimis Distributions.**

Notwithstanding anything to the contrary in the Plan, no payment of less than $100.00 will be made to any entity pursuant to the Plan.  No consideration will be provided in lieu of the de minimis distributions that are not made under this Section.

**3.      No Distribution With Respect to Disputed Claims.**

No payments, distributions of other property, or other consideration of any kind shall be made on account of any Disputed Claim unless and until such Claim becomes an Allowed Claim or is deemed to be such for purposes of distribution, and then only to the extent that the Claim becomes, or is deemed to be for distribution purposes, an Allowed Claim.   Unless otherwise provided herein, any holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its distribution within ten (10) days from the date that such Claim becomes an Allowed Claim.

**4.      Delivery of Distributions and Undeliverable/Unclaimed Distributions.**

a.      Delivery of Distributions in General.

The Debtors or the Liquidating Trust, as applicable, shall make distributions to each holder of an Allowed Claim by mail as follows:  (a) at the address set forth on the proof of Claim filed by such holder of an Allowed Claim; (b) at the address set forth in any written notice of address change delivered to the Disbursing Agent after the date of any related proof of Claim; (c) at the address reflected in the Schedules if no proof of Claim is filed and the Debtors or the Liquidating Trust, as applicable, has not received a written notice of a change of address; and (d) with respect to Administrative Claims, the address provided by the holder of the Claim or, if none is provided, at the address set forth in the Debtors' books and records.

b.      Undeliverable and Unclaimed Distributions.

If the distribution to the holder of any Allowed Claim is returned as undeliverable, no further distribution shall be made to such holder unless and until a Debtor or the Liquidating Trust, as applicable, is notified in writing of such holder's then current address.  Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Debtor or the Liquidating Trust, as applicable, pursuant to this Section until such time as a distribution

becomes deliverable. All undeliverable cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions. These entities will be entitled to any interest actually earned on account of the undeliverable distributions. The bank account will be maintained in the name of the Debtor or the Liquidating Trust, as applicable, but it will be accounted for separately.

Any holder of an Allowed Claim who does not assert a claim in writing for an undeliverable distribution within one (1) year after the Effective Date shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under the Plan, or from asserting a claim against the Debtors, the Estates, the Liquidating Trust or their respective property, and the Claim giving rise to the undeliverable distribution will be discharged. The Debtors or the Liquidating Trust, as applicable, will be enabled and empowered to retain all such undeliverable distributions.

Nothing contained in the Plan shall require the Debtors or the Liquidating Trust to attempt to locate any holder of an Allowed Claim.

### 5.    Estimation of Disputed Claims for Distribution Purposes.

The Debtors, the Committee or the Liquidating Trust, as applicable, may move for a Court order estimating any Disputed Claim. The estimated amount of any Disputed Claim so determined by the Court shall constitute the maximum recovery that the holder thereof may recover after the ultimate liquidation of its Disputed Claim, irrespective of the actual amount ultimately allowed.

### A.    Turnover of Books and Records.

On the Effective Date, Debtors shall cause Specialty Finance and its Affiliates to turnover all books and records relating to Trust Assets to the Liquidating Trustee. Debtors' attorneys shall surrender the originals or complete copies of all files, emails and other documents relating to work performed for the Debtor during the entire term of their employment.

### B.    Full Satisfaction.

The Debtors or the Liquidating Trustee shall make, and each holder of a Claim or Interest shall receive, any distributions provided for in the Plan in full satisfaction of such Claim or Interest.

C.    **Compliance with Tax Requirements.**

The Debtors and the Liquidating Trustee shall comply with all withholding and reporting requirements imposed on it by governmental units, if any, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

D.    **Setoff, Recoupment and Other Rights.**

Notwithstanding anything to the contrary contained in the Plan, the Debtors and the Liquidating Trust may, but shall not be required to, setoff, recoup, assert counterclaims or withhold against the distributions to be made pursuant to the Plan on account of any claims that the Debtors, the Estates or the Liquidating Trust may have against the entity holding an Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment, nor the allowance of any Claim against the Debtors or the Liquidating Trust, nor any partial or full payment during the Cases or after the Effective Date in respect of any Allowed Claim, shall constitute a waiver or release by Debtors, the Estates or the Liquidating Trust of any claim that they may possess against such holder.

E.    **Conditions to Effectiveness.**

The Plan shall not become binding unless and until the Effective Date occurs.  The Effective Date is the first Business Day on which all of the following conditions have been satisfied as set forth below or waived:

1.    The Confirmation Order shall have become a Final Order;

2.    No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code has been made, or, if made, remains pending;

3.    Each exhibit, document or agreement to be executed in connection with the Plan shall be in final form acceptable to the Debtors, the Committee and their respective counsel;

4.    The Liquidating Trust Agreement shall have been executed and delivered;

5.    The Exit Facility shall be in full force and effect and all conditions therein to the obligations of the parties to such loans shall have been satisfied or waived as set forth in the Exit Facility Documents.

