# Exhibit 3

# Exhibit 3

## LIQUIDATION ANALYSIS

**UNDERLYING THE LIQUIDATION ANALYSIS ARE NUMEROUS ESTIMATES AND ASSUMPTIONS REGARDING LIQUIDATION PROCEEDS THAT, ALTHOUGH DEVELOPED AND CONSIDERED REASONABLE BY THE DEBTORS, ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, REGULATORY AND COMPETITIVE UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS AND THEIR MANAGEMENT AND ADVISORS. ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE DEBTORS WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION, AND ACTUAL RESULTS COULD MATERIALLY DIFFER FROM THE RESULTS SET FORTH HEREIN.**

Because the chapter 7 trustee's ability to obtain a net recovery on account of the estates' disputed litigation claims described in the disclosure statement is so uncertain, the effect of such recoveries, if any, is not included in the following liquidation analysis. In the event that there were any such net recoveries, they would be distributed first to pay any otherwise unpaid chapter 11 administrative claims, with any remaining funds distributed to unsecured creditors.

| | | Claim Amount | Estimated Liquidation Value | % Recovery |
|---|---|---|---|---|
| **Asset Values** | (a) | | | |
| | | | | |
| Cash and Cash Equivalents | (b) | | - | |
| Loan Assets | (c) | | 21,822,377 | |
| REO Assets | (c) | | 4,493,449 | |
| **Gross Liquidation Proceeds** | | | $ 26,315,826 | |
| | | | | |
| **Liquidation Costs** | | | | |
| Selling Costs | (d) | | (2,631,583) | |
| Trustee Fees & Expenses | (e) | | (1,112,475) | |
| **Total Liquidation Costs** | | | $ (3,744,057) | |
| **Net Liquidation Proceeds Available for Secured / Superpriority Claims** | | | 22,571,769 | |
| | | | | |
| **Secured / Superpriority Claims** | | | | |
| DIP Facility Claim | (f) | 3,500,000 | (3,500,000) | 100.0% |
| US Bank Claim | (f) | 29,315,000 | (14,782,352) | 50.4% |
| Deutsche Bank Claim | (f) | 36,901,732 | (3,817,395) | 10.3% |
| **Total Secured / Superpriority Claims** | | $ 69,716,732 | $ (22,099,746) | |
| **Net Liquidation Proceeds Available for Administrative Claims** | | | 472,022 | |
| | | | | |
| **Administrative Claims** | | | | |
| Professional Fees | (g) | 1,000,000 | (472,022) | 47.2% |
| **Total Administrative Claims** | | $ 1,000,000 | $ (472,022) | |
| **Net Liquidation Proceeds Available for Unsecured Claims** | | | - | |
| | | | | |
| **General Unsecured Claims** | | | | |
| US Bank Deficiency Claim | | 14,532,648 | - | 0.0% |
| Deutsche Bank Deficiency Claim | | 33,084,337 | - | 0.0% |
| Junior Subordinated Notes | (h) | 29,064,444 | - | 0.0% |
| Contract Rejection | (i) | 10,000,000 | - | 0.0% |
| Other | | 2,000,000 | - | 0.0% |
| **Total Unsecured Claims** | | $ 88,681,430 | $ - | |
| **Net Liquidation Proceeds Available for Allowed Interests** | | | - | |

(a)  The liquidated collateral consists of all of the real estate owned ("REO") and loan assets in the Debtors' portfolio.
(b)  Cash assumed fully depleted at liquidation date.
(c)  Proceeds from loan and REO asset sales are based upon recent appraisals, where available, and management's and its advisors' views with respect to asset values including feedback provided by potential investors. Values assume a sale period of approximately 6 months and vary from orderly liquidation values under proposed plans due to expedited sale process in chapter 7 liquidation.
(d)  Selling costs are assumed to be 10% of gross liquidation proceeds, to account for estimated commissions and standard closing costs that would typically be borne by seller.
(e)  Trustee Fees & Expenses consistent with Section 326(a) of the Bankruptcy Code and are assumed to be 25.0% for the first $5,000 of gross liquidation proceeds, 10.0% for any gross liquidation proceeds greater than $5,000 but not in excess of $50,000, 5.0% for any gross liquidation proceeds greater then $50,000 but not in excess of $1,000,000 and 3.0 % of gross liquidation proceeds thereafter. Also includes $300,000 of legal fees and expenses given the number of properties to be sold and estimated legal work required.

(f)    Secured / Superpriority Claims will be repaid from proceeds from their respective collateral pools less a pro rata portion of selling costs and trustee fees and expenses based on the proportion of the total asset value contributed to gross liquidation proceeds.

(g)    Assumes accrued and unpaid professional fees of approximately $1,000,000 through May 1, 2011.

(h)    Junior Subordinated Notes recovery does not reflect potential subordination of payover provisions that may exist between them and other creditor constituencies, if any.

(i)    Assumed claims from contract rejections including those resulting from the Management Agreement between Specialty Trust, Inc. and Specialty Financial Corp.

### Gross Liquidation Proceeds

**US Bank Collateral**

| | |
|---|---|
| Desert Quail Air | 5,970,000 |
| Nadador (1st) | 4,006,080 |
| Denver I25 | 1,790,500 |
| WHM Paloma | 1,282,500 |
| Joshua Tree | 1,250,000 |
| ECCO Holdings | 960,000 |
| CIC&S | 779,072 |
| Marina Village | 544,245 |
| Esperanza | 354,000 |
| Marina Commericial (1st) | 128,741 |
| Fontana Fitness | 66,185 |
| Fontana Fitness | 62,818 |
| Fontana Fitness | 40,211 |
| **Total US Bank Collateral** | **17,234,352** |

**Deutsche Bank Collateral**

| | |
|---|---|
| Duck Creek | 1,140,500 |
| Desert Land | 871,000 |
| Consolidated Phase 4 | 810,000 |
| Coolidge 140 | 560,000 |
| Symphony | 390,295 |
| Cotton Lane | 361,984 |
| 2522 Properties | 280,000 |
| Mohave Vista | 36,820 |
| Prime West Jordanelle | - |
| 5th & Lincoln | - |
| Oakcreek Condo | - |
| Vero Desert Lakes (1st) | - |
| Waterfront Partners (2nd) | - |
| Nadador (2nd) | - |
| Nadador (Mezz) | - |
| **Total Deutsche Bank Collateral** | **4,450,599** |

**DIP Collateral**

| | |
|---|---|
| Sedona | 2,252,211 |
| Central & Buchanan | 679,530 |
| Sierra Vista | 633,850 |
| PV Land | 604,950 |
| Coolidge 70 | 280,000 |
| Quarterhorse Trust | 90,589 |
| S&T Ranch | 50,944 |
| Doug Moreau | 38,801 |
| JFP 1330 | - |
| Nadador (3rd) | - |
| CIC&S (2nd) | - |
| Marina Commercial (2nd) | - |
| Conklin | - |
| Steve Johnson | - |
| Vero Desert Lakes (2nd) | - |
| **Total DIP Collateral** | **4,630,875** |

| | | |
|---|---|---|
| **Gross Liquidation Proceeds** | **$** | **26,315,826** |

# Exhibit 4

# Exhibit 4

## SUMMARY OF PROVISIONS OF DEBTORS' PLAN

The following is a description of certain provisions of the Debtors' Plan. The following summary of the Debtors' Plan is qualified in its entirety by the actual terms of the Plan. In the event of any conflict, the terms of the Debtors' Plan will control over any summary set forth in this Disclosure Statement. Capitalized terms used herein have the meanings ascribed to such terms in the Debtors' Plan.

## A.    Designation of Classes and Treatment of Claims and Interests.

### 1.    Summary and Classification of Claims and Interests.

Section II of Debtors' Plan classifies Claims and Interests — except for Administrative Claims and Priority Tax Claims, which are not classified — for all purposes, including voting, confirmation, and distribution under Debtors' Plan. A Claim or Interest is classified in a Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class. For example, in the event that a Creditor has collateral securing its Claim that is worth less than the amount owed to the Creditor, the Creditor's Claim would be classified in a secured creditor class to the extent of the value of that Creditor's collateral and an unsecured Claim to the extent of any deficiency between the amount of the Creditor's claim and the value of the collateral securing the Claims.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN DEBTORS' PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.

The treatment in Debtors' Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each entity holding an Allowed Claim or an Interest may have in or against the Debtors, the Estates, or their respective property. This treatment supersedes and replaces any agreements or rights those entities may have in or against

the Debtors, the Estates, or their respective property. All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

### 2. Allowance and Treatment of Unclassified Claims (Administrative Claims and Priority Tax Claims).

#### a. Administrative Claims.

##### (1) Allowance of Administrative Claims.

Allowance of Ordinary Course Administrative Claims: An entity holding an Ordinary Course Administrative Claim may, but need not, File a motion or request for payment of its Claim. The Debtors or the Reorganized Debtors or any other party in interest may File an objection to an Ordinary Course Administrative Claim in their discretion. Unless an objection is filed to an Ordinary Course Administrative Claim, such Claim will be an Allowed Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim.

Allowance of Professional Fee Claims: Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be an Allowed Claim only if, and to the extent that:

(i)     on or before sixty days after the Effective Date, the entity holding such Professional Fee Claim both Files with the Court a final fee application or a motion requesting allowance of the fees and reimbursement of expenses and serves the application or motion on the Debtors, the Reorganized Debtors, the Plan Representative and the U.S. Trustee; and

(ii)     the Court determines it is an Allowed Claim.

The Debtors, the Reorganized Debtors, the Plan Representative or any other party in interest may File an objection to such application or motion by no later than thirty days after the Filing and service of such application or motion. Entities holding Professional Fee Claims that do not timely File and serve a fee application or motion for allowance of a Professional Fee

Claim will be forever barred from asserting those Claims against the Debtors, the Reorganized Debtors, the Estates, or their respective property.

Allowance of Cure Claims:    Cure Claims shall be allowed in accordance with the procedures set forth in Section III.A.2 below.

Allowance of Non-Ordinary Course Administrative Claims:  Unless otherwise expressly provided in the Plan, Non-Ordinary Course Administrative Claims and Substantial Contribution Claims will be Allowed Claims only if:

(i)    unless a different procedure has been approved by the Court prior to the Confirmation Hearing, on or before sixty days after the Effective Date, the entity holding such Non-Ordinary Course Administrative Claim or Substantial Contribution Claims both Files with the Court a motion requesting allowance of the Non-Ordinary Course Administrative Claim or Substantial Contribution Claim and serve the motion on the Reorganized Debtors and the U.S. Trustee; and

(ii)    the Court determines it is an Allowed Claim.

The Debtors, the Reorganized Debtors, or any other party in interest may File an objection to such motion within thirty days after the expiration of the deadline for the Filing of a Non-Ordinary Course Administrative Claim or Substantial Contribution Claim set forth in subparagraph (i), above (i.e., within ninety days after the Effective Date), unless such time period for Filing such objection is extended by the Court.  Entities holding Non-Ordinary Course Administrative Claims or Substantial Contributions Claims that do not timely File and serve a request for payment will be forever barred from asserting those Claims against the Debtors, the Reorganized Debtors, the Estates, or their respective property.

## (2)    Treatment of Administrative Claims.

Treatment of Allowed Ordinary Course Administrative Claims: Unless otherwise agreed, Allowed Ordinary Course Administrative Claims will be paid by the Debtors or the Reorganized Debtors in accordance with the terms and conditions of the particular transaction that gave rise to

the Allowed Claim.

Treatment of any Allowed Substantial Contribution Claim: Any Allowed Substantial Contribution Claim shall be paid by the Debtors or the Reorganized Debtors the same as if it were a Professional Fee Claim.

Treatment of Professional Fee Claims: Unless otherwise agreed, an Allowed Professional Fee Claim will be paid by the Debtors or the Reorganized Debtors, as applicable, after the Court determines such Claim is an Allowed Claim, and in accordance with the projections attached to the Disclosure Statement.

Treatment of Cure Claims: The Reorganized Debtors will pay the Allowed amounts of Cure Claims to the non-Debtor parties to the executory contracts or unexpired leases.

Treatment of U.S. Trustee Fees Under 28 U.S.C. § 1930: The Debtors will pay to the U.S. Trustee all fees due and owing under 28 U.S.C. § 1930 on the Effective Date.

Treatment of Non-Ordinary Course Administrative Claims: Unless the entity holding a Non-Ordinary Course Administrative Claim Allowed by the Court agrees to different treatment, the Reorganized Debtors will pay the full amount of such Allowed Non-Ordinary Course Administrative Claim in the same manner as the treatment of the Professional Fee Claims as described above.

Treatment of Claims Under the DIP Facility: The DIP Lender will receive, in full and final satisfaction of the Debtors' obligations under the DIP Facility cash in full the amount of its claims unless the DIP Lender agrees to a different treatment.

### b.    Priority Tax Claims.

The Priority Tax Claims include (i) an IRS Claim against ST of $177,560.37 and (ii) an IRS Claim against SAC of $5,000.00.

Unless otherwise agreed, the Reorganized Debtors will pay to an entity holding an Allowed Priority Tax Claim the full amount of the Allowed Priority Tax Claim, plus interest calculated at the federal judgment rate, in equal, amortized, annual installments beginning on the

first anniversary of the Petition Date that falls on a date following the occurrence of the Effective Date and, thereafter, on each anniversary of the Petition Date through the fifth anniversary of the Petition Date.  The Debtors and Reorganized Debtors reserve all rights to object to these claims.

### 3.      Classification and Treatment of Classified Claims and Interests.

#### a.      Class 1 US Bank Allowed Secured Claims.

##### (1)      Class 1A US Bank Allowed ST Secured Claim.

Classification:  Class 1A consists of the US Bank Allowed Secured Claim against ST.

Impairment:  Impaired

Voting Rights:  Class 1A is entitled to vote on the Debtors' Plan.

Treatment:  Holders of an Allowed Class 1 Claim will receive, in full and final satisfaction of their Allowed Class 1 Secured Claims, a discounted payoff amount of approximately $16.5 million within ten days after the Effective Date as a full release of all of its Allowed Claims against the Debtors.

##### (2)      Class 1B US Bank SAC II Secured Claims.

Classification:  Class 1B consists of US Bank Allowed Secured Claims against SAC II.

Impairment:  Impaired

Voting Rights:  Class 1B is entitled to vote on the Debtors' Plan.

Treatment:  The Class 1B Claim will be satisfied by reason of the payment to be made on account of the Class 1A Claim.

///

### (3)    Class 1C US Bank SAC Secured Claim.

Classification:  Class 1C consists of US Bank Allowed Secured Claims against SAC.