6.    The Court shall have found that the CRO, the Debtors,  and the Committee and their

Associated Released Parties have acted in good faith in the negotiation and development of the Plan and the compromises and settlements inherent therein and expressly entered into in connection therewith and that the CRO, the Debtors, and the Committee and their Associated Released Parties have each worked in good faith to compromise their respective claims and that the settlements inherent in the Plan and expressly entered into in connection therewith, and their associated releases and other consideration have been proposed in good faith;

7.    All other agreements, writings and undertakings required under the Plan shall be executed and ready for consummation

8.    The Liquidating Trustee shall mail a "Notice of Occurrence of Effective Date" to all creditors and Interest holders of record as of the date of entry of the Confirmation Order upon the occurrence of the Effective Date.

9.    Waiver of Conditions.

Except as specified above, the requirement that the conditions to the occurrence of the Effective Date be satisfied may be waived in whole or in part, and the time within which any such conditions must be satisfied may be extended, by the Committee with the consent of the Exit Facility Agent.  The failure to timely satisfy or waive any of such conditions may be asserted by the Committee regardless of the circumstances giving rise to the failure of such condition to be satisfied, including any action or inaction by the Committee.  The failure of the Committee to exercise any of the foregoing rights shall not be deemed a waiver of any rights and each such right shall be deemed ongoing and subject to assertion at any time.

**F.    <u>Authorization of Entity Action.</u>**

Each of the matters provided for under the Plan or any action to be taken by or required of the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by equityholders, creditors, or managers, officers or directors of the Debtors, or any of them.

# VI.

## OTHER PLAN PROVISIONS

### A.    Exculpation:  No Liability for Solicitation or Prosecution of Confirmation.

Conditioned on the occurrence of the Effective Date, none of the Debtors, the Estates, the Committee (including any member thereof acting in such capacity), the CRO, the lenders and agent under the Exit Facility, the DIP Lender, or any of the foregoing parties' respective Associated Released Parties shall have or incur any liability to any holder of a Claim or Interest, or to one another, for any act or omission occurring on or after the Petition Date through to and including the Effective Date in connection with, related to, or arising out of the Cases, the pursuit of confirmation of the Plan, the consummation or administration of the Plan, or property to be distributed under the Plan, except to the extent that the act or omission is determined by Final Order to be solely due to its own respective willful misconduct or gross negligence, and in all respects, the Debtors, the Estates, the CRO, the Committee (and any member thereof acting in such capacity) the lenders and agent under the Exit Facility, the DIP Lenders, or any of the foregoing parties' respective Associated Released Parties  shall be entitled to rely on the advice of their respective counsel with respect to their duties and responsibilities during the Cases and under the Plan.

### B.    Revocation of Plan/No Admissions.

The Committee reserves the right to jointly revoke or withdraw the Plan prior to the Confirmation Date.  Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will:  (a) be deemed to be an admission by the Committee with respect to any matter set forth in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgment, or release of any Claims against, or any Interests in, the Debtors or the Estates, or of any claims of the Debtors or the Estates; or (c) prejudice in any manner the rights of any party in any further proceedings.

### C.    Modifications of the Plan.

The Plan may be modified at any time before or after confirmation, subject to sections

1125 and 1127 of the Bankruptcy Code by the Committee.

**D.    Dissolution of Committee.**

On the Effective Date, the Committee shall be released and discharged from the rights and duties arising from or related to the Cases, except with respect to final applications for professionals' compensation.  The professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the Effective Date except for services rendered and expenses incurred in connection with any applications by such professionals or Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely filed after the Effective Date as provided in the Plan, as approved by the Court.

**E.    Exemption from Certain Transfer Taxes.**

In accordance with Bankruptcy Code section 1146(c), the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under the Plan may not be taxed under any law imposing a stamp tax or similar tax.  The Confirmation Order shall direct all governmental officials and agents to forego the assessment and collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

**F.    Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**G.    Saturday, Sunday or Legal Holiday.**

If any payment or act under the Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**H.    Headings.**

The headings used in the Plan are inserted for convenience only and do not constitute a

portion of the Plan or in any manner affect the provisions of the Plan or their meaning.

**I.      Governing Law.**

Unless a rule of law or procedure is supplied by (a) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (b) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada without giving effect to the principles of conflict of laws thereof.

**J.      Form of Agreements and Documents.**

All documents and agreements to be Filed with the Court as part of the Plan or which are to become Exhibits to the Plan or the Disclosure Statement or which are to be executed or delivered in connection with the Plan, and any revisions or amendments thereto prior to the Effective Date, shall be in form and substance acceptable to the Committee and the Exit Facility Agent in their sole discretion prior to any Filing, execution, delivery or amendment; and the form and substance of the Liquidating Trust Agreement shall also be in form and substance acceptable to the Exit Facility Agent and the Liquidating Trustee.