Impairment:  Impaired

Voting Rights:  Class 1C is entitled to vote on the Debtors' Plan.

Treatment:  The Class 1C Claim will be satisfied by reason of the payment to be made on account of the Class 1A Claim.

### b.    Class 2 Secured Noteholder Secured Claims (Deutsche Bank).

### (1)    Class 2A Old Secured ST Noteholder Secured Claims.

Classification:  Class 2A consists of the Old Secured Noteholders' Allowed Secured Claims against ST.

Impairment:  Impaired.

Voting Rights:  Class 2A is entitled to vote on the Debtors' Plan.

Treatment:  Holders of Allowed Class 2A Claims will retain liens secured by the Old Secured Noteholder Collateral.  Holders of Class 2A Claims shall be entitled to exercise all of the legal, equitable, and contractual rights pursuant to the terms of the Old Secured Noteholder Indenture and the Old Secured Notes; provided, however, that the Reorganized Debtors may seek a determination by the Court pursuant to Bankruptcy Code section 502(c) estimating the amount of the Old Secured Noteholders' deficiency claim for all purposes, including distributions under the Debtor's Plan.

In the event that the Court determines that the claims held by the Old Secured Noteholders are wholly unsecured, because there is no equity in the collateral securing those claims, or for any other reason, as of the Effective Date, the Old Secured Noteholder Indenture

shall be terminated and the Old Secured Noteholders' Claims shall be treated as Class 8A Claims under the terms of the Debtors' Plan. Following such termination, Deutsche Bank shall have no further obligations under the terms of the Old Secured Noteholder Indenture. Notwithstanding such termination, Deutsche Bank shall retain its rights under the Old Secured Noteholder Indenture including, without limitation, the right to indemnification for any loss, liability or expense in connection with the performance of its duties under the Old Secured Noteholder Indenture and the right to receive reimbursement of any expenses that has incurred, or may incur in the future, in relation to the performance of its duties as indenture trustee, its right to payment of its fees as indenture trustee and its right to charge distributions that the Old Secured Noteholders may receive on account of the Old Secured Notes, including distributions under the Debtors' Plan.

Notwithstanding any other provision of the Debtors' Plan to the contrary, any distributions to which the Old Secured Noteholders may be entitled under the Debtors' Plan, whether by reason of their Class 2A Claims or by reason of any Class 8A deficiency claim, shall be paid in the first instance to Deutsche Bank, which may deduct any fees or expense reimbursements to which it may be entitled under the terms of the Old Secured Noteholder Indenture and remit the balance of such distribution or distributions to the Reorganized Debtors for distribution in accordance with the terms of the Debtors' Plan.

In addition to any other distribution to which the holders of Allowed Claims in Class 2A may be entitled, and without regard to the value of any collateral securing the Class 2A Claims, each holder of an Allowed Class 2A Claim shall receive one (1) Class A share in reorganized ST for every $1,000 of Allowed Claim held by that Class 2A Claimant.

### (2)    Class 2B New Secured Noteholder ST Secured Claim.

Classification:  Class 2B consists of the New Secured Noteholders' Allowed Secured Claims against ST.

Impairment: Impaired.

Voting Rights:  Class 2B is entitled to vote on the Debtors' Plan.

Treatment:  Holders of Allowed Class 2B Claims will retain liens secured by the New Secured Noteholder Collateral.

*Option 1:  Debtors' Plan Rejection.*  In the event Class 2B rejects the Debtors' Plan, holders of Class 2B Claims shall be entitled to exercise all of the legal, equitable, and contractual rights pursuant to the terms of the New Secured Noteholder Indenture and the New Secured Notes with respect to the New Secured Noteholder Collateral.

*Option 2:  Debtors' Plan Acceptance.*  In the event Class 2B accepts the Debtors' Plan, Class 2B will be treated in accordance with the Northlight Exit Facility as described in Article IV.A of the Debtors' Plan, and the Reorganized Debtors will market and sell the REO properties and mortgage loans that are New Secured Noteholder Collateral or that indirectly secure the New Secured Notes through ST's pledge of its stock in SAC II.  Pursuant to the Northlight Exit Facility, Class 2B's collateral will be subordinated to a first priority senior lien of Northlight in the amount of $4.5 million.  As adequate protection for the subordination of its senior lien, Class 2B shall receive a replacement lien on all of the Reorganized Debtors' assets and the proceeds of those assets; provided that such replacement lien shall be subordinate to the liens granted to Northlight under the Northlight Exit Facility and to the Distribution Participation Payments to which Northlight is entitled under the terms of the Northlight Exit Facility.  Such replacement liens shall be automatically released upon sales of assets in compliance with the Northlight Exit Facility, and then be transferred to the proceeds of such sales.  Class 2B shall receive the Net Cash Proceeds from the sale of its collateral [including property of SAC II that indirectly secures the New Secured Notes by the Reorganized Debtors] after the payment to Northlight of its share of the net liquidation proceeds pursuant to the Incentive Payment Plan as defined in the Northlight Exit Facility Term Sheet.

In the event that Class 2B accepts the Debtors' Plan, as of the Effective Date, the New Secured Noteholder Indenture shall be terminated.  Following such termination, Deutsche Bank

shall have no further obligations under the terms of the New Secured Noteholder Indenture. Notwithstanding such termination, Deutsche Bank shall retain its rights under the New Secured Noteholder Indenture including, without limitation, the right to indemnification for any loss, liability or expense in connection with the performance of its duties under the New Secured Noteholder Indenture and the right to receive reimbursement of any expenses that has incurred, or may incur in the future, in relation to the performance of its duties as indenture trustee, its right to payment of its fees as indenture trustee and its right to charge distributions that the New Secured Noteholders may receive on account of the New Secured Notes, including distributions under the Debtors' Plan.

Notwithstanding any other provision of the Debtors' Plan to the contrary, any distributions to which the New Secured Noteholders may be entitled under the Debtors' Plan, whether by reason of their Class 2B Claims or by reason of any Class 8A deficiency claim, shall be paid in the first instance to Deutsche Bank, which may deduct any fees or expense reimbursements to which it may be entitled under the terms of the New Noteholder Indenture and remit the balance of such distribution or distributions to the Reorganized Debtors for distribution in accordance with the terms of the Debtors' Plan.

Under Option 1 above, the Reorganized Debtors may seek to estimate the Old Secured Noteholders' or New Secured Noteholders' deficiency claims (if any) pursuant ot Bankrutpcy Code section 502(c) for all purposes including distributions under the Debtors' Plan. Notwithstanding anything contained in this Plan to the contrary, the Unsecured Noteholders shall also have the right to challenge the extent, priority and/or validity of the Old Secured Noteholders Secured Claims and/or the New Secured Noteholders Secured Claims by commencing an adversary proceeding in the Court at any time up to the Effective Date of the Debtors' Plan. In the event that such an adversary proceeding is commenced, no distributions of Net Cash Proceeds shall be made to the holders of the Class 2A and Class 2B Claims until either: (a) a written agreement is entered into by and between the holders of the Class 2A and Class 2B Claims, on the one hand, and the Unsecured Noteholders, on the other, resolving the disputes; or

(b) a Final Order is entered by the Court determining the nature, extent and validity of the Claims in question.

In addition to any other distribution to which the holders of Allowed Claims in Class 2B may be entitled, and without regard to the value of any collateral securing the Class 2B Claims, each holder of an Allowed Class 2B Claim shall receive one (1) Class A share in reorganized ST for every $1,000 of Allowed Claim held by that Class 2B Claimant. For the avoidance of doubt, the deferral of distributions of Net Cash Proceeds provided for in the preceding paragraph shall not apply to the distribution of Class A shares provided for in this paragraph.

**c.    Class 3 Secured Tax Claims.**

This Class includes the following Secured Claims asserted against the applicable Debtor on the chart below.

| Debtors' Plan Subclass | Debtor against which Claim is asserted and Claim Amount |
|---|---|
| 3A | ST<br><br>San Joaquin County, CA $3,745.44 |
| 3B | ST<br><br>Orange County, CA $8,286.11 |
| 3C | SAC II<br>Pinal County, AZ claim $8,286.11 |

Impairment: Impaired

Voting Rights: Classes 3A, 3B and 3C are entitled to vote on the Debtors' Plan.

Treatment: Holders of Allowed Class 3A, 3B, and 3C Claims will retain their liens on their collateral and will receive, at the election of the Debtors or the Reorganized Debtors as applicable, (1) payment in cash in full on the later of the Effective Date, or the date on which

their claim becomes an Allowed Claim, or (2) the right to exercise their remedies with respect to their collateral.

### d.  Class 4 ST Secured Claims Against SAC II.

#### (1)  Coolidge 140 Secured Claim.

<u>Classification</u>:  Class 4A consists of the Allowed Secured Claim held by ST against SAC II on account of the Coolidge 140 Note.

<u>Impairment</u>:  Unimpaired

<u>Voting Rights</u>:  Class 4A is not entitled to vote on the Debtors' Plan.

<u>Treatment</u>:  The holder of the Allowed Class 4A Claim will retain its rights against SAC II in accordance with the original terms of the Coolidge 140 Note, related deed of trust, and any other security interests securing the Coolidge 140 Note.

#### (2)  Williams Canyon Secured Claim.

<u>Classification</u>:  Class 4B consists of the Allowed Secured Claim held by ST against SAC II on account of the Williams Canyon Note.

<u>Impairment</u>:  Unimpaired

<u>Voting Rights</u>:  Class 4B is not entitled to vote on the Debtors' Plan.

<u>Treatment</u>:  The holder of the Allowed Class 4B Claim will retain its rights against SAC II in accordance with the original terms of the Williams Canyon Note, related deed of trust, and any other security interests securing the Williams Canyon Note.

### e.  Class 5T Secured Claims Against SAC.

### (1)    Cotton Lane Secured Claim.

<u>Classification</u>:  Class 5A consists of the Allowed Secured Claim held by ST against SAC on account of the Cotton Lane Note.

<u>Impairment</u>: Unimpaired

<u>Voting Rights</u>:  Class 5A is not entitled to vote on the Debtors' Plan.

<u>Treatment</u>:  The holder of Allowed Class 5A Claim will retain its rights against SAC in accordance with the original terms of the Cotton Lane Note, related deed of trust and other security interests securing the Cotton Lane Note.

### (2)    Consolidated Phase 4 Secured Claim.

<u>Classification</u>:  Class 5B consists of the Allowed Secured Claim held by ST against SAC on account of the Consolidated Phase 4 Note.

<u>Impairment</u>: Unimpaired

<u>Voting Rights</u>:  Class 5B is not entitled to vote on the Debtors' Plan.

<u>Treatment</u>:  The holder of Allowed Class 5B Claim will retain its rights against SAC in accordance with the original terms of the Consolidated Phase 4 Note, the related deed of trust and other security interests securing the Consolidated Phase 4 Note.

### f.    Class 6 JSSD SAC II Secured Claim.

<u>Classification</u>:  Class 6 consists of the JSSD disputed Secured Claim on the Jordanelle Property of SAC II.

<u>Impairment</u>: Unimpaired

<u>Voting Rights</u>:  Class 6 is not entitled to vote on the Debtors' Plan.

**Treatment**:  The holder of the Class 6 Claim will retain its rights against SAC II pursuant to applicable law, subject to the rights of the Debtors to dispute such claim.

### g.      Class 7 Ryland Homes SAC II Secured Claim.

**Classification**:   Class 7 consists of Ryland Homes' disputed secured claim against property owned by SAC II.

**Impairment**:  Impaired

**Voting Rights**:  Class 7 is entitled to vote on the Debtors' Plan.

**Treatment**:  If the holder of the Class 7 Secured Claim obtains an Allowed Claim, the Class 7 Claimant will retain its lien and will receive, at the election of the Reorganized Debtors, (i) payment in full, or (ii) the right to exercise its non-bankruptcy law remedies with respect to its collateral.

### h.      Class 8 General Unsecured Claims.

**Classification**:   Class 8 (and each subclass of Class 8) consists of General Unsecured Claims asserted against the applicable Debtor on the chart below, but excludes the unsecured claims of Class 9.

| Debtors' Plan Subclass | Debtor against which Claim is Asserted<br>Claim Holders | | |
|---|---|---|---|
| 8A Impaired | **ST** | | |
| 8B Impaired | **SAC**<br>Non-Contingent<br>Tholl Fence/ | Allowed | Claims:<br>$330.00 |
| 8C Impaired* | **SAC II**<br>Non-Contingent | Allowed | Claims: |

|  | Ballard Spahr/ | $13,107.36 |
|  | NAI Horizon Valuation/ | $4,753.54 |
|  | Samuels, Green & Steel LLP/ | $3,600.00 |
|  | Scythe & Spade of AZ LLC/ | $5,000.00 |
|  | Southwest Groundwater Consulting/ | $5,454.29 |
| 8D Impaired | **SAC D-1** |  |
|  | Non-Contingent   Allowed   Claims:   None |  |

Impairment: Impaired

Voting Rights: Classes 8A – 8D are entitled to vote on the Debtors' Plan.

Treatment: Holders of Allowed Claims in Class 8A will each receive, along with the Class 9 claimants as set forth below: (i) their Pro Rata Share of Net Proceeds of Causes of Action as set forth in the Northlight Exit Facility Term Sheet; and (2) their Pro Rata share of any assets of Reorganized ST remaining after payment in full of (i) all amounts owing under the Northlight Exit Facility, (ii) Allowed Class 1A, 2B (if Class 2B accepts the Plan) and 3A Secured Claims; and (iii) all asset management fees and other costs incurred by Reorganized ST, subject to the waterfall provisions of the Northlight Exit Facility described in Section IV.A of the Debtors' Plan.

Allowed Claims in Class 8A shall bear interest from and after the Effective Date at the federal judgment rate or such other rate as is necessary to comply with section 1129 of the Bankruptcy Code.

In addition to any other distribution to which the holders of Allowed Claims in Class 3A may be entitled, each holder of an Allowed Class 8A Claim shall receive one (1) Class A share in reorganized ST for every $1,000 of Allowed Claim held by that Class 8A Claimant.

Holders of Allowed Claims in Classes 8B and 8C with claims under $14,000 will receive a payment of cash for the full amount of their Allowed Claims, without interest, on the Effective Date. Holders of Allowed Claims in Classes 8B, 8C, and 8D with Claims over $14,000 will each

receive their Pro Rata Share of any Net Cash Proceeds of each of their respective estates remaining after payment in full of any Allowed Secured Claims in each of their respective estates, subject to the waterfall provisions of the Northlight Exit Facility described in Section IV.A of the Debtors' Plan (if applicable). Holders of Allowed Classes 8B, 8C and 8D claims that hold a guaranty of a secured claim must first look to their collateral for satisfaction of their claims before receiving a distribution as a Class 8 claimant. The Debtors reserve the right to assert at the confirmation hearing that Class 8B and 8C Claims are Unimpaired.