**VIII.**

**EFFECT OF CONFIRMATION OF THE PLAN**

**A.      Discharge and Injunction.**

The rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever arising prior to the Effective Date, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Estates and their property.

Except as otherwise provided in the Plan or the Confirmation Order, the Plan and Confirmation Order shall, on the Effective Date, preclude all entities from asserting against the Estates, the Liquidating Trust, or their respective property any Discharged Liability based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the

1  Effective Date.

2       Except as otherwise provided in the Plan or the Confirmation Order, on and after the

3  Effective Date, all entities who have held, currently hold, or may hold a Discharged Liability

4  against the Estates, the Liquidating Trust or their respective property that is based upon any act or

5  omission, transaction, or other activity of any kind or nature that occurred prior to the Effective

6  Date, that otherwise arose or accrued prior to the Effective Date, or that is otherwise discharged

7  pursuant to the Plan, shall be permanently enjoined from taking any of the following actions on

8  account of any such Discharged Liability (the "Permanent Injunction"):   (a) commencing or

9  continuing in any manner any action or other proceeding against the Estates, the Liquidating Trust

10  or their respective property that is inconsistent with the Plan or the Confirmation Order; (b)

11  enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order

12  against the Debtors, the Estates, the Liquidating Trust or their respective property other than as

13  specifically permitted under the Plan or the Confirmation Order; (c) creating, perfecting, or

14  enforcing any lien or encumbrance against the Estates, the Liquidating Trust or their respective

15  property; and (d) commencing or continuing any action, in any manner, in any place that does not

16  comply with or is inconsistent with the provisions of the Plan, the Confirmation Order, or the

17  discharge provisions of Bankruptcy Code section 1141.  Any entity injured by any willful violation

18  of such Permanent Injunction shall recover actual damages, including costs and attorneys' fees,

19  and, in appropriate circumstances, may recover punitive damages, from the willful violator.

20       **B.**    **Payment of U.S. Trustee Fees.**

21       The Debtors or the Liquidating Trust shall pay all of their respective U.S. Trustee Fees in

22  accordance with Section II.B.2.

23       **C.**    **Retention of Jurisdiction.**

24       Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

25  Date, the Court shall retain jurisdiction over the Cases after the Effective Date to the fullest extent

26  provided by law, including the jurisdiction, consistent with the Confirmation Order, to:

27       1.    Allow, disallow, determine, liquidate, classify, establish the priority or secured or

28  unsecured status of, estimate, or limit any Claim or Interest;

2.      Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any executory contract or unexpired lease to which one or more of the Debtors is a party or with respect to which one or more of the Debtors may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

4.      Ensure that distributions to holders of Allowed Claims, including but not limited to Administrative Claims, are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, determine and resolve any and all applications, motions, adversary proceedings, and contested or other matters involving the Debtors, including any relating to the Causes of Action that may be pending on the Effective Date or that may be instituted thereafter in accordance with the terms of the Plan or the Liquidating Trust Agreement;

6.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and the Liquidating Trust Agreement and all contracts, instruments, releases, and other agreements or documents entered into in connection with the Plan;

7.      Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any entity's rights or obligations in connection with the Plan;

8.      Modify the Plan before or after the Effective Date pursuant to Bankruptcy Code section 1127, or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any order of the Court, the Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

9.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or

1    enforcement of the Plan;

2    11.    adjudicate, determine and resolve any claims and causes of action provided for and

3    retained under the Plan or pursuant to the Confirmation Order, including the Causes of Action;

4    12.    modifying and implementing such orders as are necessary or appropriate if the

5    Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

6    12.    Determine any other matters that may arise in connection with or relate to the Plan,

7    the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other

8    agreement or document created in connection with the Plan; and

9    13.    Enter orders extending the expiration of the Liquidating Trust; and

10    14.    Enter a final decree closing the Cases.

11    Nothing herein shall be deemed to prevent a party from otherwise without jurisdiction over

12    such matter, this retention provision shall have no effect upon and shall not control, prohibit, or limit the

13    exercise of jurisdiction by any other court having competent jurisdiction with respect to such

14    matter.

15

16                                            IX.

17                          RECOMMENDATION AND CONCLUSION

18        The Committee believes that Plan confirmation and implementation are preferable to any

19    alternatives available to creditors and results in the greatest recovery for the greatest number of

20    creditors under the circumstances. Accordingly, the Committee submits that confirmation of

21    the Plan should be supported by creditors and holders of Class 11A Interests (Shareholders) as the

22    most favorable alternative.

23                                                                Committee of Equity Security Holders

24

25                                                    By: Raymond F. Poncia,

26                                                    Its Chairman

27

28