### i.    Class 9 Subordinated Claims Against Specialty Trust (BONY).

<u>Classification</u>:  Class 9 consists of the Claims of Unsecured Noteholders.

<u>Impairment</u>:  Impaired

<u>Voting Rights</u>:  Class 9 is entitled to vote on the Debtors' Plan.

<u>Treatment</u>:  Holders of Allowed Claims in Class 9 will receive the same treatment as holders in Class 8A, except that any distribution to Allowed Claims in Class 9 will be subject to the subordination provisions set forth in the Unsecured Noteholders Indenture. The Debtors believe that pursuant to such subordination provisions in the Unsecured Noteholders Indenture, that the Class 9 claimants are only subordinated to the Claims of the Deutsche Bank New Secured Noteholders and Old Secured Noteholders (as opposed to being subordinated to other Creditors), and distributions under the Debtors' Plan will effectuate such subordination. However, notwithstanding the foregoing, any Creditor can challenge the Debtor's position that the Unsecured Noteholders are only subordinated to the Deutsche Bank Old Secured Noteholders and New Secured Noteholders, or the position that the Unsecured Noteholders are even subordinated to the Deutsche Bank Old Secured Noteholders and New Secured Noteholders, by filing a motion with the Bankruptcy Court within sixty days after the Effective Date.

In addition to any other distribution to which the holders of Allowed Claims in Class 9 may be entitled, each holder of an Allowed Class 9 Claim shall receive one (1) Class B share in

reorganized ST for every $1,000 of Allowed Claim held by that Class 9 Claimant.

### j.    Class 10 (Interests).

Classification:  Class 10 consists of Interests asserted against the applicable Debtor on the chart below:

| Debtors' Plan Subclass | Debtor against which Interest is asserted |
|---|---|
| 10A | ST |
| 10B | SAC |
| 10C | SAC II |
| 10D | SAC D-1 |

### (1)    Class 10A – ST.

Impairment:  Impaired

Voting Rights:  Class 10A is entitled to vote on the Debtors' Plan.

Treatment:  Upon the Effective Date, the equity interests in ST held by the Holders of Interests in Class 10A (Shareholders) will be cancelled and of no further force of effect.  Notwithstanding the cancellation of their Interests in ST, the holders of Allowed Interests in Class 10A shall receive, pro rata in accordance with the number of Allowed Interests held by each Interest holder, all funds remaining after the holders of all Allowed Claims against ST have been paid in full, after the Northlight Exit Facility and all costs of Debtors' liquidation have been repaid in full, in accordance with the Debtors' Plan.

### (2)    Class 10B – SAC.

Impairment:  Unimpaired

Voting Rights:  Class 10B is not entitled to vote on the Debtors' Plan.

Treatment:  ST, as the holder of 100 % of the Interests in SAC, will retain its Interests in the stock of SAC.

### (3)    Class 10C – SAC II.

Impairment:  Unimpaired

Voting Rights:  Class 10C is not entitled to vote on the Debtors' Plan.

Treatment:  ST, as the holder of Interests in SAC II, will retain its Interests in SAC II.

### (4)    Class 10D – SAC D-1 LLC.

Impairment:  Impaired

Voting Rights:  Class 10D is not entitled to vote on the Debtors' Plan.

Treatment:  SAC, as the holder of Interests in SAC D-1, will retain its Interests in SAC D-1.

### k.    Class 11 City National Allowed ST Secured Claim.

Classification:   Class 11 consists of the City National Bank Allowed Secured Claim against ST.

Impairment:  Impaired

Voting Rights:  Class 11 is entitled to vote on the Debtor's Plan.

Treatment:  The Holder of an Allowed Class 11 Claim will retain its lien on the City National Bank collateral and will receive, in full and final satisfaction of its Allowed Class 11 Secured Claim the City National Bank Restructured Note, which shall bear the following terms:

1.    A restructured promissory note in the principal amount of its Allowed Class 11 Secured Claims on the Effective Date.

2.     Interest:  The interest rate will be 4.25% per annum, or such other rate of interest as is necessary to comply with section 1129(b) of the Bankruptcy Code, with interest to accrue.

3.     Amortization:  None

4.     Maturity Date:  Three (3) years from the Effective Date

5.     Prepayment Penalty:  None.

**B.**    **Treatment of Executory Contracts and Unexpired Leases.**

**1.**    **Assumption of Executory Contracts and Unexpired Leases.**

**a.**    **Assumption of Agreements.**

On the Effective Date, the Debtors shall assume all executory contracts and unexpired leases of the Debtors listed on the Schedule of Assumed Agreements.

The Debtors reserve the right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date to:  (a) delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (b) add any executory contract or unexpired lease and provide for its assumption under the Plan.  The Debtors will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to any agreement affected by the amendment.

The Confirmation Order will constitute a Court order approving the assumption, on the Effective Date, of all executory contracts and unexpired leases identified on the Schedule of Assumed Agreements as of the date of the Confirmation Hearing.  Any executory contracts that are to be assumed or assigned after the date of the Confirmation Hearing and prior to the Effective Date will be the subject of a separate motion to be heard by the Court between the date of the Confirmation Hearing and the Effective Date.

**b.**    **Cure Claims.**

Exhibit C to the Plan Supplement contains a list of proposed amounts of Cure Claims for

all contracts or leases scheduled to be assumed. The Debtors or the Reorganized Debtors shall pay Allowed Cure Claims on or before ten days following the Effective Date, or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure Claim, (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, if applicable, or (c) any other matter pertaining to assumption, the Cure Claim shall be paid promptly following the time when an order resolving the dispute and approving the assumption becomes a Final Order. Pending a Final Order resolving such a dispute, the applicable lease or contract shall be neither assumed nor rejected, and the Reorganized Debtors may, no later than ten days following a Final Order resolving such dispute, elect to reject the lease or contract subject to the dispute.

### c.    Objections to Assumption.

Any entity who is a party to an executory contract or unexpired lease that will be assumed under the Debtors' Plan and that objects to such assumption or the amount of the proposed Cure Claim must File with the Court and serve upon interested parties a written statement and supporting declaration stating the basis for its objection. This statement and declaration must be Filed and served by no later than May 23, 2011. Any entity that fails to timely File and serve such a statement and declaration will be deemed to waive any and all objections to the proposed assumption of its contract or lease and the amount of the proposed Cure Claim. In the absence of a timely objection by an entity who is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination as to the amount of any cure and compensation due under the executory contract or unexpired lease, and that the Reorganized Debtors have demonstrated adequate assurance of future performance with respect to such executory contract or unexpired lease. If the Debtors amend Exhibit C to the Plan Supplement, then any entity that is a party to an executory contract or

unexpired lease that is affected by the amendment shall have fourteen (14) days from the giving of notice of any such amendment to object to the amendment.

### d.    Resolution of Claims Relating to Assumed Agreements.

In accordance with the procedures set forth in Section III.A.2 of Debtors' Plan relating to the payment of the Cure Claims with respect to executory contracts or unexpired leases that will be assumed under the Debtors' Plan, payment of the Cure Claim shall be deemed to satisfy, in full, any pre-petition or post-petition arrearage or other Claim asserted in a filed proof of Claim or listed in the Schedules, irrespective of whether the amount of the Cure Claim is less than the amount set forth in such proof of Claim or the Schedules.  Upon the tendering of the payment of the Cure Claim, any such Claim with respect to such agreement shall be Disallowed, without further order of the Court or action by any party.

### 2.    Rejection of Executory Contracts and Unexpired Leases.

### a.    Rejected Agreements.

On the Effective Date, the Debtors will reject all executory contracts and unexpired leases set forth on the Schedule of Rejected Agreements as well as all executory contracts and unexpired leases that are not set forth on the Schedule of Assumed Agreements or on the Schedule of Rejected Agreements.   The Confirmation Order will constitute a Court order approving the rejection, on the Effective Date, of the executory contracts and unexpired leases not previously assumed or deferred under the Debtors' Plan.

### b.    Bar Date for Rejection Damage Claims.

Any Rejection Damage Claim or other Claim for damages arising from the rejection of an executory contract or unexpired lease under the Debtors' Plan must be Filed and served upon the Plan Representative and counsel to the Reorganized Debtors within thirty days after the mailing of notice of the occurrence of the Effective Date.  Any such Claims that are not timely filed and served will be forever barred and unenforceable against the Debtors, the Reorganized Debtors,

the Plan Representative, the Estates, and their respective properties, and any persons or entities holding such   claims or claiming to have such claims, will be barred from receiving any distributions under the Debtors' Plan on account of such untimely claims.

### 3.    Post-Petition Contracts and Leases.

Except as expressly provided in the Debtors' Plan or the Confirmation Order, all contracts, leases, and other agreements that the Debtors entered into after the Petition Date will be retained by the Reorganized Debtors.

## C.    Means of Execution and Implementation of Debtors' Plan.

### 1.    Funding of the Plan.

Obligations required to be satisfied in cash under the Debtors' Plan on and after the Effective Date will be satisfied from the Reorganized Debtors' cash on hand, the lease or sale of assets, revenues, and the proceeds of the Northlight Exit Facility, substantially on the key terms and conditions described below.  Unless such sale has been approved by unanimous vote of Reorganized ST's Board of Directors, Court approval will be necessary for the Reorganized Debtors to sell any of their assets.  In considering such approval, the Court shall apply the standards otherwise applicable to sales pursuant to Bankruptcy Code section 363(b).

### a.    Northlight Exit Facility.

The Debtors will enter into the Northlight Exit Facility (unless a higher and better proposal is submitted by another entity pursuant to the Plan Bid Procedures) upon the Effective Date, which is described in detail in the Northlight Exit Facility Term Sheet attached to the Debtors' Plan as Exhibit A.  Under the Northlight Exit Facility, up to $28 million of new senior secured indebtedness will be incurred to pay off US Bank's Claims at a discount, as well as the DIP Lender's interests in the DIP Facility, with the balance to be used by the Debtors in connection with the operations under the Plan (the "Northlight Loan") for the following purposes (i) pay professional expenses as they relates to the Cases; (ii) fund $300,000 into a segregated

account for the pursuit of the Causes of Action; (iii) pay for operating expenses during the liquidation of the portfolio; (iv) pay for carrying costs associated with REO property in the portfolio; (v) fund an interest reserve account and operating reserve account; (vi) pay for such other working capital needs of the Reorganized Debtors as may be approved by Northlight from time to time; and (vii) pay for other costs and expenses associated with the closing of the Northlight Exit Facility.  The loans under the Northlight Exit Facility have a four year term, with two one-year extensions

The material terms of the Northlight Exit Facility are described in the Northlight Exit Facility Term Sheet, including, but not limited to: (i) the structure of the loan depending upon whether Class 2B accepts or rejects the Debtors' Plan; (ii) the term of the loan; (iii) the commitment and extension fee; (iv) the non-default and default interest rates, as well as amortization; (v) the cash waterfall from the proceeds derived from the sale, disposition or use of the assets of the Estate, including Northlight's Incentive Payment Plan as defined in Exhibit C to such term sheet (Northlight does not receive an Incentive Payment based upon any litigation recoveries from the pursuit of Causes of Action); and (vi) the primary terms of the Northlight Asset Management and Service Agreement.  The Release Price Supplement to the Northlight Exit Facility Term Sheet is attached to the Debtors' Plan as Exhibit B.  The Northlight Exit Facility Term Sheet and the Release Price Supplement to same are only summaries, and the actual terms are governed by the Northlight Exit Facility and Northlight Asset Management and Service Agreement which are attached the Plan Supplement.  The actual release prices set forth in the chart on the Release Price Supplement and the Northlight Exit Facility are redacted.  The actual release prices will be provided to Creditors upon the signing of a confidentiality agreement and will be filed under seal.

In addition, the holders of claims or interests in Classes 8A, 9 and 10 will also have the option to participate as lenders in the Northlight Exit Facility, in an amount up to 49% of the total amount of the loan by notifying the Debtors and Northlight of their intention to participate no later than 30 days prior to the scheduled closing date of the Northlight Exit Facility.

However, in the event that Class 2B votes to reject the Debtors' Plan, holders of Class 8A claims resulting in a deficiency claim as a result of being a member of Class 2B shall not be allowed to participate as a lender in the Northlight Exit Facility.

A draft of the proposed Northlight Exit Facility document(s) is attached to the Debtors' Plan Supplement as Exhibit A.

2.    **Continued Corporate Existence and Vesting of Assets in Reorganized Debtors.**

On and after the Effective Date, each of the Reorganized Debtors will continue to exist as a separate corporation or a limited liability company (as the case may be depending on the entity structure currently being used by each Debtor).   Such corporate or limited liability company existence shall be deemed to be continued notwithstanding any provision of applicable non-bankruptcy law triggering the dissolution of any business entity upon the cancellation or extinguishment of all of its equity interests or the termination of the sole remaining equity interest holder.

Except as otherwise provided in the Debtors' Plan, on and after the Effective Date, all assets and property of the Estates, and any property acquired by such Debtors under or in connection with the Debtors' Plan will vest in the applicable Reorganized Debtor free and clear of all Claims, liens, charges, other encumbrances and Interests.

3.    **Management of Reorganized Debtors.**

a.    **Appointment of Plan Representative; Supervisory Board.**

After the Effective Date, the Reorganized Debtors will be managed under normal rules of corporate governance.   Further provisions regarding the governance and management of the Reorganized Debtors are set forth in the Bylaws and Articles of Incorporation of ST attached to the Debtors' Plan Supplement.

b.    **Powers and Duties of the Reorganized Debtors.**

The Reorganized Debtors, through the Plan Representative, shall make distributions to creditors consistent with the Debtors' Plan and otherwise hold and liquidate all assets and property of the Estates in accordance with the provisions of the Debtors' Plan. The Reorganized Debtors, the Plan Representative, and the Supervisory Board shall not be required to post a bond in favor of the United States.

The Reorganized Debtors, acting through the Plan Representative, shall have the power and authority to perform the following acts, in addition to any powers granted by law or conferred by any other provision of the Plan and orders of the Bankruptcy Court; provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Reorganized Debtors or the Plan Representative, subject to the authority of the Supervisory Board, to act as specifically authorized by any other provision of the Debtors' Plan or orders of the Bankruptcy Court, and to act in such manner as the Plan Representative may deem necessary, or desirable to discharge all obligations assumed by the Reorganized Debtors as provided herein, and to conserve and protect the assets of the Estates, including without limitation and by example only:

a.    manage all property of the Estates and to execute, acknowledge and deliver any and all instruments as may be appropriate or necessary;

b.    make interim and final distributions of the Estates' assets to the holders of Allowed Claims and Interests pursuant to the terms of the Debtors' Plan;

c.    file objections to the allowance or priority of Claims, Administrative Expenses or Interests;

d.    determine tax issues or liabilities in accordance with section 505 of the Bankruptcy Code;

e.    administer the collection, prosecution, settlement, assignment, conveyance or abandonment of the Causes of Action;

f.    file all tax and regulatory forms, returns, reports and other documents required by applicable federal, state and local laws and regulations; and

g.      file suit or any appropriate motion for relief in the Court or in any other court of competent jurisdiction to resolve any claim, disagreement, conflict or ambiguity in connection with the exercise of its rights, powers or duties.

In connection with the above, the Reorganized Debtors shall, as of and after the Effective Date, be a representative of the Estates pursuant to Bankruptcy Code section 1123, appointed for the purposes of, among other things, pursuing the Causes of Action.  In furtherance of that objective, the Reorganized Debtors shall have the rights of a trustee under Bankruptcy Code section 1106 as it relates to the Causes of Action.  The Reorganized Debtors shall have the full power and authority to commence, if not already commenced, prosecute, settle, assign, convey and abandon any action related to the Causes of Action.  The Reorganized Debtors shall be authorized to retain professionals without Court approval (which may include existing professionals retained by the Committee, and which need not be "disinterested").  The reasonable professional fees (including any contingency fees), expenses, and costs of such professionals are to be paid out of the assets of the Reorganized Debtors.

### c.      Management of Debtors' Mortgage Loan and Real Property Portfolio.

The Debtors will enter into the Northlight Asset Management and Servicing Agreement in substantially in the form of Exhibit B to the Plan Supplement.  The Asset Management and Servicing Agreement provides for asset management services for the Debtors' real estate and mortgage loan portfolio (the "Asset Manager"), and the material terms are summarized in Exhibit B to the Northlight Exit Facility Term Sheet.

### 4.      Objections to Claims or Interests.

Except as otherwise provided in the Debtors' Plan (regarding allowance of Administrative Claims), objections to any Claims or Interests shall be Filed and served upon the holder of the affected Claim or Interest no later than the date that is the later of (a) six months after the Effective Date, unless extended by the Court, and (b) six months after the date on which the affected proof of Claim or Interest has been filed, unless extended by the Court.

**5.      Distribution of Property Under Debtors' Plan.**

The following procedures as set forth in the Debtors' Plan apply to distributions made pursuant to the Debtors' Plan by the Reorganized Debtors, which will make all distributions under the Debtors' Plan unless otherwise provided. In connection with the Debtors' Plan, to the extent applicable, the Reorganized Debtors, when making distributions under the Debtors' Plan, shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Debtors' Plan shall be subject to such withholding and reporting requirements.

Distributions to the Old Secured Noteholders (Class 2A) and to the Old Secured Noteholders (Class 2B) shall be made to Deutsche Bank, which may deduct any fees, expenses or other charges to which it is entitled under the terms of the applicable indenture, following which Deutsche Bank shall remit any remaining distribution to the Reorganized Debtors for distribution directly to the holders of Class 2A or Class 2B Claims (or on account of any deficiency claim held by the Old Secured Noteholders or New Secured Noteholders, as applicable). Unless the Court orders otherwise, in order to give effect to the subordination provisions of the indenture governing the Unsecured Noteholders, until the Claims of the Old Secured Noteholders and the New Secured Noteholders have been paid in full, any distribution to which the Unsecured Noteholders may be entitled shall be distributed as provided above with respect to the distributions to the Old Secured Noteholders and the New Secured Noteholders. Following payment in full of the Claims held by the Old Secured Noteholders and the New Secured Noteholders distributions on account of the Unsecured Noteholders Claim shall be made to the Unsecured Noteholders Indenture Trustee to be applied in accordance with the Unsecured Noteholders Indenture.

**a.      Manner of Payments Under Debtors' Plan.**

Payments to domestic entities holding Allowed Claims will be tendered in U.S. Dollars and will be made by checks drawn on a domestic bank or by wire transfer from a domestic bank.

Payments made to any foreign Creditors holding Allowed Claims may be paid, at the option of the Reorganized Debtors, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### b.    No De Minimis Distributions.

Notwithstanding anything to the contrary in the Debtors' Plan, no payment of less than $100.00 will be made to any entity pursuant to the Debtors' Plan.  No consideration will be provided in lieu of the de minimis distributions that are not made under Section IV.E. of Debtors' Plan.

### c.    No Distribution With Respect to Disputed Claims.

No payments, distributions of other property, or other consideration of any kind shall be made on account of any Disputed Claim or Disputed Interest unless and until such Claim or Interest becomes an Allowed Claim or Allowed Interest or is deemed to be such for purposes of distribution, and then only to the extent that the Claim or Interest becomes, or is deemed to be for distribution purposes, an Allowed Claim or Allowed Interest.  Unless otherwise provided in Debtors' Plan, any holder of a Claim or Interest that becomes an Allowed Claim or an Allowed Interest after the Effective Date will receive its distribution within ten days from the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest.

### d.    Delivery of Distributions and Undeliverable/Unclaimed Distributions.

#### (1)    Delivery of Distributions in General.

Except as provided with respect to the Claims held by the Old Secured Noteholders, the New Secured Noteholders, and the Unsecured Noteholders, the Reorganized Debtors shall make distributions to each holder of an Allowed Claim or Allowed Interest by mail as follows:  (a) at the address set forth on the proof of Claim or proof of Interest filed by such holder of an Allowed Claim or Allowed Interest; (b) at the address set forth in any written notice of address change delivered to the Plan Representative after the date of any related proof of Claim; (c) at the

address reflected in the Schedules if no proof of Claim or proof of Interest is filed and the Plan Representative has not received a written notice of a change of address; and (d) with respect to Administrative Claims, the address provided by the holder of the Claim or, if none is provided, at the address set forth in the Debtors' books and records.

### (2)    Undeliverable and Unclaimed Distributions.

If the distribution to the holder of any Allowed Claim or Allowed Interest is returned as undeliverable, no further distribution shall be made to such holder unless and until a Reorganized Debtor, as applicable, is notified in writing of such holder's then current address. Subject to the other provisions of the Debtors' Plan, undeliverable distributions shall remain in the possession of the Reorganized Debtor pursuant to this Section until such time as a distribution becomes deliverable. All undeliverable cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions. These entities will be entitled to any interest actually earned on account of the undeliverable distributions. The bank account will be maintained in the name of the Reorganized Debtor, but it will be accounted for separately.

Any holder of an Allowed Claim or Allowed Interest who does not assert a claim in writing for an undeliverable distribution within one year after the Effective Date shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under the Plan, or from asserting a claim against the Debtors, the Estates, the Reorganized Debtors or their respective property, and the Claim giving rise to the undeliverable distribution will be discharged. The Reorganized Debtors will be enabled and empowered to retain all such undeliverable distributions for distribution as otherwise provided for in Debtors' Plan.

Nothing contained in the Debtors' Plan shall require the Debtors or Reorganized Debtors to attempt to locate any holder of an Allowed Claim or Allowed Interest.

### e.    Estimation of Disputed Claims or Interests for Distribution Purposes.

The Debtors or the Reorganized Debtors, as applicable, may move, pursuant to Bankruptcy Code section 502(c), for a Court order estimating any Disputed Claim or Disputed Interest. The estimated amount of any Disputed Claim or Disputed Interest so determined by the Court shall constitute the maximum recovery that the holder thereof may recover after the ultimate liquidation of its Disputed Claim or Disputed Interest, irrespective of the actual amount ultimately allowed.

### f.    Cancellation of Unsecured Notes and Unsecured Noteholders Indenture.

Except to the extent the notes are reinstated or unimpaired under the Debtors' Plan, as of the Effective Date the notes issued under the Unsecured Noteholders Indenture together with the Unsecured Noteholders Indenture shall be cancelled and deemed null and void and of no further force or effect without any further action on the part of the Court, the Debtors, or any other person; *provided, however,* that the cancellation of the Unsecured Noteholders Indenture: (i) shall not impair the rights of the Unsecured Noteholders under the Debtors' Plan; and (ii) shall not impair the rights of the Unsecured Noteholders Indenture Trustee under the Unsecured Noteholders Indenture and the Plan, including the right of the Unsecured Noteholders Indenture Trustee to enforce the Unsecured Noteholders Indenture Trustees' lien under the Unsecured Noteholders Indenture.

### 6.    Full Satisfaction.

The Plan Representative shall make, and each holder of a Claim or Interest shall receive, any distributions provided for in the Debtors' Plan in full satisfaction and discharge of such Claim or Interest. Such satisfaction shall not release or discharge the liability of any non-debtor entity on account of such Claim, except to the extent that such liability is reduced by virtue of a distribution made pursuant to Debtors' Plan.

### 7.    Compliance with Tax Requirements.

The Plan Representative shall comply with all withholding and reporting requirements imposed on it by governmental units, if any, and all distributions pursuant to the Debtos' Plan shall be subject to such withholding and reporting requirements.

### 8.    Setoff, Recoupment and Other Rights.

Notwithstanding anything to the contrary contained in the Debtors' Plan, the Debtors or the Reorganized Debtors may, but shall not be required to, setoff, recoup, assert counterclaims or withhold against the distributions to be made pursuant to the Debtors' Plan on account of any claims that the Debtors, the Estates or the Reorganized Debtors may have against the entity holding an Allowed Claim; provided, however, that neither the failure to effect such a setoff or recoupment, nor the allowance of any Claim against the Debtors or the Reorganized Debtors, nor any partial or full payment during the Cases or after the Effective Date in respect of any Allowed Claim, shall constitute a waiver or release by Debtors, the Estates or the Reorganized Debtors of any claim that they may possess against such holder.

### 9.    Conditions to Effectiveness of Debtors' Plan.

The Debtors' Plan shall not become binding unless and until the Effective Date occurs. The Effective Date is the first Business Day on which all of the following conditions have been satisfied as set forth below or waived:

1.    The Confirmation Order shall have become a Final Order.

2.    No request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code has been made, or, if made, remains pending.

3.    Each exhibit, document or agreement to be executed in connection with the Debtors' Plan shall be in final form acceptable to the Debtors and Northlight.

4.    The Northlight Exit Facility shall be in full force and effect and all conditions therein to the obligations of the parties to such loans shall have been satisfied or waived as set forth in the Northlight Exit Facility.

5.    All other agreements, writings and undertakings required under the Debtors' Plan

shall be executed and ready for consummation.

  6. The Reorganized Debtors shall mail a "Notice of Occurrence of Effective Date" to all Creditors and Interest holders of record as of the date of entry of the Confirmation Order upon the occurrence of the Effective Date.

  Except as specified above, the requirement that the conditions to the occurrence of the Effective Date be satisfied may be waived in whole or in part, and the time within which any such conditions must be satisfied may be extended by the Debtors with the consent of Northlight.

### 10. Authorization of Entity Action.

  Each of the matters provided for under the Debtors' Plan or any action to be taken by or required of the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by equityholders, creditors, or managers, officers or directors of the Debtors, or any of them.

## D. <u>Other Plan Provisions</u>

### 1. Exculpation:  No Liability For Solicitation or Prosecution of Confirmation.

  Conditioned on the occurrence of the Effective Date, none of the Debtors, the Estates, the CRO, the lenders and agent under the Northlight Exit Facility, the DIP Lenders, or any of the foregoing parties' respective Associated Released Parties shall have or incur any liability to any holder of a Claim or Interest, or to one another, for any act or omission occurring on or after the Petition Date through to and including the Effective Date in connection with, related to, or arising out of the Cases, the pursuit of confirmation of the Debtors' Plan, the consummation or administration of the Plan, or property to be distributed under the Debtors' Plan, except to the extent that the act or omission is determined by Final Order to be solely due to its own respective willful misconduct or gross negligence, and in all respects, the Debtors, the Estates, the CRO, the lenders and agent under the Northlight Exit Facility, the DIP Lenders, or any of the foregoing

parties' respective Associated Released Parties shall be entitled to rely on the advice of their respective counsel with respect to their duties and responsibilities during the Cases and under the Debtors' Plan.

### 2.    Revocation of Plan/No Admissions.

The Debtors reserve the right to revoke or withdraw the Debtors' Plan prior to the Confirmation Date. Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Debtors' Plan will be null and void, and nothing contained in the Debtors' Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Debtors with respect to any matter set forth in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims against, or any Interests in, the Debtors or the Estates, or any claims of the Debtors or the Estates; or (c) prejudice in any manner the rights of any party in any further proceedings.

### 3.    Modifications to Debtors' Plan

The Debtors' Plan may be modified at any time before or after confirmation, subject to sections 1125 and 1127 of the Bankruptcy Code by the Debtors.

### 4.    Dissolution of Committee

On the Effective Date, the Committee shall be released and discharged from the rights and duties arising from or related to the Cases, except with respect to final applications for professionals' compensation. The professionals retained by the Committee and the members thereof shall not be entitled to compensation or reimbursement of expenses for any services rendered or expenses incurred after the Effective Date except for services rendered and expenses incurred in connection with any applications by such professionals or Committee members for allowance of compensation and reimbursement of expenses pending on the Effective Date or timely filed after the Effective Date as provided in the Plan, as approved by the Court.

5.       **Exemption from Certain Transfer Taxes**

In accordance with Bankruptcy Code section 1146(c), the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under the Debtors' Plan may not be taxed under any law imposing a stamp tax or similar tax.  The Confirmation Order shall direct all governmental officials and agents to forego the assessment and collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

6.       **Successors and Assigns**

The rights, benefits, and obligations of any entity named or referred to in the Debtors' Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

7.       **Saturday, Sunday or Legal Holiday**

If any payment or act under the Debtors' Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

8.       **Headings**

The headings used in the Debtors' Plan are inserted for convenience only and do not constitute a portion of the Debtors' Plan or in any manner affect the provisions of the Debtors' Plan or their meaning.

9.       **Governing Law**

Unless a rule of law or procedure is supplied by (a) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (b) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Debtors' Plan, the rights and obligations arising under the Debtors' Plan and any agreements, contracts,

documents, and instruments executed in connection with the Debtors' Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada without giving effect to the principles of conflict of laws thereof.

### 10.    Form of Agreements and Documents

All documents and agreements to be Filed with the Court as part of the Plan or which are to become Exhibits to the Plan, the Plan Supplement or the Disclosure Statement or which are to be executed or delivered in connection with the Debtors' Plan, and any revisions or amendments thereto prior to the Effective Date, shall be in form and substance acceptable to the Debtors in their sole discretion prior to any Filing, execution, delivery or amendment.

### E.    Effect of Confirmation of Debtors' Plan

#### 1.    Discharge and Injunction

The rights afforded in the Debtors' Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever arising prior to the Effective Date, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Estates and their property.

Except as otherwise provided in the Debtors' Plan or the Confirmation Order, the Debtors' Plan and Confirmation Order shall, on the Effective Date: (a) discharge and release the Debtors, the Estates, the Reorganized Debtors and their property to the fullest extent permitted by Bankruptcy Code sections 524 and 1141, from all Claims and Interests, including all debts, obligations, demands, liabilities, Claims, and Interests that arose before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i) (collectively, "Discharged Liabilities"), regardless of whether or not (i) a proof of Claim or Interest based on such Discharged Liability is filed or deemed filed, (ii) a Claim or Interest based on such Discharged Liability is allowed pursuant to Bankruptcy Code section 502, or (iii) the

holder of a Claim or Interest based on such Discharged Liability has or has not accepted the Plan; (b) void any judgment underlying a Discharged Liability discharged hereunder; and (c) preclude all entities from asserting against the Debtors, the Estates, the Reorganized Debtors, or their respective property any Discharged Liability based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, all entities who have held, currently hold, or may hold a Discharged Liability against the Debtors, the Estates, the Reorganized Debtors or their respective property that is based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, that otherwise arose or accrued prior to the Effective Date, or that is otherwise discharged pursuant to the Debtors' Plan, shall be permanently enjoined from taking any of the following actions on account of any such Discharged Liability (the "Permanent Injunction"): (a) commencing or continuing in any manner any action or other proceeding against the Debtors, the Estates, the Reorganized Debtors or their respective property that is inconsistent with the Debtors' Plan or the Confirmation Order; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Debtors, the Estates, the Reorganized Debtors or their respective property other than as specifically permitted under the Plan or the Confirmation Order; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtors, the Estates, the Reorganized Debtors or their respective property; and (d) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Debtors' Plan, the Confirmation Order, or the discharge provisions of Bankruptcy Code section 1141. Any entity injured by any willful violation of such Permanent Injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

**2.      Payment of US Trustee Fees**

The Debtors or the Reorganized Debtors shall pay all of their respective U.S. Trustee Fees in accordance with Section II.B.2 of Debtors' Plan.

**3.      Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Court shall retain jurisdiction over the Cases after the Effective Date to the fullest extent provided by law, including the jurisdiction, consistent with the Confirmation Order, to:

1.      Allow, disallow, determine, liquidate, classify, establish the priority or secured or unsecured status of, estimate, or limit any Claim or Interest;

2.      Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Debtors' Plan, for periods ending on or before the Effective Date;

3.      Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any executory contract or unexpired lease to which one or more of the Debtors is a party or with respect to which one or more of the Debtors may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

4.      Enforce or adjudicate any disputes regarding the Northlight Exit Facility, or any alternative exit facility;

5.      Ensure that distributions to holders of Allowed Claims or Allowed Interests, including but not limited to Administrative Claims, are accomplished pursuant to the provisions of the Plan;

6.      Adjudicate, determine and resolve any and all applications, motions, adversary proceedings, and contested or other matters involving the Debtors, including any relating to the Causes of Action that may be pending on the Effective Date or that may be instituted thereafter in accordance with the terms of the Debtors' Plan;

7.      To effectuate, if requested by the Reorganized Debtors, any sales of assets.

8.      Enter such orders as may be necessary or appropriate to implement or

consummate the provisions of the Debtors' Plan and all contracts, instruments, releases, and other agreements or documents entered into in connection with the Debtors' Plan;

9.      Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Debtors' Plan or any entity's rights or obligations in connection with the Debtors' Plan;

10.      Modify the Debtors' Plan before or after the Effective Date pursuant to Bankruptcy Code section 1127, or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Debtors' Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any order of the Court, the Debtors' Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Debtors' Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

11.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Debtors' Plan;

12.      Adjudicate, determine and resolve any claims and causes of action provided for and retained under the Debtors' Plan or pursuant to the Confirmation Order, including the Causes of Action;

13.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.      Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Debtors' Plan; and

15.      Enter orders closing the Cases.

If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter, this section shall have no effect upon and shall not control, prohibit, or limit the

exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# Exhibit 5

# Exhibit 5

## SUMMARY OF PROVISIONS OF COMMITTEE'S PLAN

The following is a description of certain provisions of the Committee's Plan.  The following summary of the Committee's Plan is qualified in its entirety by the actual terms of the Plan.  In the event of any conflict, the terms of the Committee's Plan will control over any summary set forth in this Summary. Capitalized terms used in this summary have the meanings ascribed to those terms in the Plan.

### Designation of Classes and Treatment of Claims and Interests

### Summary and Classification of Claims and Interests

Section II of Committee's Plan classifies Claims and Interests — except for Administrative Claims and Priority Tax Claims, which are not classified — for all purposes, including voting, confirmation, and distribution under Committee's Plan.  A Claim or Interest is classified in a Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class. For example, in the event that a creditor has collateral securing its claim that is worth less than the amount owed to that creditor, that creditor's claim would be classified in a secured creditor class to the extent of the value of that creditor's collateral and as an unsecured claim to the extent of any deficiency between the amount of the creditors' claim and the value of the collateral securing the claims. For example, in the event that a creditor has collateral securing its claim that is worth less than the amount owed to that creditor, that creditor's claim would be classified in a secured creditor class to the extent of the value of that creditor's collateral and as an unsecured claim to the extent of any deficiency between the amount of the creditors' claim and the value of the collateral securing the claims.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN COMMITTEE'S PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.

The treatment in Committee's Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each entity holding an Allowed Claim or an Interest may have in or against the Estates, the Liquidating Trust or their respective property. It is not a "discharge" of the claim for purposes of eliminating rights against third parties or the Debtors. However, under the Committee Plan the Debtors will cease to exist on the Effective Date and all their property will be transferred to the Liquidating Trust. This treatment supersedes and replaces any agreements or rights those entities may have in or against the Estates, the Liquidating Trust or their respective property. All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

1.      **Allowance and Treatment of Unclassified Claims (Administrative Claims and Priority Tax Claims).**

   a.      **Administrative Claims**

      (1)      **Allowance of Administrative Claims**

<u>Allowance of Ordinary Course Administrative Claims</u>: An entity holding an Ordinary Course Administrative Claim may, but need not, File a motion or request for payment of its Claim. The Debtors or the Liquidating Trust or any other party in interest may File an objection to an Ordinary Course Administrative Claim in their discretion. Unless an objection is filed to an Ordinary Course Administrative Claim, such Claim will be an Allowed Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim.

<u>Allowance of Professional Fee Claims</u>: Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be an Allowed Claim only if, and to the extent that:

      (i)      on or before sixty days after the Effective Date, the entity holding such Professional Fee Claim both Files with the Court a final fee application or a motion requesting

allowance of the fees and reimbursement of expenses and serves the application or motion on the Debtors, the Liquidating Trustee and the U.S. Trustee; and

(ii)    the Court determines it is an Allowed Claim.

The Debtors, the Liquidating Trustee or any other party in interest may File an objection to such application or motion by no later than thirty days after the Filing and service of such application or motion. Entities holding Professional Fee Claims that do not timely File and serve a fee application or motion for allowance of a Professional Fee Claim will be forever barred from asserting those Claims against the Estates, the Liquidating Trust or their respective property.

Allowance of Cure Claims:    Cure Claims shall be allowed in accordance with the procedures set forth in Section III.A.2 below.

Allowance of Non-Ordinary Course Administrative Claims and Substantial Contribution Claims:    Unless otherwise expressly provided in the Plan, Non-Ordinary Course Administrative Claims and Substantial Contribution Claims will be Allowed Claims only if:

(i)    unless a different procedure has been approved by the Court prior to the Confirmation Hearing, on or before sixty days after the Effective Date, the entity holding such Non-Ordinary Course Administrative Claim or Substantial Contribution Claim both Files with the Court a motion requesting allowance of the Claim and serve the motion on the Liquidating Trust and the U.S. Trustee; and

(ii)    the Court determines it is an Allowed Claim.

The Debtors, the Liquidating Trustee or any other party in interest may File an objection to such motion within thirty days after the expiration of the deadline for the Filing of a Non-Ordinary Course Administrative Claim or Substantial Contribution Claim set forth in subparagraph (i), above (i.e., within ninety days after the Effective Date), unless such time period for Filing such objection is extended by the Court. Entities holding Non-Ordinary Course Administrative Claims that do not timely File and serve a request for payment will be forever barred from asserting those Claims against the Estates, the Liquidating Trust or their respective property.

(2)    **Treatment of Administrative Claims**

Treatment of Allowed Ordinary Course Administrative Claims:  Unless otherwise agreed, Allowed Ordinary Course Administrative Claims will be paid by the Debtors or the Liquidating Trust in accordance with the terms and conditions of the particular transaction that gave rise to the Allowed Claim.

Treatment of any Allowed Substantial Contribution Claim:  Any Allowed Substantial Contribution Claim shall be paid by the Debtors or the Liquidating Trust the same as if it were a Professional Fee Claim.

Treatment of Professional Fee Claims:    Unless otherwise agreed, an Allowed Professional Fee Claim will be paid by the Debtors or the Liquidating Trust, as applicable, after the Court determines such Claim is an Allowed Claim, and in accordance with the projections attached to the Disclosure Statement.

Treatment of Cure Claims:  The Liquidating Trust, or the assignee, if applicable, will pay the Allowed amounts of Cure Claims to the non-Debtor parties to the executory contracts or unexpired leases.

Treatment of U.S. Trustee Fees Under 28 U.S.C. § 1930:  The Debtors will pay to the U.S. Trustee all fees due and owing under 28 U.S.C. § 1930 on the Effective Date.

Treatment of Non-Ordinary Course Administrative Claims:  Unless the entity holding a Non-Ordinary Course Administrative Claim Allowed by the Court agrees to different treatment, the Liquidating Trust will pay the full amount of such Allowed Non-Ordinary Course Administrative Claim in the same manner as the treatment of the Professional Fee Claims as described above.

Treatment of Claims Under the DIP Facility:  The DIP Lender will receive, in full and final satisfaction of the Debtors' obligations under the DIP Facility cash in full the amount of its claims unless the DIP Lender agrees to a different treatment.

b.    **Priority Tax Claims**

The Priority Tax Claims include (i) an IRS Claim against ST of $177,560.37 and (ii) an IRS Claim against SAC of $5,000.00.

Unless otherwise agreed, the Liquidating Trust will pay to an entity holding an Allowed Priority Tax Claim the full amount of the Allowed Priority Tax Claim, plus interest calculated at the federal judgment rate, in equal, amortized, annual installments beginning on the first anniversary of the Petition Date that falls on a date following the occurrence of the Effective Date and, thereafter, on each anniversary of the Petition Date through the fifth anniversary of the Petition Date. The Debtors, the Liquidating Trustee and any party in interest may object to the allowance of a Priority Tax Claim.

## Classification and Treatment of Classified Claims and Interests
### Class 1 (US Bank Secured Claims)
#### a.    Class 1A US Bank ST Secured Claims

Classification:  Class 1A consists of US Bank Allowed Secured Claims against ST.

Impairment:    Impaired

Voting Rights:  Class 1A is entitled to vote on the Plan.

Treatment:

Option 1:  Proponent shall pay US Bank $16.5 Million Dollars in full satisfaction of the Class 1A and 1B claims and any deficiency claims

Option 2: The Collateral securing Class 1A Claim shall be assigned to the Liquidating Trust subject to the Liens and rights securing payment of the Class 1A Claim.

Class 1A shall receive a Restructured Note for the value of the US Bank ST Collateral as determined by agreement between US Bank and the Liquidating Trustee or by the Court. The Class 1A lien shall be subordinated to the lien securing the Exit Facility.  Class 1A shall participate in the Replacement Lien to the extent Net Sale Proceeds of the Class 1A Claim are paid to the Exit Facility Lender.

All amounts due under the Restructured Note shall be paid from the Net Proceeds of the US

Bank ST Collateral and the Net Proceeds of the assets secured by the Replacement Lien. All remaining principal and interest shall be paid at maturity.

Deficiency:  In the event that the Net Proceeds of liquidation of the US Bank ST Collateral are insufficient to pay the claim secured by the US Bank ST Secured Claim in full, any remaining balance owed on account of such claim shall be treated as a Class 8A Claim.

Optional Right to Credit Bid:  The holder of the US Bank Restructured Note shall have a one-time option to credit bid an amount equal to or greater than any offer acceptable by the Trustee for any of the US Bank ST Collateral provided that the holder of the Note gives written notice of said credit bid to the Trustee within forty-eight (48) hours after notice by the Trustee to the holder of Trustee's acceptance of an offer to purchase the property. Any credit bid must include a cash component to satisfy: 1) the costs of the sale of that property (including any broker's commissions due on account of the sale), (2) the Management Fees allocated to the property for which the credit bid was submitted and (3) any senior lien; provided that, to the extent that any credit bid includes a cash component that is used to satisfy any senior lien, such holder shall receive a Replacement Lien to secure the repayment of such amount.

### b.    Class 1B US Bank SAC II Secured Claims

Classification:  Class 1B consists of US Bank Allowed Secured Claims against SAC II.

Impairment:    Impaired Disputed

Voting Rights:  Disputed

Treatment:    Class 1B shall either be paid as part of the $16.5 Million payoff under Option 1 or paid on the same terms and conditions as the Class 1A Claim Option 2;  however, Class 1B shall be paid only in the event:

(a) The Net Proceeds of US Bank ST Collateral is insufficient to pay or satisfy the amount of US Bank's Allowed Claim and

(b) The Cause of Action seeking to avoid Class 1B's prepetition guaranty and deeds of trust is unsuccessful.

## 2.    Class 2 (ST Deutsche Bank Secured Claims)

Classification:   Class 2 consists of the holders of Allowed Secured Claims under the 2005 Indenture and the 2008 Indenture which are held by the holders of notes issued pursuant to the 2005 Indenture.

Impairment:    Class 2 is Impaired.

Voting Rights:   Class 2 is entitled to vote on the Plan.

### Class 2A Secured Claims pursuant to 2005 Indenture

Treatment:    Amount of Claim:  The Class 2A claim shall be the value of the Deutsche Bank ST 2005 Collateral as determined by agreement between the holders of Class 2A Claims or their designee and the Liquidating Trustee or determined by the Court.

The Deutsche Bank ST 2005 Collateral shall be assigned to the Liquidating Trust subject to the Liens and rights securing payment of the Class 2A Claim.

Class 2A shall receive a Restructured Note for the amount of its Allowed Claim secured by the Deutsche Bank ST 2005 Collateral.  The Class 2A lien shall be subordinated to the lien securing the Exit Facility.  Class 2A shall participate in the Replacement Lien to the extent Net Sale Proceeds of the Deutsche Bank ST 2005 Collateral are paid to the Exit Facility Lender.

All amounts due under the Restructured Note shall be paid from the Net Proceeds of the Class 2A Collateral and the assets secured by the Replacement Lien.  All remaining principal and interest shall be paid at maturity.

Termination of 2005 Indenture:   Upon the Effective Date the 2005 Indenture shall be terminated.  Following such termination, Deutsche Bank shall have no further obligations under the terms of the 2005 Indenture.  Notwithstanding such termination, Deutsche Bank shall retain its rights under the 2005 Indenture including, without limitation, the right to indemnification for any loss, liability or expense in connection with the performance of its duties under the 2005 Indenture and the right to receive reimbursement of any expenses that it has incurred, or may incur in the future, in relation to the performance of its duties as indenture trustee, its right to payment of its fees as indenture trustee and its right to charge distributions

that the holders of notes issued pursuant to the 2005 indenture may receive on account of their notes, including distributions under this Plan.

Notwithstanding any other provision of this Plan or the Restructured Notes to be received by the holders of notes issued pursuant to the 2005 Indenture to the contrary, any distributions to which the holders of notes issued pursuant to the 2005 Indenture may be entitled under this Plan, whether by reason of their Class 2A Claims, any Class 8A deficiency claim or their Restructured Notes, shall be paid in the first instance to Deutsche Bank, which may deduct any fees or expense reimbursements to which it may be entitled under the terms of the 2005 Indenture and remit the balance of such distribution or distributions to the Trust for distribution in accordance with the terms of this Plan and the Restructured Notes.

Deficiency:  In the event that the Net Proceeds of liquidation of the Deutsche Bank ST 2005 Collateral and the Replacement Lien are insufficient to pay the balance of the Restructured Note in full, any remaining balance owed on account of such claim shall be treated as a Class 8A Claim.

Optional Right to Credit Bid:  The holder of a note issued under the 2005 Indenture shall have a onetime option to credit bid an amount equal to or greater than any offer acceptable by the Trustee for any of the Deutsche Bank ST 2005 Collateral provided that the holder of the Note gives written notice of said credit bid to the Trustee within forty-eight (48) hours after notice by the Trustee to the holder of Trustee's acceptance of an offer to purchase the property. Any credit bid must include a cash component to satisfy: 1) the costs of the sale of that property (including any broker's commissions due on account of the sale), (2) the Management Fees allocated to the property for which the credit bid was submitted and (3) any senior lien; provided that, to the extent that any credit bid includes a cash component that is used to satisfy any senior lien, such holder shall receive a Replacement Lien to secure the repayment of such amount.

### Class 2B Secured Claims pursuant to 2008 Indenture.

Amount of Claim:  The Class 2B claim shall. be the value of the Deutsche Bank ST 2008

Collateral determined by agreement between the holders of Class 2B Claims or their designee and the Liquidating Trustee or determined by the Court.

<u>Treatment:</u> The Deutsche Bank ST 2008 Collateral shall be assigned to the Liquidating Trust subject to the Liens and rights securing payment of the Class 2B Claim.

Class 2B shall receive a Restructured Note for the amount of its Allowed Claim secured by the Deutsche Bank ST 2008 Collateral (except for the stock of SAC II). The Class 2B lien shall be subordinated to the lien securing the Exit Facility. Class 2B shall participate in the Replacement Lien to the extent Net Sale Proceeds of the Deutsche Bank ST 2008 Collateral are paid to the Exit Facility Lender.

The Restructured Note shall be paid from the Net Proceeds of the Class 2B Collateral and the assets secured by the Replacement Lien. All remaining principal and interest shall be paid at maturity.

<u>Replacement Security For SAC II Stock:</u> The Class 2B Restructured Note shall also be secured by a lien on all real and personal property of SAC II as of the Petition Date (the SAC II Stock Replacement Lien), which lien shall be subordinate to existing liens and to the lien securing the Exit Facility.

<u>Termination of 2008 Indenture:</u> Upon the Effective Date the 2008 Indenture shall be terminated. Following such termination, Deutsche Bank shall have no further obligations under the terms of the 2008 Indenture. Notwithstanding such termination, Deutsche Bank shall retain its rights under the 2008 Indenture including, without limitation, the right to indemnification for any loss, liability or expense in connection with the performance of its duties under the 2008 Indenture and the right to receive reimbursement of any expenses that it has incurred, or may incur in the future, in relation to the performance of its duties as indenture trustee, its right to payment of its fees as indenture trustee and its right to charge distributions that the holders of notes issued pursuant to the 2008 indenture may receive on account of their notes, including distributions under this Plan.

Notwithstanding any other provision of this Plan or the Restructured Notes to be

received by the holders of notes issued pursuant to the 2008 Indenture to the contrary, any distributions to which the holders of notes issued pursuant to the 2008 Indenture may be entitled under this Plan, whether by reason of their Class 2B Claims, any Class 8A deficiency claim or their Restructured Notes, shall be paid in the first instance to Deutsche Bank, which may deduct any fees or expense reimbursements to which it may be entitled under the terms of the 2008 Indenture and remit the balance of such distribution or distributions to the Trust for distribution in accordance with the terms of this Plan and the Restructured Notes.

<u>Deficiency</u>:  In the event that the Net Proceeds of liquidation of the Deutsche Bank ST 2008 Collateral and the Replacement Lien are insufficient to pay the Restructured Note in full, any remaining balance owed on account of such Restructured Note shall be treated as a Class 8A Claim.

<u>Optional Right to Credit Bid</u>:  The holder of Class 2B Note shall have a onetime option to credit bid an amount equal to or greater than any offer acceptable by the Trustee for any of the Deutsche Bank ST 2008 Collateral provided that the holder of the Note gives written notice of said credit bid to the Trustee within forty-eight (48) hours after notice by the Trustee to the holder of Trustee's acceptance of an offer to purchase the property. Any credit bid must include a cash component to satisfy: 1) the costs of the sale of that property (including any broker's commissions due on account of the sale), (2) the Management Fees allocated to the property for which the credit bid was submitted and (3) any senior lien; provided that, to the extent that any credit bid includes a cash component that is used to satisfy any senior lien, such holder shall receive a Replacement Lien to secure the repayment of such amount.

### 3. Class 3 (Secured Tax Claims)

This class includes the following Allowed Secured Claims asserted against the applicable Debtor on the chart below.

| Plan Subclass | Debtor against which Claim is Asserted Claim Amount |
|---|---|
| 3A | ST |

|  | San Joaquin County, CA | $3,745.44 |
|---|---|---|
| 3B | ST | |
|  | Orange County, CA | $8,286.11 |
| 3C | SAC II | |
|  | Pinal County, AZ claim | $8,286.11 |

Impairment:    Impaired

Voting Rights:  Class 3 is entitled to vote on the Plan.

Treatment:    Holders of Allowed Class 3A and 3B Claims will retain their liens on their Collateral. On the Effective Date, at the election of the Proponent, each Class 3 Claimant's Collateral will either be abandoned or transferred to the Liquidating Trust. The Proponent will file a Notice of Abandonment as to each Class 3 Creditor whose collateral will be abandoned on or before the Exhibit Filing Date.

Abandonment of Collateral to any Class 3 Creditor shall be in full satisfaction of the Class 3 Creditor's claim.

In the event any Class 3 Collateral is transferred to the Liquidating Trust, Class 3 Creditor shall receive a Non-Recourse Restructured Note for the amount of its Allowed Claim secured by its Class 3 Collateral. The Class 3 lien shall be subordinated to the lien securing the Exit Facility. Class 3 shall participate in the Replacement Lien to the extent Net Sale Proceeds of the Class 3 Collateral are paid to the Exit Facility Lender.

The Non-Recourse Restructured Note shall be paid from the Net Proceeds of the Class 3 Collateral and the Replacement Lien.

Optional Right to Credit Bid:  The holder of the Class 3 Claim shall have a onetime option to credit bid an amount equal to or greater than any offer acceptable by the Trustee for property securing their Claim, provided that the holder of the Claim gives written notice of said credit

bid to the Trustee within forty-eight (48) hours after notice by the Trustee to the holder of Trustee's acceptance of an offer to purchase the property. Any credit bid must include a cash component to satisfy: 1) the costs of the sale of that property (including any broker's commissions due on account of the sale), (2) the Management Fees allocated to the property for which the credit bid was submitted and (3) any senior lien; provided that, to the extent that any credit bid includes a cash component that is used to satisfy any senior lien, such holder shall receive a Replacement Lien to secure the repayment of such amount.

### 4.    Class 4 (ST SAC II Secured Claims)
#### a.  Coolidge 140 Secured Claim

Classification:  Class 4A consists of the Allowed Secured Claims held on the Effective Date by ST against SAC II on account of the Coolidge Note.

Impairment:    Eliminated by consolidation:  Deemed to reject

Voting Rights:  Class 4A is not entitled to vote on the Plan.

Treatment:    On the Effective Date, SAC II as the holder of the collateral securing the Class 4A Claim, will assign to the Liquidating Trust, as its successor in interest, all of its rights in and to the collateral securing payment of the Coolidge 140 Note and any guarantees securing or related to the Coolidge 140 Note. The Liquidating Trustee will issue a replacement secured note and deed of trust, and assign any guarantees, to the holder of a secured claim (US Bank or Deutsche Bank) in the Coolidge 140 Note pursuant to the Plan.

#### b.    Williams Canyon Secured Claim

Classification:  Class 4B consists of the Allowed Secured Claim held by ST against SAC II on account of the Williams Canyon Note.

Impairment:    Eliminated by consolidation.  Deemed to reject

Voting Rights:  Class 4B is not entitled to vote on the Plan.

Treatment:    On the Effective Date, SAC II as the holder of the collateral securing the Class 4B Claim, will assign to the Liquidating Trust, as its successor in interest, all of its rights in and to the collateral securing payment of the Williams Canyon Note and any guarantees

securing or related to the Williams Canyon Note. The Liquidating Trustee will issue a replacement secured note and deed of trust, and assign any guarantees, to the holder of a secured claim (US Bank or Deutsche Bank) in the Williams Canyon Note pursuant to the Plan.

### 5. Class 5 (ST Secured Claims against SAQ)

Classification:  Class 5A Cotton Lane Secured Claim consists of the Allowed Secured Claim held by ST against SAQ on account of the Cotton Lane Note in the principal amount of $2,743,125.00 payable to ST secured by the "Cotton Lane" real property.

Class 5B Consolidated Phase 4 Note consists of the Allowed Secured claim held by ST against SAQ on account of the Consolidated Phase 4 Note in the principal amount of $1,819,331.42 secured by the "Consolidated Phase 4 real property.

(Collectively, the "Class 5 Collateral").

Impairment:  Eliminated by consolidation. Deemed to reject.

Voting Rights: ST, as the holder of the Class 5 claims, is not entitled to vote on the Plan.

Treatment:  On the Effective Date, SAQ as the holder of the collateral securing the Class 5 Claims, will assign to the Liquidating Trust, as its successor in interest, all of its rights in and to the collateral securing payment of the Cotton Lane Note and the Consolidated Phase 4 Note any guarantees securing or related to the Cotton Lane Note and the Consolidated Phase 4 Note. The Liquidating Trustee will issue a replacement secured note and deed of trust, and assign any guarantees, to the holder of a secured claim (US Bank or Deutsche Bank) in the Cotton Lane Note and the Consolidated Phase 4 Note pursuant to the Plan.

### 6. Class 6 (Wasatch County JSSD SAC II Secured Claim)

Classification: Class 6 consists of the Wasatch County JSSD disputed Claim on the Jordanelle Property of SAC II.

Impairment:  Unimpaired.

Voting Rights: Class 6 is not entitled to vote on the Plan.

Treatment:  The holder of the Class 6 Claim will retain the rights and liens of its Allowed Claim with respect to the property securing the Class 6 Claim.

The Trust retains the property and Jordanelle will retain its claim, subject to the Trustee's right to dispute such claim.

7.    **Class 7 (Ryland Homes SAC II Secured Claim)**

Classification:  Class 7 consists of Ryland Homes' disputed secured claim against property owned by SAC II.

Impairment:  Unimpaired

Voting Rights:  Class 7 is deemed to accept the Plan.

Treatment:  On the Effective Date, the collateral securing the Class 7 Claim will be assigned to the Liquidating Trust subject to the Class 7 Secured Claim.  If the holder of Class 7 Secured Claim obtains an allowed Claim, the Class 7 Claimant will retain its lien and will receive, at the election of the Liquidating Trustee, (1) payment in full, or (ii) the right to exercise its non-bankruptcy law remedies with respect to its collateral.

8.    **Class 8 (General Unsecured Claims Excluding Classes 9 and 10)**

Classification:  Class 8 (and each subclass of Class 8) consists of General Unsecured Claims asserted against the applicable Debtor on the chart below.

| Plan Subclass | Debtor against which Claim is Asserted Claim Holders/Amounts |
|---|---|
| 8A Impaired | **ST**<br>See Exhibit "A"<br>Class 8A claims also include any deficiency claims of Classes 1 and 2 and Class 9 Claims to the extent they are determined not to be subordinated to some or all of the Class 8A Allowed clams. |
| 8B Impaired<br>Paid in cash in full without interest on Effective Date1* | **SAQ**<br>Tholl Fence/                                    $330.00 |

---

[1] *US Bank Claims against ST, SAC II, and SAC D-1 are contingent based upon guarantees given by these Debtors with respect to US Bank's loan to Specialty Trust, Inc.  The US Bank guaranty claims are treated in Class 11..

| 8C Impaired                                                          | SAC II | |
| ------------------------------------------------------------------- | ------ | ------ |
| Paid in cash in full without interest on Effective Date*            | Ballard Spahr/ | $13,107.36 |
|                                                                     | NAI Horizon Valuation/ | $4,753.54 |
|                                                                     | Samuels, Green & Steel LLP/ | $3,600.00 |
|                                                                     | Scythe & Spade of AZ LLC/ | $5,000.00 |
|                                                                     | Southwest Groundwater Consulting/ | $5,454.29 |
| 8D Unimpaired                                                        | **SAC D-1** | |
|                                                                     | None | |

Impairment:    Impaired

Voting Rights:   Classes 8A – 8D are entitled to vote on the Plan.

Treatment:     Holders of Allowed Claims in Class 8A will each receive a negotiable trust certificate for their Pro Rata share of the distributions of unencumbered assets from Liquidating Trust After the Exit Facility, the holders of Secured Claims and the Replacement Lien, all asset management fees and other costs and expenses incurred by the Liquidating Trust have been paid in full.

Allowed Claims in Class 8A shall bear interest at the federal judgment rate or such other rate as is necessary to comply with section 1129 of the Bankruptcy Code.

Holders of Allowed claims in Classes 8B and 8C will receive a payment of cash for the full amount of their Allowed Claims, without interest, on the Effective Date.

9. **Class 9 (Subordinated Claims against Specialty Trust (BONY))**

Classification: Class 9 consists of the claims of holders of the unsecured notes of ST in the principal face amount of $29,064,444.45 issued pursuant to the Indenture appointing The Bank of New York Mellon ("BONY") as Indenture Trustee and as more fully identified in Proof of Claim No. 33.

Impairment:  Impaired

Voting Rights:  Class 9 is entitled to vote on the plan.

<u>Treatment</u>:    Unless the Bankruptcy Court rules to the contrary, after notice and opportunity for hearing, the holders of Allowed Claims in Class 9 will each receive a negotiable trust certificate for their Pro Rata share of the distributions from the Liquidating Trust together with the holders of Class 8A Claims.  Unless the Court orders to the contrary, any distribution to which the holders of Class 9 Claims may be entitled  shall be paid to the DB Noteholders until the DB Noteholders have received payment in full on account of their claims, after which, the holders of Class 9 claims shall receive distributions from the Trust Pro Rata with the holders of Class 8A claims.

Holders of Class 9 Allowed Claims or holders of Class 8 Claims other than the DB Noteholders  may file a motion seeking to modify the provisions of the Plan with respect to this subordination provision on or before the 30th day following the Effective Date. If no such motion is timely filed, the provisions of this Plan will become effective.

Allowed Claims in Class 9 shall bear interest at the federal judgment rate or such other rate as is necessary to comply with section 1129 of the Bankruptcy Code.

### 10.    <u>Class 10 (Allowed Interests)</u>

<u>Classification</u>:  Class 10  consists of Interests asserted against the applicable Debtor on the chart below:

| Plan Subclass | Debtor against which Interest is Asserted |
|---|---|
| 10A | Specialty Trust, Inc. |
| 10B | Specialty Acquisition Corp. |
| 10C | SAC II |
| 10D | SAC D-1 |

a.    Class 10A Specialty Trust, Inc.

Impairment:    Impaired

Voting Rights: Class 10A is entitled to vote on the Plan.

Treatment:    Holders of Interests in Class 10A (ST Shareholders), will receive negotiable trust certificates representing the reversionary interest in the Liquidating Trust that will be in the same amount as the number of shares of common stock they held in ST. The certificates will be negotiable, but will be entitled to distributions from the Liquidating Trust only after all creditors have been paid in full in accordance with this Plan.

b.    Class 10B Specialty Acquisition Corp.("SAQ")

Impairment:    Impaired. Deemed to reject.

Voting Rights: Class 10B is not entitled to vote on the Plan.

Treatment:    ST, as the holder of 100 % of the Interests in SAQ, will cancel all of the stock of SAQ on the Effective Date and cause all of the SAQ assets, including Causes of Action, to be transferred to the Liquidating Trust.

c.    Class 10C SAC II

Impairment:    Impaired. Deemed to Reject.

Voting Rights: Class10C is not entitled to vote on the Plan.

Treatment:    ST, as the holder of 100 % of the Interests in SAQ II, will cancel all of the stock of SAC II on the Effective Date and cause all of the SAC II assets, including Causes of Action, to be transferred to the Liquidating Trust subject to existing and restructured Allowed Claims of Classes 1B and 2B.

d.    Class 10D SAC D-1 LLC

Impairment:    Impaired. Deemed to Reject.

Voting Rights: Class 10D is not entitled to vote on the Plan.

Treatment:  The Issued and outstanding interests in SAC D-1 LLC will be cancelled on the Effective Date and Debtors shall cause all of the assets of SAC D-1 LLC , including Causes of Action, to be transferred to the Liquidating Trust.

**11.    Class 11. Allowed claims of City National (In the event the Waterfront LLC property is transferred to one of the Debtors).**

Impairment.  Impaired.

Voting Rights.  Class 11 is entitled to vote on the Plan.

Treatment:  The Holder of an Allowed Class 11 Claim will retain its lien on the City National Bank collateral and will receive, in full and final satisfaction of its Allowed Class 11 Secured Claim the City National Bank Restructured Note, which shall bear the following terms:

1.    A restructured promissory note in the principal amount of its Allowed Class 11 Secured Claims on the Effective Date.

2.    Interest:  The interest rate will be 4.25% per annum, or such other rate of interest as is necessary to comply with section 1129(b) of the Bankruptcy Code, with interest to accrue.

3.    Amortization:  None

4.    Maturity Date:  Three (3) years from the Effective Date

**12.  Class 12 (US Bank Unsecured Guaranty Claims Against SAQ, SAC II and SAC D-1)**

Classification:  Class 12 consists of the US Bank's Guaranty Claims against SAQ, SAC II and SAC D-1. Class 12 Claims are contingent and unliquidated.

Impairment:  Impaired

Voting Rights:  Disputed

Treatment:  Class 12 Claims shall be disallowed as a consequence of the consolidation of the assets of SAQ, SAC II and SAC D-1 into the Liquidating Trust.

**13.    Class 13 (Intercompany Claims)**

Classification:    Class 13   consists of Intercompany Unsecured Claims asserted against the applicable Debtor on the chart below:

| Class 13A | Claims Against ST |
|-----------|-------------------|

| | None |
|---|---|
| Class 13B | Claims Against SAQ.<br>ST $2,518,063.71 Oak Creek<br>ST $3,148,937.25 5th & Lincoln<br>ST $3,953,281.71 JFP 1330 |
| Class 13C | Claims Against SAC II<br>ST $873,305.77 |
| Class 13D | Claims Against SAC D-1<br>None |

Impairment:    Unimpaired.

Impairment:  Intercompany claims are eliminated by consolidation.  Impaired

Voting Rights:  Class 13 is Deemed to reject the Plan.

Treatment:    The Class 13 intercompany claims will be eliminated as a consequence of the consolidation of all Debtors' assets in the Liquidating Trust. To the extent the claims are secured by liens on Liquidating Trust Assets the claims will be preserved for the benefit of the holders of the Allowed Secured Claims relating to those liens.  Holders of Allowed Class 13 Claims will transfer to the Liquidating Trust all of the legal, equitable and contractual rights to which their claims entitle them.

**B.    Treatment of Executory Contracts and Unexpired Leases**

**1.    Assumption of Executory Contracts and Unexpired Leases**

**a.    Assumption of Agreements**

On the Effective Date, the Debtors shall assume all executory contracts and unexpired leases of the Debtors listed on the Schedule of Assumed Agreements as of the date of the

Confirmation Hearing. Any executory contracts that are to be assumed or assigned after the date of the Confirmation Hearing and prior to the Effective Date will be the subject of a separate motion to be heard by the Court between the date of the Confirmation Hearing and the Effective Date.

The Committee reserves the right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date to: (a) delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (b) add any executory contract or unexpired lease and provide for its assumption under the Plan. The Committee will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to any agreement affected by the amendment.

The Confirmation Order will constitute a Court order approving the assumption, on the Effective Date, of all executory contracts and unexpired leases identified on the Schedule of Assumed Agreements.

        **b.**    **Cure Claims**

Exhibit E to the Plan contains a list of proposed amounts of Cure Claims for all contracts or leases scheduled to be assumed. The Debtors or the Liquidating Trust shall pay Allowed Cure Claims on or before ten days following the Effective Date, or on such other terms as the parties to each such executory contract or unexpired lease may otherwise agree. In the event of a dispute regarding (a) the amount of any Cure Claim, (b) the ability of the Liquidating Trust or any other assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, if applicable, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(l) of the Bankruptcy Code shall be made promptly when an order resolving the dispute and approving the assumption becomes a Final Order. Pending a Final Order resolving such a dispute, the applicable lease or contract shall be neither assumed nor rejected, and the Liquidating Trust may, no later than ten days following a Final Order resolving such dispute, elect to reject the lease or

contract subject to the dispute.

### c.    Objections to Assumption

Any entity who is a party to an executory contract or unexpired lease that will be assumed under the Committee's Plan and that objects to such assumption or the amount of the proposed Cure Claim must File with the Court and serve upon interested parties a written statement and supporting declaration stating the basis for its objection. This statement and declaration must be Filed and served by no later than ten days prior to the Confirmation Hearing. Any entity that fails to timely File and serve such a statement and declaration will be deemed to waive any and all objections to the proposed assumption of its contract or lease and the amount of the proposed Cure Claim. In the absence of a timely objection by an entity who is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination as to the amount of any cure and compensation due under the executory contract or unexpired lease, and that the Liquidating Trust have demonstrated adequate assurance of future performance with respect to such executory contract or unexpired lease. If the Committee amends Exhibit E, then any entity that is a party to an executory contract or unexpired lease that is affected by the amendment shall have fourteen (14) days from the giving of notice of any such amendment to object to the amendment.

### d.    Resolution of Claims Relating to Assumed Agreements

In accordance with the procedures set forth in Section III.A.2 of Committee's Plan relating to the payment of the Cure Claims with respect to executory contracts or unexpired leases that will be assumed under the Committee's Plan, payment of the Cure Claim shall be deemed to satisfy, in full, any pre-petition or post-petition arrearage or other Claim asserted in a filed proof of Claim or listed in the Schedules, irrespective of whether the amount of the Cure Claim is less than the amount set forth in such proof of Claim or the Schedules. Upon the tendering of the payment of the Cure Claim, any such Claim with respect to such agreement shall be Disallowed, without further order of the Court or action by any party.

### 2.    Rejection of Executory Contracts and Unexpired Leases

#### a.    Rejected Agreements

On the Effective Date, the Debtors will reject all executory contracts and unexpired leases set forth on the Schedule of Rejected Agreements as well as all executory contracts and unexpired leases that are not set forth on the Schedule of Assumed Agreements or on the Schedule of Rejected Agreements.   The Confirmation Order will constitute a Court order approving the rejection, on the Effective Date, of the executory contracts and unexpired leases not previously assumed or deferred under the Committee's Plan.

#### b.    Bar Date for Rejection Damage Claims

Any Rejection Damage Claim or other Claim for damages arising from the rejection of an executory contract or unexpired lease under the Committee's Plan must be Filed and served upon the Liquidating Trustee and their counsel of record within thirty days after the mailing of notice of the occurrence of the Effective Date.   Any such Claims that are not timely filed and served will be forever barred and unenforceable against the Debtors, the Liquidating Trust, the Estates, and their respective properties, and any persons or entities holding such  claims or claiming to have such claims, will be barred from receiving any distributions under the Committee's Plan on account of such untimely claims.

### 3.    Post-Petition Contracts and Leases

Except as expressly provided in the Committee's Plan or the Confirmation Order, all contracts, leases, and other agreements that the Debtors entered into after the Petition Date will be retained by the Liquidating Trust.

## C.    <u>Means of Execution and Implementation of Committee's Plan</u>

### 1.    Funding of the Plan

Obligations required to be satisfied in cash under the Committee's Plan on and after the

Effective Date will be satisfied from the Liquidating Trust's cash on hand, the lease or sale of assets, revenues, and the proceeds of the Exit Facility, substantially on the key terms and conditions described below. Court approval will not be necessary for the Liquidating Trust to sell any of their assets. However, sales of assets must be approved by a vote of 60% of the board of Advisors, which will consist of five (5) members representing the five major classes of creditors and interest holders described above.

      a.    **Exit Facility**

The Committee is soliciting term sheets for the Exit Facility. Term sheets will be filed and served upon parties requesting copies by May 20, 2011. The Committee is seeking financing that is better than the Northlight Exit Facility under the Debtor's Plan. **If the Committee cannot obtain a commitment for an acceptable Exit Facility by May 20 the Committee will withdraw its plan.**

Under the Exit Facility, up to $28 million of new senior secured indebtedness will be incurred to pay off US Bank's Claims at a discount, as well as the DIP Lender's interests in the DIP Facility, with the balance to be used by the Liquidating Trust in connection with the operations under the Plan for the following purposes (i) pay professional expenses as they relates to the Cases; (ii) fund $300,000 into a segregated account for the pursuit of the Causes of Action; (iii) pay for operating expenses during the liquidation of the portfolio; (iv) pay for carrying costs associated with REO property in the portfolio; (v) if required, fund an interest reserve account and operating reserve account; (vi) pay for such other working capital needs of the Liquidating Trust as may be approved from time to time; and (vii) pay for other costs and expenses associated with the closing of the Exit Facility. The Committee is seeking an Exit Facility with a five (5) year term; however, the term may be adjusted at the Committee's discretion.

If the Committee is unable to obtain financing for the US Bank payoff, US Bank will receive the treatment described in Option 2 above.

**Termination of Corporate Existence and Vesting of Assets in Liquidating Trust**

On and after the Effective Date, each of the Debtors will assign their assets to the Liquidating Trust free and clear of all Claims, liens, charges, other encumbrances and Interests except as provided by the Committee Plan. The transfer will be a tax free transfer pursuant to Bankruptcy Code Section 1146(a).

### b.    Appointment of Liquidating Trustee; Advisory Board

From and after the Effective Date, the Liquidating Trust assets shall be managed by the Liquidating Trustee subject to the oversight of the Advisory Board as described below. In managing and administering the Liquidating Trust, subject to the supervisory authority of the Advisory Board, shall have full power and authority to execute the provisions of this Plan, and to execute instruments and take other action in the name and on behalf of the Liquidating Trust. The Debtors are authorized and directed, without requirement of corporate action, to take all actions necessary to effectuate the transfer.

The Advisory Board shall consist of one representative of each of the following classes: (1) Class 1 (if the Committee elects Option 2); (2) Class 2; (3) Class 8A; (4) Class 9 and (5) Class 10A (ST Interests). If the Committee selects Option 1, the representatives of Classes 2, 8A, 9 and 10A shall select the remaining board member. The Board Members shall be compensated $10,000.00 per year.

Sale of Liquidating Trust Assets shall be subject to approval by 60% of the Advisory Board. The settlement or abandonment of Causes of Action shall be subject to approval of 75% of the Advisory Board. The initial Liquidating Trustee shall be appointed by classes entitled to representation on the Advisory Board and identified to the Court at the Confirmation Hearing. If the parties are unable to agree on a Liquidating Trustee the candidates shall be presented to and selected by the Court at the Confirmation Hearing.

Further provisions regarding the governance and management of the Liquidating Trust will be set forth in the Liquidating Trust Agreement, Plan Exhibit "C".

### c.    Powers and Duties of the Liquidating Trustee

The Liquidating Trustee shall make distributions to creditors consistent with the Committee's Plan and otherwise hold and liquidate all assets and property of the Liquidating Trust in accordance with the provisions of the Committee's Plan. The Liquidating Trust and the Advisory Board shall not be required to post a bond in favor of the United States.

The Liquidating Trustee shall have the power and authority to perform the following acts, in addition to any powers granted by law or conferred by any other provision of the Plan and orders of the Bankruptcy Court; provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Trustee, subject to the authority of the Advisory Board, to act as specifically authorized by any other provision of the Committee's Plan or orders of the Bankruptcy Court to discharge all obligations assumed by the Liquidating Trustee and to conserve and protect the assets of the Estates, including without limitation and by example only:

The Liquidating Trust shall have the following rights, powers and duties:

a.    To hold all of the Liquidating Trust Assets and shall have full right, power and discretion to collect on obligations represented by outstanding loans taken into the Trust, and to manage such properties and to execute, acknowledge and deliver any and all instruments as may be appropriate or necessary, as determined by the Liquidating Trustee in his or her discretion;

b.    To make interim and final distributions of the Liquidating Trust Assets to the holders of beneficial interests in the Liquidating Trust pursuant to the terms of the Plan;

c.    To file objections to General Unsecured Claims;

d.    To administer the collection, prosecution, settlement, assignment, conveyance or abandonment of the Causes of Action and Avoidance Actions;

e.    To file all tax and regulatory forms, returns, reports and other documents required with respect to the Liquidating Trust;

f.    To file suit or any appropriate motion for relief in the Court or in any other court of competent jurisdiction to resolve any claim, disagreement, conflict or ambiguity in

connection with the exercise of its rights, powers or duties; and

        g.      To borrow such funds as the Liquidating Trust Agreement permits.

In connection with the above, the Liquidating Trust and the Liquidating Trustee shall, as of and after the Effective Date, be a representative of the Estates pursuant to Bankruptcy Code section 1123, appointed for the purposes of, among other things, pursuing the Causes of Action. In furtherance of that objective, the Liquidating Trustee shall have the rights of a trustee under Bankruptcy Code section 1106 as it relates to the Causes of Action. The Liquidating Trust shall have the full power and authority, either in its name or in any of the Debtors' names, to commence, if not already commenced, prosecute, settle, assign, convey and abandon any action related to collection of sums due on loans taken into the Trust and on the Causes of Action and Avoidance Actions, subject to the approval rights of the Board of Advisors set forth in the Liquidating Trust Agreement. The Liquidating Trust shall be authorized to retain professionals without Court approval (which may include existing professionals retained by the Committee, and which need not be "disinterested"). The reasonable professional fees (including any contingency fees), expenses, and costs of such professionals are to be paid out of the assets of the Liquidating Trust.

The Liquidating Trust may retain one or more firms to assist in the collection of sums owed on outstanding loans taken into the Trust, and to prosecute all Causes of Action held by the Liquidating Trust and all Avoidance Actions, subject to the discretion of the Liquidating Trust's Board of Advisors and the Liquidating Trustee.

        **d.**      **Management of Debtors' Mortgage Loan and Real Property Portfolio**

The Liquidating Trustee will enter into one or more asset management and servicing agreements. The Exit Facility Lender may, at its discretion, select the asset manager to manage assets other than the Causes of Action. However, decisions regarding sale of Liquidating Trust Assets must be approved by 60% of the Board of Advisors. Forms of the proposed agreements may be filed with the court and served on parties requesting them on or before May 20.

# Exhibit 6

# Exhibit 6

| Plan Comparisons and Summaries |
| :---: |
| **THIS SUMMARY OMITS IMPORTANT DETAILS IN THE PLANS AND SHOULD BE READ IN CONNECTION THEREWITH** |

| | **Debtor Plan** | **Committee Plan** |
| --- | --- | --- |
| **A .Post- Confirmation entities** | Specialty Trust will be a C-corporation<br><br>Other Debtors retain current status | All assets transferred to Liquidating Trust<br><br>Board of Advisors representing creditors and shareholders |
| **B.  Decision making** | Plan Representative reporting to Supervisory Board. | Trustee with approval of Board of Advisors on asset sales and litigation settlement |
| **C.  Financing** | Northlight Financing of $28 million if Deutsche Bank Noteholders accept Plan, and $27 million if Deutsche Bank Noteholders reject Plan.<br><br>Commitment Fee of 2% and Extension Fee of 1%.<br><br>Interest at 18%, and incentive fees ranging from 40-55% if Deutsche Bank Noteholders accept the plan, and 90% if  Deutsche Bank Noteholders reject Plan. | $12 million plus amount to pay US Bank if possible<br><br>Fees undetermined<br><br>Interest  rate undetermined<br><br>**The Committee will withdraw its plan if it cannot obtain financing less expensive than the Northlight Financing** |
| **D.  Asset management** | Northlight Asset Management will perform both asset management and servicing, but may use Specialty Mortgage Corporation for certain loans where Specialty Trust is only a participant | Exit Lender may select asset manager.<br><br> Candidates to be identified  by May 20<br><br>Trustee with 60% board approval for asset sales. |
| **E.  Litigation management** | Plan Representative | Trustee with 75% board vote to abandon/settle Causes of Action |
| **F.  Treatment of classes** | | |
| **F. 1.  Class 1 US Bank Secured** | | |
| 1A Specialty Trust<br><br>Secured Loan of approximately $30 Million | $16.5 million payoff | Option 1:$16.5 million payoff or (at Committee discretion) |

1

80662-002\DOCS_LA:236637.3

1157075.3

| | | Option 2: |
|---|---|---|
| | | ●Collateral assigned to Liquidating Trust |
| | | ● Restructured Note for Allowed Class 1A Claim secured by current collateral and Replacement Lien |
| | | ● Lien subordinated to Exit Facility; Replacement Lien for Net Proceeds paid to Exit Lender |
| | | ● 5 year term |
| | | ● US Bank Prime fixed as of Effective Date plus 2% pik |
| | | ●P&I payable from Net Sale Proceeds |
| | | ●Balance at maturity |
| | | ● Conditional right to credit bid |
| **1B SAC II Secured Loan**<br><br>Guaranty of loan to Specialty Trust secured by SAC II real estate/notes payable to Specialty Trust | Satisfied by $16.5 Payoff | Collateral assigned to Liquidating Trust<br><br>Disputed: if allowed paid on same terms as Class 1A |
| **F.2. Class 2 Deutsche Bank Secured** | | |
| **2A 2005 indenture**<br><br>Debtors assert that the collateral securing Class 2A is worthless. If that is the case there will be no claims in this class | Will be entitled to exercise all of their legal rights to foreclose on their collateral. | ●Collateral assigned to Liquidating Trust<br><br>●Restructured Note for Allowed Class 2A Claim<br><br>●secured by current collateral and Replacement Lien<br><br>● lien subordinated to Exit Facility; Replacement Lien for Net Proceeds paid to Exit Lender<br><br>●5 year term<br><br>●US Bank Prime fixed as of Effective Date plus 2% pik<br><br>●P&I payable from Net Sale |

2

| | | |
|---|---|---|
| | | Proceeds<br>● Balance at maturity<br>● Conditional right to credit bid<br>●Indenture is terminated |
| 2B  2008 Indenture | If such holders reject the Plan, will be entitled to exercise all legal rights to pursue their collateral.<br><br>If such holders accept the Plan, will receive treatment pursuant to the Northlight Exit Facility as set forth in more detail in the projections to the Disclosure Statement. | ●Collateral assigned to Liquidating Trust<br><br>●Restructured Note for Allowed Class 2B Claim<br><br>●secured by current collateral and Replacement Lien;<br><br>● Lien subordinated to Exit Facility. Replacement Lien for Net Proceeds paid to Exit Lender<br><br>●5 year term<br><br>●US Bank Prime fixed as of Effective Date plus 2% pik<br><br>●P&I payable from Net Proceeds; balance at maturity<br><br>● Conditional right to credit bid<br><br>●Indenture is terminated |
| **F.3.  Class 3 secured tax** | | |
| 3A ST San Joaquin Cy | Will receive, at election of Debtors, payment in full on the later of the Effective Date, or the date on which their claim becomes an Allowed Claim, or the right to exercise the remedies with respect to their collateral. | Collateral abandoned or assigned to Liquidating Trust.  If Trust accepts, claimants receive Non Recourse Restructured Note for amount of Allowed Claim; 5 year term, payable from Net Proceeds; lien subordinated to Exit Facility. Replacement Lien for amounts paid to Exit Lender.<br><br>One time conditioned option to credit bid |
| 3B ST Orange Cy | Will receive, at election of Debtors, payment in full on the later of the Effective Date, or the date on which their claim becomes an Allowed Claim, or the right to exercise the remedies with respect to their collateral. | Same as 3A |

3

| 3C SAC II Pinal Cy | Will receive, at election of Debtors, payment in full on the later of the Effective Date, or the date on which their claim becomes an Allowed Claim, or the right to exercise the remedies with respect to their collateral. | Same as 3A |
|---|---|---|
| **F.4. Class 4 ST secured claims vs. SAC II** | Unimpaired | Impaired deemed to reject |
| **F.5. Class 5 ST Secured claims vs. SAQ** | Unimpaired | Impaired deemed to reject |
| **F.6. Class 6 Jordanelle** | Unimpaired | Unimpaired |
| **F.7. Class 7 Ryland Homes** | Claimant will retain its lien and will receive (1) payment in full, or (ii) the right to exercise its non-bankruptcy law remedies with respect to its collateral. | Collateral assigned to Liquidating Trust subject to the Class 7 Secured Claim.<br><br>Claimant will retain its lien and will receive, at the election of the Liquidating Trustee, (1) payment in full, or (ii) the right to exercise its non-bankruptcy law remedies with respect to its collateral. |
| **F.8. Class 8 General Unsecured** | | |
| 8A ST general unsecured claims includes anticipated significant deficiency claims of creditors including the Class 2 Noteholders after the collateral securing the claims is liquidated. | Payment of Pro Rata share of assets of Specialty Trust after payment of senior (secured) claims, including and pursuant to Northlight Exit Facility. Interest at federal judgment rate. **Claims may not be paid in full.** | Negotiable Trust Certificate for Pro Rata share of the distributions from Liquidating Trust after payment of senior (secured) claims and costs and fees of Trust. Interest at federal judgment rate. **Claims may not be paid in full.** |
| 8B SAQ | Payment of cash for the full amount of their Allowed Claims, without interest, on the Effective Date. | Payment of cash for the full amount of Allowed Claims, without interest, on the Effective Date. |
| 8C SAC II | Payment of cash for the full amount of their Allowed Claims, without interest, on the Effective Date. | Payment of cash for the full amount of Allowed Claims, without interest, on the Effective Date. |
| 8D SACD-1 | None | None |
| **F.9. Class 9 BONY Subordinated claims**<br><br>**These claims are contractually** | The same treatment as Claimants in Class 8A, except distributions subject to subordination provisions set forth in | Same treatment as Class 8A except with respect to DB Noteholder subordination rights |

4

| subordinated to the Class 2 Claims and the Class 8A deficiency claims of the Class 2 Noteholders. | the Unsecured Noteholders Indenture. | |
|---|---|---|
| **F.10.  Class 10 Interests** | | |
| 10A ST | Equity interests will be cancelled but Interest Holders will receive, pro rata in accordance with the number of Allowed Interests held by each Interest Holder, all funds remaining after the holders of all Allowed Claims against Specialty Trust have been paid in full, and after the Northlight Exit Facility has been repaid in full. | Negotiable Trust certificates representing the reversionary interest in the Liquidating Trust. |
| 10B SAQ | Unimpaired | Cancelled |
| 10 SAC II | Unimpaired | Cancelled |
| 10D SAC D-1 | Unimpaired | Cancelled |
| **F.11.  Class 11 US Bank Unsecured Guaranty Claims** | | Disallowed by virtue of consolidation or satisfied by discounted payoff |
| **F.12.  Class  12 Intercompany Claims** | | Disallowed by consolidation except to extent necessary to preserve liens pledged to third parties. |
| **F.13.  Class 13 City National Secured** | Specialty Trust will be taking a deed in lieu for its promissory note and second deed of trust.<br><br>Class 11 Claimant will receive a Restructured Promissory Note bearing interest at 4.25% per annum, and will mature 3 years from the Effective Date. | Collateral assigned to Liquidating Trust<br><br>Restructured Note secured by collateral securing Allowed Claim with a 3 year term<br><br>Interest 4.25% per annum<br><br>All principal and interest due earliest of 3 years from Effective Date or when collateral is sold. |
| **G. Estimated Recovery Using "Base Case" projections which may or may not be achieved** | | |
| Exit lender | | Paid in full in 2015 with 18% interest |
| US Bank | $16.5 | Option 1: $16.5 Million (56.3%) |

5

|  | Recovery 56.3% | Option 2:   paid in full with approx 5 1/4% interest over five years |
|---|---|---|
| Class 2B<br>New Secured Noteholders | $2,850,561 (estimated) if Class accepts Plan. | $10,123,825 estimated recovery |
| Remainder available to pay all other classes of claims | 16.2% without reference to any subordination if DB New Secured Noteholders accept Plan; with subordination of Class 9 the unsecured deficiency claims of the Deutsche Bank Noteholders will receive approximately 30% of their claims.<br><br>If DB new Secured Noteholders reject the plan, they will receive 2.3% without regard to subordination, and 4.4% with subordination of Class 9. | 29.4% without reference to any subordination if DB New Secured Noteholders accept Plan; with subordination of Class 9 the unsecured deficiency claims of Deutsche Bank Noteholders will receive approximately 74% of their claims. |
| Subordinated | See Above re Classes 8 and 9 |  |
| Shareholders | 0 |  |
| **H. Effective Date** | No less than 30 days from Confirmation Date | No less than 30 days from Confirmation Date |

80662-002\DOCS_LA:236637.3

1157075.3