# Exhibit 1

# Exhibit 1

IRA D. KHARASCH (CA Bar No. 109084)
VICTORIA A. NEWMARK (CA Bar No. 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Boulevard, 11th Floor
Los Angeles, California 90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760
Email: ikharasch@pszjlaw.com
          vnewmark@pszjlaw.com

SALLIE B. ARMSTRONG (NV Bar No. 1243)
MICHELLE N. KAZMAR (NV Bar No. 10098)
DOWNEY BRAND LLP
427 West Plumb Lane
Reno, Nevada 89509
Telephone: 775/329-5900
Facsimile: 775/786-5443
Email: reno@downeybrand.com

*Attorneys for Debtors and
Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Chapter 11 |
| SPECIALTY TRUST, INC., et al.[1] | **Jointly Administered under Case No. 10-51432-GWZ** |
| ☐ Affects this Debtor | Case Nos.: |
| ☒ Affects all Debtors | 10-51432 |
| ☐ Affects Specialty Acquisition Corp. | 10-51437 |
| ☐ Affects SAC II | 10-51440 |
| ☐ Affects SAC D-1, LLC | 10-51441 |
| | ~~FIRST~~SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY THE DEBTORS (DATED ~~APRIL 27,~~JUNE 2, 2011) |
| | Hearing Date: June 3, 2011 Hearing Time: 2:00 p.m. |

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are: Specialty Trust, Inc. (2463); Specialty Acquisition Corp. (3680); SAC II (2463); and SAC D-1, LLC (1858).

# **TABLE OF CONTENTS**

**Page**

I. DEFINITIONS AND RULES OF CONSTRUCTION ................................................ 1
   A.   Definitions ............................................................................................ 1
   B.   Rules of Construction. .................................................................... ~~10~~11
II. DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS ....... ~~11~~12
   A.   Summary and Classification of Claims and Interests. ......................... ~~11~~12
   B.   Allowance and Treatment of Unclassified Claims (Administrative Claims and Priority Tax Claims). ......................................................................................... 12
      1.   Administrative Claims. ................................................................ 12
      2.   Priority Tax Claims. ............................................................... ~~14~~15
   C.   Classification and Treatment of Classified Claims and Interests. ............. 15
      1.   Class 1 US Bank Allowed Secured Claims .................................. 15
      2.   Class 2 Secured Noteholder Secured Claims (Deutsche Bank) ........ 16
      3.   Class 3 Secured Tax Claims .................................................. ~~19~~20
      4.   Class 4 ST Secured Claims Against SAC II ................................ 20
      5.   Class 5 ST Secured Claims Against SAC .................................. ~~20~~21
      6.   Class 6 JSSD SAC II Secured Claim ........................................ 21
      7.   Class 7 Ryland Homes SAC II Secured Claim .......................... ~~21~~22
      8.   Class 8 General Unsecured Claims. ........................................ ~~21~~22
      9.   Class 9 Subordinated Claims against Specialty Trust (BONY) ........ ~~23~~24
      10.   Class 10 (Interests). ................................................................ 24
      11.   Class 11 City National Allowed ST Secured Claim ...................... 25
III. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............. ~~25~~26
   A.   Assumption of Executory Contracts and Unexpired Leases ................ ~~25~~26
      1.   Assumption of Agreements. .................................................. ~~25~~26
      2.   Cure Claims. ....................................................................... ~~26~~27
      3.   Objections to Assumption. .................................................. ~~26~~27
      4.   Resolution of Claims Relating to Assumed Agreements ............... ~~27~~28
   B.   Rejection of Executory Contracts and Unexpired Leases ................... ~~27~~28
      1.   Rejected Agreements. ............................................................ ~~27~~28
      2.   Bar Date for Rejection Damage Claims. .................................. ~~28~~29
   C.   Post-Petition Contracts and Leases. .................................................. ~~28~~29
IV. MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN .......................... ~~28~~29
   A.   Funding of the Plan. ~~28;~~ Sales and Loan Modifications. 29
      1.   Northlight Exit Facility. ........................................................ ~~28~~29
   B.   Continued Corporate Existence and Vesting of Assets in Reorganized Debtors .............. ~~30~~31
   C.   Management of the Reorganized Debtors. ........................................ ~~30~~31
      1.   Appointment of Plan Representative; Supervisory Board. ............ ~~30~~31
      2.   Powers and Duties of the Reorganized Debtors. ........................ ~~30~~31
      3.   Management of the Debtors' Mortgage Loan and Real Property Portfolio ............... ~~32~~33
   D.   Objections to Claims or Interests. .................................................. ~~32~~33
   E.   Distribution of Property Under the Plan. ........................................ ~~32~~33
      1.   Manner of Payments Under the Plan. ....................................... ~~33~~34
      2.   No De Minimis Distributions. ................................................ ~~33~~34
      3.   No Distribution With Respect to Disputed Claims. ..................... ~~33~~34
      4.   Delivery of Distributions and Undeliverable/Unclaimed Distributions. ......... ~~34~~35
      5.   Estimation of Disputed Claims or Interest for Distribution Purposes. ......... ~~35~~36
      6.   Cancellation of Unsecured Notes and Unsecured Noteholders Indenture .......... ~~35~~36
   F.   Full Satisfaction. .......................................................................... ~~35~~36
   G.   Compliance with Tax Requirements. .............................................. ~~36~~37
   H.   Setoff, Recoupment and Other Rights. ........................................... ~~36~~37
   I.   Conditions to Effectiveness. ......................................................... ~~36~~37

J.      Authorization of Entity Action. ................................................................. 3738

V. OTHER PLAN PROVISIONS .................................................................................... 3738
A.      Exculpation:  No Liability for Solicitation or Prosecution of Confirmation. .............. 3738
B.      Revocation of Plan/No Admissions. ........................................................... 3839
C.      Modifications of the Plan. ........................................................................ 3839
D.      Dissolution of Committee. ....................................................................... 3839
E.      Exemption from Certain Transfer Taxes. .................................................... 3839
F.      Successors and Assigns. .......................................................................... 3940
G.      Saturday, Sunday or Legal Holiday. .......................................................... 3940
H.      Headings. .............................................................................................. 3940
I.      Governing Law. ..................................................................................... 3940
J.      Form of Agreements and Documents. ......................................................... 3940

VI. EFFECT OF CONFIRMATION OF THE PLAN ....................................................... 4041
A.      Discharge and Injunction. ....................................................................... 4041
B.      Payment of U.S. Trustee Fees. ................................................................. 4142
C.      Retention of Jurisdiction. ........................................................................ 4142

VII. RECOMMENDATION AND CONCLUSION ........................................................... 4445

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

ii

# LIST OF EXHIBITS

| EXHIBIT NO. | DESCRIPTION |
| --- | --- |
| A | Northlight Exit Facility Term Sheet |
| B | Release Price Supplement to Northlight Exit Facility Term Sheet (Redacted) |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

This Plan of Reorganization is proposed by Specialty Trust, Inc. and its jointly-administered chapter 11 affiliates, the debtors and debtors in possession in the above-captioned chapter 11 cases ("Proponents"):

# I.

## DEFINITIONS AND RULES OF CONSTRUCTION

**A.**　**Definitions.**

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

"Administrative Claim" means a Claim for administrative costs or expenses under Bankruptcy Code section 503.

"Allowed Claim" means:

(a)　with respect to a Claim arising prior to the Petition Date :

(i)　Either:  (1) a proof of Claim was timely filed; or (2) a proof of Claim is deemed timely filed either under Bankruptcy Rule 3003(b)(1)-(2) or by a Final Order; and

(ii)　Either:  (1) the Claim is not a Disputed Claim; or (2) the Claim is allowed by a Final Order or under the Plan; and

(b)　with respect to a Claim arising on or after the Petition Date, a Claim that has been allowed pursuant to Section II.B of the Plan.

Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date.  Moreover, any portion of a Claim that is satisfied, released or waived during the Cases is not an Allowed Claim.

"Allowed Interest" means:

(a)　Either (a) a proof of Interest was timely filed; or (2) a proof of Interest is deemed timely filed either under Bankruptcy Rule 3003(b) or by Final Order; and

(b)　Either (a) the Interest is neither a Disputed Interest nor a Disallowed Interest, or (2) the Interest is allowed either by a Final Order or Under the Plan.

"Associated Released Parties" means, with respect to a specified entity, its officers, directors, agents, employees, advisors and professionals acting in their capacity as such,

1

1   representatives, shareholders, partners, parents, affiliates, members, managers, predecessors and

2   successors, past and present; provided, however, that Associated Released Parties excludes any

3   entity identified in Section IX.D.c. of the Disclosure Statement or any supplement thereto.

4   "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as

5   the same may be amended from time to time to the extent applicable to the Cases.

6   "Bankruptcy Rules" means, collectively, (a) the Federal Rules of Bankruptcy Procedure and

7   (b) the local rules of the Court, as applicable in the Cases.

8   "BONY" means The Bank of New York Mellon.

9   "Business Day" means a day that is not a Saturday, Sunday, or legal holiday.

10   "Cases" means the Debtors' cases under chapter 11 of the Bankruptcy Code.

11   "Causes of Action" means all causes of action which are Property of the Estate as of the

12   Effective Date including any actions that arise pursuant to sections 544-553 of the Bankruptcy

13   Code, and any actions against present or former officers, directors, agents and/or representatives of

14   the Debtors under applicable law.

15   "City National Bank" means City National Bank, a National Banking Association, which

16   has a first priority security interest in certain undeveloped real estate located along the bank of the

17   Truckee River in Reno, Nevada.

18   "City National Bank Restructured Note" means the secured promissory note to be issued by

19   Reorganized ST to City National Bank, and that will be attached to the Plan Supplement prior to the

20   voting deadline.

21   "Claim" means a claim against one or more of the Debtors or one or more of the Debtors'

22   property, as defined by Bankruptcy Code section 101(5).

23   "Class" means a class of Claims or Interests as classified in Section II.C.

24   "Committee" means the Official Committee of Equity Security Holders

25   "Confirmation Date" means the date of entry of the Confirmation Order.

26   "Confirmation Hearing" shall mean the date that will be set by the Bankruptcy Court for the

27   hearing on the confirmation of the Plan.

28   "Confirmation Order" means an order of the Court confirming the Plan .

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   "Consolidated Phase 4 Note" means that certain promissory note in the face amount of

2   $3,645,000 issued by SAC to ST and secured by a deed of trust on the Consolidated Phase 4

3   Property.

4   "Consolidated Phase 4 Property" means that certain real property consisting of 54 partially

5   improved residential lots located in Sparks, Nevada that is owned by SAC.

6   "Coolidge 140 Note" means that certain promissory note in the face amount of $2,113,650

7   issued by SAC II to ST and secured by a deed of trust on the Coolidge 140 Property.

8   "Coolidge 140 Property" means that certain real property consisting of 140 acres of farm

9   land located in Coolidge, Arizona that is owned by SAC II.

10   "Cotton Lane Note" means that certain promissory note in the face amount of $2,625,000

11   issued by SAC to ST and secured by a deed of trust on the Cotton Lane Property.

12   "Cotton Lane Property" means that certain real property located in Goodyear, Arizona that is

13   owned by SAC.

14   "Court" means the United States Bankruptcy Court for the District of Nevada, Northern

15   Division, or any other court that exercises jurisdiction over the Cases.

16   "Creditor" means "creditor" as defined in section 101(10) of the Bankruptcy Code.

17   "CRO" shall mean Grant Lyon, or any successor appointed by the Court, in his capacity as

18   Chief Restructuring Officer.

19   "Cure Claims" means the right to payment of cash or the distribution of other property (as

20   the parties may agree or the Court may order), as necessary to cure defaults under an executory

21   contract or unexpired lease of the Debtors, or as otherwise required by Bankruptcy Code section

22   365(b) as a condition of assumption, so that the Reorganized Debtors may assume the contract or

23   lease pursuant to Bankruptcy Code section 1123(b)(2).

24   "Debtors" means, collectively, (i) Specialty Trust, Inc., a Maryland corporation REIT, (ii)

25   Specialty Acquisition Corp., a Delaware corporation, (iii) SAC II, a Nevada limited liability

26   company and (iv) SAC D-1, LLC, an Arizona limited liability company.

27   "Deutsche Bank" means Deutsche Bank National Trust Company.

28   "DIP Facility" means that certain debtor-in-possession financing facility, or facilities, by and

3

1    between the DIP Lender and certain of the Debtors, as approved by the Court pursuant to that

2    certain order dated December 15, 2010 and as amended from time to time.

3    "DIP Facility Documents" means the financing documents with respect to the DIP Facility.

4    "DIP Lender" means the lender under the DIP Facility.

5    "Disallowed" or "Disallowed Claim" or "Disallowed Interest" means a Claim or Interest, or

6    any portion thereof, that:    (a) is not listed on the Debtors' Schedules, or is listed therein as

7    contingent, unliquidated, disputed, or in an amount equal to zero, and whose holder has failed to

8    timely file a proof of Claim or proof of Interest; or (b) has been disallowed pursuant to order of the

9    Court.

10    "Discharged Liabilities" has the meaning ascribed to it in Section VII.A of the Plan.

11    "Disclosure Statement" means the disclosure statement to accompany the Plan, as it

12    subsequently may be modified or amended, and all exhibits thereto.

13    "Disputed Claim" of "Disputed Interest" means (i) with respect to a Claim arising before the

14    Petition Date (including a 503(b)(9) Claim) or an Interest, a Claim or Interest, or any portion

15    thereof, as to which a proof of Claim or proof of Interest has been filed or is deemed filed under

16    Bankruptcy Rule 3003(b), and an objection or complaint with respect to such Claim or Interest (a)

17    has been timely filed; and (b) has not been overruled or adjudicated against the objector by the

18    Court pursuant to a Final Order or withdrawn, and (ii) with respect to an Administrative Claim, a

19    Claim as to which a party in interest has objected within, if applicable, the time fixed for making

20    such objection.

21    "Effective Date" means the first Business Day (a) that is at least fourteen days after the

22    Confirmation Date; (b) on which no stay of the Confirmation Order is in effect; and (c) on which

23    the conditions set forth in Section IV.I have been satisfied or waived by the Debtors and Northlight.

24    "Estates" means the estates created in the Cases under 11 U.S.C. § 541.

25    "Exhibit Filing Date" means the last Business Day that is at least ~~seven days~~one day prior to

26    the ~~last date for timely objecting to the confirmation of the Plan~~Confirmation Hearing.

27    "Filed" means duly and properly filed with the Court and reflected on the Court's official

28    docket.  "File," "Files," and "Filing" are all conjugations of Filed.

4

80662-002\DOCS_LA:~~238951.1~~238951.6

Side margin: PACHULSKI STANG ZIEHL & JONES LLP / ATTORNEYS AT LAW / LOS ANGELES, CALIFORNIA

1    "Final Order" means an order or judgment of the Court entered on the Court's official

2    docket, or an order or judgment made in accordance with Article VI hereof by a court of competent

3    jurisdiction:

4        (a)    that has not been reversed, rescinded, stayed, modified, or amended;

5        (b)    that is in full force and effect; and

6        (c)    with respect to which: (1) the time to appeal or to seek review, remand, rehearing, or

7    a writ of certiorari has expired and as to which no timely-filed appeal or petition for review,

8    rehearing, remand, or writ of certiorari is pending; or (2) any such appeal or petition has been

9    withdrawn, dismissed or resolved by the highest court to which the order or judgment was timely

10    appealed or from which review, rehearing, remand, or a writ of certiorari was timely sought.

11        Notwithstanding the foregoing, the possibility that a motion under Rule 59 or Rule 60 of the

12    Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed

13    with respect to any such order shall not prevent such order from being a "Final Order."

14        "General Unsecured Claim" means a Claim that is not secured by a lien on property of the

15    Estates or subject to a right of setoff pursuant to section 553 of the Bankruptcy Code and that is not

16    an Administrative Claim, a Priority Claim, or a Priority Tax Claim.

17        "Guaranty Claim" means an unsecured Claim against a Debtor, for which another Debtor is

18    the primary obligor.

19        "Impair" or "Impaired" means, when used in reference to a Class of Claims or Interests, a

20    Class that that is impaired within the meaning of section 1124 of the Bankruptcy Code.

21        "Indemnification Obligation" means any executory obligation of any of the Debtors to

22    indemnify, reimburse, or provide contribution to any present or former officer, director, or

23    employee, or any persons or former professionals, advisors, or representatives of the Debtors,

24    pursuant to the by-laws, articles of incorporation, contract, or otherwise as may be in existence

25    immediately prior to the Petition Date, but do not include any obligations relating to the post-

26    petition employment of professionals in these Cases.

27        "Intercompany Claims" means all Claims (whether arising from contract, tort or otherwise)

28    held by any of the Debtors against any other Debtor, whether or not a proof of Claim is filed or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    deemed filed pursuant to Bankruptcy Code section 501 in any of the Cases.

2        "Interest" means the interest, whether or not asserted, of any holder of an equity security of

3    the Debtors, as defined in Bankruptcy Code section 101(17), and includes all membership interests

4    and other ownership interests in the Debtors, options, warrants and other instruments or right to

5    participate in the profits of the Debtors or their operations, and rights to acquire or receive any of

6    the foregoing interests.

7        "IRS" means the Internal Revenue Service of the United States of America.

8        "Jordanelle Property" means that certain real property located in Park City, Utah that is

9    owned by SAC II.

10        "JSSD" means the Jordanelle Special Service District of Wasatch County, Utah.

11        "Net Cash Proceeds" means the cash or other proceeds (including a promissory note)

12    received by a Debtor from the sale or other disposition of an asset, minus realtor commissions, legal

13    fees and any other closing costs.

14        "New Secured Noteholder Collateral" means all of the real and personal property and other

15    interests securing payment of the New Secured Notes.

16        "New Secured Noteholder Indenture" means that certain Second Amended and Restated

17    Indenture Dated as of March 1, 2009 Related to Specialty Trust, Inc. Secured Investment Notes.

18        "New Secured Noteholders" means the holders of the New Secured Notes.

19        "New Secured Notes" means the secured investment notes under the New Deutsche Bank

20    Indenture.

21        "Non-Ordinary Course Administrative Claim" means any Administrative Claim, other than

22    Ordinary Course Administrative Claims, 503(b)(9) Claims, Professional Fee Claims, Cure Claims,

23    or U.S. Trustee Fees.

24        "Northlight" means Northlight Real Estate Group LLC or any other affiliates that participate

25    in the Northlight Exit Facility.

26        "Northlight Asset Management and Servicing Agreement" is the agreement between the

27    Reorganized Debtors and Northlight Asset Management LLC or an affiliate thereof to provide asset

28    management services for the Reorganized Debtors' real estate and mortgage loan portfolio

6

1    substantially in the form attached to the Plan Supplement as Exhibit B.

2        "Northlight Exit Facility" means the secured credit facility designed to permit the

3    Reorganized Debtors to satisfy their Plan obligations on and after the Effective Date substantially in

4    the form attached to the Plan Supplement as Exhibit A.

5        "Northlight Exit Facility Term Sheet" means the term sheet summarizing the Northlight Exit

6    Facility, attached to the Plan as Exhibit A.

7        "Old Secured Noteholder Collateral" means all of the real and personal property and other

8    interests securing payment of the Old Secured Noteholders' Allowed Secured Claims.

9        "Old Secured Noteholder Indenture" means that certain Amended and Restated Indenture

10   Dated as of August 1, 2006 Related to Specialty Trust, Inc. Collateralized Investment Notes.

11       "Old Secured Noteholders" means the holders of the Old Secured Notes.

12       "Old Secured Notes" means the secured investment notes under the Old Deutsche Bank

13   Indenture.

14       "Ordinary Course Administrative Claims" means Administrative Claims based upon

15   liabilities that the Debtors incur in the ordinary course of their business for goods and services and

16   that are unpaid as of the Effective Date, as well as claims of Governmental Units as defined in the

17   Bankruptcy Code.  Ordinary Course Administrative Claims do not include Professional Fee Claims,

18   503(b)(9) Claims, Cure Claims, U.S. Trustee Fees, tort claims, or other non-contractual claims upon

19   which civil liability may be based that arose after the Petition Date but prior to the Effective Date.

20       "Petition Date" means April 20, 2010.

21       "Plan" means this "Chapter 11 Plan of Liquidation Proposed by the Debtors (Dated March

22   25, 2011)," as it subsequently may be modified or amended.

23       "Plan Bid Procedures" means the procedures that the Debtors anticipate will be approved by

24   the Bankruptcy Court pursuant to a separate motion that will provide Northlight bid protection as

25   the stalking horse provider of the financing proposed under the Plan, including a break-up fee, and

26   that will govern the process by which other entities may submit higher and better bids prior to the

27   Confirmation Hearing than the Northlight proposal as delineated in the Northlight Exit Facility and

28   the Northlight Asset Management and Servicing Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

7

1    "Plan Representative" means the individual selected to fill this role in accordance with

2    Section IV.C of the Plan.

3    "Plan Supplement" means the compilation of documents and forms of documents,

4    schedules, and exhibits to the Plan to be filed concurrently with the Plan, and may be amended,

5    supplemented, or modified from time to time.

6    "Priority Claim" means an Allowed Claim entitled to priority against any Estate under

7    Bankruptcy Code sections 507(a)(4), 507(a)(5), or 507(a)(7).

8    "Priority Tax Claim" means an Allowed Claim entitled to priority against one or more of the

9    Estates under Bankruptcy Code section 507(a)(8), and excludes any Claims for taxes attributable to

10    the period after the Petition Date.

11    "Pro Rata" means proportionately so that the ratio of (a) the amount of consideration

12    distributed on account of a particular Allowed Claim to (b) the Allowed Claim, is the same as the

13    ratio of (x) the amount of consideration available for distribution on account of Allowed Claims in

14    the Class or Classes which share in the relevant consideration distributed to (y) the amount of all

15    Allowed Claims of the Class or Classes that will share in the relevant consideration distributed.

16    "Professional Fee Claim" means a Claim under Bankruptcy Code sections 327, 328, 330,

17    331, 503, or 1103 for compensation for professional services rendered or expenses incurred during

18    the pendency of the Cases for which one or more of the Estates is liable for payment (but excluding

19    any Substantial Contribution Claim and any Claim of the Unsecured Noteholders Indenture Trustee

20    for its fees and costs).

21    "Rejection Damage Claim" means a Claim arising under Bankruptcy Code section 365 from

22    the rejection by any of the Debtors of a lease or contract.

23    "Reorganized Debtors" means ST, SAC II, SAC, and SAC D-1 following the Effective

24    Date.

25    "Ryland Homes" means Ryland Homes of California, Inc.

26    "SAC" means Specialty Acquisition Corp., a Delaware corporation, one of the above-

27    captioned debtors and debtors in possession.

28    "SAC II" means SAC II, a Nevada limited liability company, one of the above-captioned

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

8

1    debtors and debtors in possession.

2         "SAC D-1" means SAC D-1, LLC an Arizona limited liability company, one of the above-

3    captioned debtors and debtors in possession.

4         "Schedule of Assumed Agreements" means the schedule of executory contracts and

5    unexpired leases that the Debtors will assume on the Effective Date, together with proposed amount

6    of Cure Claims. A substantially final form of the Schedule of Assumed Agreements is set forth in

7    Exhibit C to the Plan Supplement. Any revisions or amendments thereto shall be filed by the

8    Exhibit Filing Date.

9         "Schedule of Rejected Agreements" means the schedule of executory contracts and

10   unexpired leases that the Debtors will reject on the Effective Date. A substantially final form of the

11   Schedule of Rejected Agreements is set forth in Exhibit D to the Plan Supplement. Any revisions or

12   amendments thereto shall be filed by the Exhibit Filing Date.

13        "Schedules" means the Schedules of Assets and Liabilities Filed by the Debtors, as such

14   Schedules may have been, or may subsequently be, amended before the Effective Date.

15        "Secured Claim" means a Claim that is secured by a lien on the property of one or more of

16   the Estates or that is subject to a right of setoff under section 553 of the Bankruptcy Code. A Claim

17   is a Secured Claim only to the extent of the value of the holder of such Claim's interest in the

18   collateral that is property of one or more of the Estates or to the extent of the amount subject to

19   setoff, as applicable, as determined under Bankruptcy Code section 506(a). Any defenses,

20   counterclaims, rights of offset or recoupment of the Debtors or the Estates with respect to such

21   Secured Claim shall vest in and inure to the benefit of the Reorganized Debtors.

22        "Shareholder" means the holder of an equity security in ST.

23        "Specialty Financial Management Agreement" means that certain management agreement

24   between Specialty Trust and Specialty Financial Corp.

25        "Specialty Mortgage Servicing Agreement" means the Master Loan Participation and

26   Servicing Agreement by and between Specialty Trust, Inc. and Specialty Mortgage Corp.

27        "ST" means Specialty Trust, Inc., a Maryland corporation REIT, one of the above-captioned

28   debtors and debtors in possession.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

9

1    "Substantial Contribution Claim" means any Allowed Administrative Claim in recognition

2    of a substantial contribution in connection with the Cases and the Plan pursuant to section

3    503(b)(3)(D) of the Bankruptcy Code.

4    "Supervisory Board" means the individuals selected to fill this role in accordance with

5    Section IV.C of the Plan.

6    "Taberna Entities" means Taberna Preferred Funding, Ltd. VII and Taberna Preferred

7    Funding, Ltd. VIII.

8    "Unimpair" or "Unimpaired" means, with respect a Class of Claims or Interests, that the

9    Class is not Impaired.  An Unimpaired Class is not entitled to vote on the Plan.

10    "Unsecured Noteholders" means the holders of unsecured notes issued by ST pursuant to the

11    Unsecured Noteholders Indenture.

12    "Unsecured Noteholders Claim" means the Allowed General Unsecured Claim held by the

13    Unsecured Noteholders arising from or relating to the Unsecured Noteholders Indenture in the

14    amount of $29,064,444.45.

15    "Unsecured Noteholders Indenture" means the Junior Subordinated Indenture between

16    Specialty Trust, Inc. and The Bank of New York Mellon as Trustee Dated as of May 1, 2009.

17    "Unsecured Noteholders Indenture Trustee" means BONY, as trustee under the Unsecured

18    Noteholders Indenture.

19    "US Bank" means U.S. Bank National Association.

20    "US Bank SAC II Collateral" means all of the real and personal property of SAC II that

21    secures a US Bank Allowed Secured Claim.

22    "US Bank SAC Collateral" means all of the personal property of SAC that secures a US

23    Bank Secured Claim.

24    "US Bank ST Collateral" means all of the real and personal property of ST that secures a US

25    Bank Allowed Secured Claim.

26    "U.S. Trustee" means the Office of the United States Trustee for the District of Nevada.

27    "U.S. Trustee Fees" means fees or charges assessed by the U.S. Trustee against the Estates

28    pursuant to 28 U.S.C. § 1930.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10

"Williams Canyon Note" means that certain promissory note in the face amount of $841,050 issued by SAC II to ST and secured by a deed of trust on the Williams Canyon Property.

"Williams Canyon Property" means that certain 28.09 acres of real property located in Silverado, California that is owned by SAC II.

**B.    Rules of Construction.**

1.    The rules of construction in Bankruptcy Code section 102 apply to the Plan to the extent not inconsistent herewith.

2.    Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3.    A term that is used in the Plan and that is not defined in the Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

4.    The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement.

5.    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

6.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms. No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially adversely affected.

7.    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.    Unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a portion of the Plan.

9.    Unless otherwise specified, all references to Sections or Exhibits are references to the Plan's Sections or Exhibits.

10.    The words "herein," "hereto," "hereunder," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion hereof.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11

## II.

## DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS

A.    **Summary and Classification of Claims and Interests.**

This Section classifies Claims and Interests — except for Administrative Claims and Priority Tax Claims, which are not classified — for all purposes, including voting, confirmation, and distribution under the Plan. A Claim or Interest is classified in a Class only to the extent that the Claim or Interest falls within the Class description. To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class. For example, in the event that a Creditor has collateral securing its Claim that is worth less than the amount owed to the Creditor, the Creditor's Claim would be classified in a secured creditor class to the extent of the value of that Creditor's collateral and an unsecured Claim to the extent of any deficiency between the amount of the Creditor's claim and the value of the collateral securing the Claims.

NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.

The treatment in the Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any liens) that each entity holding an Allowed Claim or an Interest may have in or against the Debtors, the Estates, or their respective property. This treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtors, the Estates, or their respective property. All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

B.    **Allowance and Treatment of Unclassified Claims (Administrative Claims and Priority Tax Claims).**

1.    **Administrative Claims.**

a.    **Allowance of Administrative Claims.**

Allowance of Ordinary Course Administrative Claims: An entity holding an Ordinary

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12

Course Administrative Claim may, but need not, File a motion or request for payment of its Claim. The Debtors or the Reorganized Debtors or any other party in interest may File an objection to an Ordinary Course Administrative Claim in their discretion.    Unless an objection is filed to an Ordinary Course Administrative Claim, such Claim will be an Allowed Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim.

Allowance of Professional Fee Claims:  Unless otherwise expressly provided in the Plan, a Professional Fee Claim will be an Allowed Claim only if, and to the extent that:

(i)    on or before sixty days after the Effective Date, the entity holding such Professional Fee Claim both Files with the Court a final fee application or a motion requesting allowance of the fees and reimbursement of expenses and serves the application or motion on the  Debtors, the Reorganized Debtors, the Plan Representative and the U.S. Trustee; and

(ii)    the Court determines it is an Allowed Claim.

The Debtors, the Reorganized Debtors, the Plan Representative or any other party in interest may File an objection to such application or motion by no later than thirty days after the Filing and service of such application or motion.  Entities holding Professional Fee Claims that do not timely File and serve a fee application or motion for allowance of a Professional Fee Claim will be forever barred from asserting those Claims against the Debtors, the Reorganized Debtors, the Estates, or their respective property.

Allowance of Cure Claims:  Cure Claims shall be allowed in accordance with the procedures set forth in Section III.A.2 below.

Allowance of Non-Ordinary Course Administrative Claims:    Unless otherwise expressly provided in the Plan, Non-Ordinary Course Administrative Claims and Substantial Contribution Claims will be Allowed Claims only if:

(i)    unless a different procedure has been approved by the Court prior to the Confirmation Hearing, on or before sixty days after the Effective Date, the entity holding such Non-Ordinary Course Administrative Claim or Substantial Contribution Claims both Files with the Court a motion requesting allowance of the Non-Ordinary Course Administrative Claim or Substantial Contribution Claim and serve the motion on the Reorganized Debtors and the U.S.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

13

1    Trustee; and

2          (ii)     the Court determines it is an Allowed Claim.

3         The Debtors, the Reorganized Debtors, or any other party in interest may File an objection

4    to such motion within thirty days after the expiration of the deadline for the Filing of a

5    Non-Ordinary Course Administrative Claim or Substantial Contribution Claim set forth in

6    subparagraph (i), above (i.e., within ninety days after the Effective Date), unless such time period

7    for Filing such objection is extended by the Court.  Entities holding Non-Ordinary Course

8    Administrative Claims or Substantial Contribution Claims that do not timely File and serve a

9    request for payment will be forever barred from asserting those Claims against the Debtors, the

10   Reorganized Debtors, the Estates, or their respective property.

11             **b.**      **Treatment of Administrative Claims.**

12        <u>Treatment of Allowed Ordinary Course Administrative Claims</u>:  Unless otherwise agreed,

13   Allowed Ordinary Course Administrative Claims will be paid by the Debtors or the Reorganized

14   Debtors in accordance with the terms and conditions of the particular transaction that gave rise to

15   the Allowed Claim.

16        <u>Treatment of any Allowed Substantial Contribution Claim</u>:  Any Allowed Substantial

17   Contribution Claim shall be paid by the Debtors or the Reorganized Debtors the same as if it were a

18   Professional Fee Claim.

19        <u>Treatment of Professional Fee Claims</u>:  Unless otherwise agreed, an Allowed Professional

20   Fee Claim will be paid by the Debtors or the Reorganized Debtors, as applicable, after the Court

21   determines such Claim is an Allowed Claim, and in accordance with the projections attached to the

22   Disclosure Statement.

23        <u>Treatment of Cure Claims</u>:  The Reorganized Debtors will pay the Allowed amounts of Cure

24   Claims to the non-Debtor parties to the executory contracts or unexpired leases.

25        <u>Treatment of U.S. Trustee Fees Under 28 U.S.C. § 1930</u>:  The Debtors will pay to the U.S.

26   Trustee all fees due and owing under 28 U.S.C. § 1930 on the Effective Date.

27        <u>Treatment of Non-Ordinary Course Administrative Claims</u>:  Unless the entity holding a

28   Non-Ordinary Course Administrative Claim Allowed by the Court agrees to different treatment, the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Reorganized Debtors will pay the full amount of such Allowed Non-Ordinary Course

2   Administrative Claim in the same manner as the treatment of the Professional Fee Claims as

3   described above. For their respective Indenture Trustee fees and expenses, the Unsecured

4   Noteholders Indenture Trustee shall be deemed to have an allowed Non-Ordinary Course

5   Administrative Claim for $30,000 and the Deutsche Bank Indenture Trustee shall be deemed to

6   have an allowed Non-Ordinary Course Administrative Claim for $60,000. Said claims are in

7   addition to, and not in lieu of, any claim that any party may have pursuant to Bankruptcy Code

8   section 503(b), which claims, if any, must be sought as provided in Section II(B)(1)(a) of this Plan

9   (Allowance of Non-Ordinary Court Administrative Claims).

10       Treatment of Claims Under the DIP Facility: TheOn the Effective Date, the DIP Lender will

11   receive, in full and final satisfaction of the Debtors' obligations under the DIP Facility cash in full

12   the amount of its claims unless the DIP Lender agrees to a different treatment.

13       **2.      Priority Tax Claims.**

14       The Priority Tax Claims include (i) an IRS Claim against ST of $177,560.37 and (ii) an IRS

15   Claim against SAC of $5,000.00.

16       Unless otherwise agreed, the Reorganized Debtors will pay to an entity holding an Allowed

17   Priority Tax Claim the full amount of the Allowed Priority Tax Claim, plus interest calculated at the

18   federal judgment rate, in equal, amortized, annual installments beginning on the first anniversary of

19   the Petition Date that falls on a date following the occurrence of the Effective Date and, thereafter,

20   on each anniversary of the Petition Date through the fifth anniversary of the Petition Date. The

21   Debtors and Reorganized Debtors reserve all rights to object to these claims.

22   **C.      Classification and Treatment of Classified Claims and Interests.**

23       **1.      Class 1 US Bank Allowed Secured Claims**

24           **a.      Class 1A US Bank Allowed ST Secured Claim**

25   Classification: Class 1A consists of the US Bank Allowed Secured Claim against ST.

26   Impairment: Impaired

27   Voting Rights: Class 1A is entitled to vote on the Plan.

28

15

1  Treatment:  Holders of an Allowed Class 1 Claim will receive, in full and final satisfaction of their

2  Allowed Class 1 Secured Claims, a discounted payoff amount of $16.5 million within ten days after

3  the Effective Date as a full release of all of its Allowed Claims against the Debtors.

4         **b.    Class 1B US Bank SAC II Secured Claims**

5  Classification:  Class 1B consists of US Bank Allowed Secured Claims against SAC II.

6  Impairment: Impaired

7  Voting Rights:  Class 1B is entitled to vote on the Plan.

8  Treatment:  The Class 1B Claim will be satisfied by reason of the payment to be made on account

9  of the Class 1A Claim.

10         **c.    Class 1C US Bank SAC Secured Claims**

11  Classification:  Class 1C consists of US Bank Allowed Secured Claims against SAC.

12  Impairment: Impaired

13  Voting Rights:  Class 1C is entitled to vote on the Plan.

14  Treatment:  The Class 1C Claim will be satisfied by reason of the payment to be made on account

15  of the Class 1A Claim.

16    **2.    Class 2 Secured Noteholder Secured Claims (Deutsche Bank)**

17         **a.    Class 2A Old Secured ST Noteholder Secured Claims**

18  Classification:  Class 2A consists of the Old Secured Noteholders' Allowed Secured Claims against

19  ST.

20  Impairment: Impaired.

21  Voting Rights:  Class 2A is entitled to vote on the Plan.

22  Treatment:  Holders of Allowed Class 2A Claims will retain liens secured by the Old Secured

23  Noteholder Collateral.  Holders of Class 2A Claims shall be entitled to exercise all of the legal,

24  equitable, and contractual rights pursuant to the terms of the Old Secured Noteholder Indenture and

25  the Old Secured Notes; provided, however, that the Reorganized Debtors may seek a determination

26  by the Court pursuant to Bankruptcy Code section 502(c) estimating the amount of the Old Secured

27  Noteholders' deficiency claim for all purposes, including distributions under the Plan.

28         In the event that the Court determines that the claims held by the Old Secured Noteholders

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16

are wholly unsecured, because there is no equity in the collateral securing those claims, or for any other reason, as of the Effective Date, the Old Secured Noteholder Indenture shall be terminated and the Old Secured Noteholders' Claims shall be treated as Class 8A Claims under the terms of this Plan. Following such termination, Deutsche Bank shall have no further obligations under the terms of the Old Secured Noteholder Indenture. Notwithstanding such termination, Deutsche Bank shall retain its rights under the Old Secured Noteholder Indenture including, without limitation, the right to indemnification for any loss, liability or expense in connection with the performance of its duties under the Old Secured Noteholder Indenture and the right to receive reimbursement of any expenses that has incurred, or may incur in the future, in relation to the performance of its duties as indenture trustee, its right to payment of its fees as indenture trustee and its right to charge distributions that the Old Secured Noteholders may receive on account of the Old Secured Notes, including distributions under this Plan.

Notwithstanding any other provision of this Plan to the contrary, any distributions to which the Old Secured Noteholders may be entitled under this Plan, whether by reason of their Class 2A Claims or by reason of any Class 8A deficiency claim, shall be paid in the first instance to Deutsche Bank, which may deduct any fees or expense reimbursements to which it may be entitled under the terms of the Old Secured Noteholder Indenture and remit the balance of such distribution or distributions to the Reorganized Debtors for distribution in accordance with the terms of this Plan.

In addition to any other distribution to which the holders of Allowed Claims in Class 2A may be entitled, and without regard to the value of any collateral securing the Class 2A Claims, each holder of an Allowed Class 2A Claim shall receive one (1) Class A share in reorganized ST for every $1,000 of Allowed Claim held by that Class 2A Claimant.

### b.    Class 2B New Secured Noteholder ST Secured Claims

Classification:    Class 2B consists of the New Secured Noteholders' Allowed Secured Claims against ST.

Impairment:  Impaired.

Voting Rights:  Class 2B is entitled to vote on the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Treatment:  Holders of Allowed Class 2B Claims will retain liens secured by the New Secured

2    Noteholder Collateral.

3          *Option 1:  Plan Rejection.*  In the event Class 2B rejects the Plan, holders of Class 2B

4    Claims shall be entitled to exercise all of the legal, equitable, and contractual rights pursuant to the

5    terms of the New Secured Noteholder Indenture and the New Secured Notes with respect to the

6    New Secured Noteholder Collateral.

7          *Option 2:  Plan Acceptance.*  In the event Class 2B accepts the Plan, Class 2B will be treated

8    in accordance with the Northlight Exit Facility as described in Article IV.A of the Plan, and the

9    Reorganized Debtors will market and sell the REO properties and mortgage loans that are New

10   Secured Noteholder Collateral or that indirectly secure the New Secured Notes through ST's pledge

11   of its stock in SAC II.  Pursuant to the Northlight Exit Facility, Class 2B's collateral will be

12   subordinated to a first priority senior lien of Northlight in the amount of $4.5 million.  As adequate

13   protection for the subordination of its senior lien, Class 2B shall receive a replacement lien on all of

14   the Reorganized Debtors' assets and the proceeds of those assets; provided that such replacement

15   lien shall be subordinate to the liens granted to Northlight under the Northlight Exit Facility and to

16   the Distribution Participation Payments to which Northlight is entitled under the terms of the

17   Northlight Exit Facility.  Such replacement liens shall be automatically released upon sales of assets

18   in compliance with the Northlight Exit Facility, and will then be transferred to the proceeds of such

19   sales. Class 2B shall receive the Net Cash Proceeds from the sale of its collateral [including

20   property of SAC II that indirectly secures the New Secured Notes by the Reorganized Debtors] after

21   the payment to Northlight of its share of the net liquidation proceeds pursuant to the Incentive

22   Payment Plan as defined in the Northlight Exit Facility Term Sheet.

23          In the event that Class 2B accepts the Plan, as of the Effective Date, the New Secured

24   Noteholder Indenture shall be terminated.  Following such termination, Deutsche Bank shall have

25   no further obligations under the terms of the New Secured Noteholder Indenture.  Notwithstanding

26   such termination, Deutsche Bank shall retain its rights under the New Secured Noteholder

27   Indenture including, without limitation, the right to indemnification for any loss, liability or

28   expense in connection with the performance of its duties under the New Secured Noteholder

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

18

1   Indenture and the right to receive reimbursement of any expenses that has incurred, or may incur in

2   the future, in relation to the performance of its duties as indenture trustee, its right to payment of its

3   fees as indenture trustee and its right to charge distributions that the New Secured Noteholders may

4   receive on account of the New Secured Notes, including distributions under this Plan.

5        Notwithstanding any other provision of this Plan to the contrary, any distributions to which

6   the New Secured Noteholders may be entitled under this Plan, whether by reason of their Class 2B

7   Claims or by reason of any Class 8A deficiency claim, shall be paid in the first instance to

8   Deutsche Bank, which may deduct any fees or expense reimbursements to which it may be entitled

9   under the terms of the New Noteholder Indenture and remit the balance of such distribution or

10  distributions to the Reorganized Debtors for distribution in accordance with the terms of this Plan.

11       Under Option 1 above, the Reorganized Debtors may seek to estimate the Old Secured

12  Noteholders' or New Secured Noteholders' deficiency claims (if any) pursuant to Bankruptcy

13  Code section 502(c) for all purposes, including distributions under the Plan.    Notwithstanding

14  anything contained in this Plan to the contrary, the Unsecured Noteholders shall also have the right

15  to challenge the extent, priority and/or validity of the Old Secured Noteholders Secured Claims

16  and/or the New Secured Noteholders Secured Claims by commencing an adversary proceeding in

17  the Court at any time up to the Effective Date of this Plan.    In the event that such an adversary

18  proceeding is commenced, no distributions of Net Cash Proceeds shall be made to the holders of

19  the Class 2A and Class 2B Claims until either: (a) a written agreement is entered into by and

20  between the holders of the Class 2A and Class 2B Claims, on the one hand, and the Unsecured

21  Noteholders, on the other, resolving the disputes; or (b) a Final Order is entered by the Court

22  determining the nature, extent and validity of the Claims in question.

23       In addition to any other distribution to which the holders of Allowed Claims in Class 2B

24  may be entitled, and without regard to the value of any collateral securing the Class 2B Claims,

25  each holder of an Allowed Class 2B Claim shall receive one (1) Class A share in reorganized ST

26  for every $1,000 of Allowed Claim held by that Class 2B Claimant.    For the avoidance of doubt,

27  the deferral of distributions of Net Cash Proceeds provided for in the preceding paragraph shall not

28  apply to the distribution of Class A shares provided for in this paragraph.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19

### 3. Class 3 Secured Tax Claims

This Class includes the following Secured Claims asserted against the applicable Debtor on the chart below.

| Plan Subclass | Debtor against which Claim is asserted and Claim Amount |
|---|---|
| 3A | ST<br>San Joaquin County, CA $3,745.44 |
| 3B | ST<br>Orange County, CA $~~8,286.11~~11,873.46 |
| 3C | SAC II<br>Pinal County, AZ claim $8,286.11 |

Impairment: Impaired

Voting Rights: Classes 3A, 3B and 3C are entitled to vote on the Plan.

Treatment: Holders of Allowed Class 3A, 3B, and 3C Claims will retain their liens on their collateral and will receive, at the election of the Debtors or the Reorganized Debtors as applicable, (1) payment in cash in full on the later of the Effective Date, or the date on which their claim becomes an Allowed Claim, or (2) the right to exercise their remedies with respect to their collateral.

### 4. Class 4 ST Secured Claims Against SAC II

#### a. Coolidge 140 Secured Claim

Classification: Class 4A consists of the Allowed Secured Claim held by ST against SAC II on account of the Coolidge 140 Note.

Impairment: Unimpaired

Voting Rights: Class 4A is not entitled to vote on the Plan.

Treatment: The holder of the Allowed Class 4A Claim will retain its rights against SAC II in accordance with the original terms of the Coolidge 140 Note, related deed of trust, and any other security interests securing the Coolidge 140 Note.

#### b. Williams Canyon Secured Claim

Classification: Class 4B consists of the Allowed Secured Claim held by ST against SAC II on account of the Williams Canyon Note.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Impairment: Unimpaired

2  Voting Rights: Class 4B is not entitled to vote on the Plan.

3  Treatment: The holder of the Allowed Class 4B Claim will retain its rights against SAC II in

4  accordance with the original terms of the Williams Canyon Note, related deed of trust, and any

5  other security interests securing the Williams Canyon Note.

6       **5.**    **Class 5 ST Secured Claims Against SAC**

7         **a.**    **Cotton Lane Secured Claim**

8  Classification: Class 5A consists of the Allowed Secured Claim held by ST against SAC on

9  account of the Cotton Lane Note.

10  Impairment: Unimpaired

11  Voting Rights: Class 5A is not entitled to vote on the Plan.

12  Treatment: The holder of Allowed Class 5A Claim will retain its rights against SAC in accordance

13  with the original terms of the Cotton Lane Note, related deed of trust and other security interests

14  securing the Cotton Lane Note.

15         **b.**    **Consolidated Phase 4 Secured Claim**

16  Classification: Class 5B consists of the Allowed Secured Claim held by ST against SAC on account

17  of the Consolidated Phase 4 Note.

18  Impairment: Unimpaired

19  Voting Rights: Class 5B is not entitled to vote on the Plan.

20  Treatment: The holder of Allowed Class 5B Claim will retain its rights against SAC in accordance

21  with the original terms of the Consolidated Phase 4 Note, the related deed of trust and other security

22  interests securing the Consolidated Phase 4 Note.

23       **6.**    **Class 6 JSSD SAC II Secured Claim**

24  Classification: Class 6 consists of the JSSD disputed Secured Claim on the Jordanelle Property of

25  SAC II.

26  Impairment: Unimpaired

27  Voting Rights: Class 6 is not entitled to vote on the Plan.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Treatment:   The holder of the Class 6 Claim will retain its rights against SAC II pursuant to

2    applicable law, subject to the rights of the Debtors to dispute such claim.

3         **7.**     **Class 7 Ryland Homes SAC II Secured Claim**

4    Classification:   Class 7 consists of Ryland Homes' disputed secured claim against property owned

5    by SAC II.

6    Impairment:   ~~Impaired~~Unimpaired

7    Voting Rights:   Class 7 is entitled to vote on the Plan.

8    Treatment:   If the holder of the Class 7 Secured Claim ~~obtains~~retains an Allowed Claim, the Class 7

9    Claimant will retain its lien, to the extent that such lien is valid and not avoided, and will receive, at

10   the election of the Reorganized Debtors, (i) payment in full, or (ii) the right to exercise its non-

11   bankruptcy law remedies with respect to its collateral.  The litigation regarding Ryland Homes'

12   claims may proceed in the District Court upon the Effective Date, and the outcome of that litigation

13   will determine the allowance of the Class 7 Claim.  For purposes of clarification, Northlight is not

14   receiving any lien that is senior or equal to liens, if any, held by Ryland Homes, but is receiving a

15   junior lien to the liens, if any, of Ryland Homes.

16        **8.**     **Class 8 General Unsecured Claims**

17   Classification:   Class 8 (and each subclass of Class 8) consists of General Unsecured Claims

18   asserted against the applicable Debtor on the chart below, but excludes the unsecured claims of

19   Class 9.

| Plan Subclass | Debtor against which Claim is Asserted Claim Holders | |
|---|---|---|
| 8A Impaired | **ST** | |
| 8B Impaired | **SAC** | |
| | Non-Contingent Allowed Claims: Tholl Fence/ | $330.00 |
| 8C Impaired* | **SAC II** | |
| | Non-Contingent Allowed Claims: Ballard Spahr/ | $13,107.36 |
| | NAI Horizon Valuation/ | $4,753.54 |
| | Samuels, Green & Steel LLP/ | $3,600.00 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | Scythe & Spade of AZ LLC/ | $5,000.00 |
| | Southwest Groundwater Consulting/ | $5,454.29 |
| 8D Impaired | **SAC D-1** | |
| | Non-Contingent Allowed Claims: None | |

<u>Impairment</u>:  Impaired

<u>Voting Rights</u>:  Classes 8A – 8D are entitled to vote on the Plan.

<u>Treatment</u>:  Holders of Allowed Claims in Class 8A will each receive, along with the Class 9 claimants as set forth below: (i) their Pro Rata Share of Net Proceeds of Causes of Action as set forth in the Northlight Exit Facility Term Sheet; and (2) their Pro Rata share of any assets of Reorganized ST remaining after payment in full of (i) all amounts owing under the Northlight Exit Facility, (ii) Allowed Class 1A, 2B (if Class 2B accepts the Plan) and 3A Secured Claims; and (iii) all asset management fees and other costs incurred by Reorganized ST, subject to the waterfall provisions of the Northlight Exit Facility described in Section IV.A of the Plan.

Allowed Claims in Class 8A shall bear interest from and after the Effective Date at the federal judgment rate or such other rate as is necessary to comply with section 1129 of the Bankruptcy Code.

In addition to any other distribution to which the holders of Allowed Claims in Class 3A may be entitled, each holder of an Allowed Class 8A Claim shall receive one (1) Class A share in reorganized ST for every $1,000 of Allowed Claim held by that Class 8A Claimant.

Holders of Allowed Claims in Classes 8B and 8C with claims under $14,000 will receive a payment of cash for the full amount of their Allowed Claims, without interest, on the Effective Date.  Holders of Allowed Claims in Classes 8B, 8C, and 8D with Claims over $14,000 will each receive their Pro Rata Share of any Net Cash Proceeds of each of their respective estates remaining after payment in full of any Allowed Secured Claims in each of their respective estates, subject to the waterfall provisions of the Northlight Exit Facility described in Section IV.A of the Plan (if applicable).  Holders of Allowed Classes 8B, 8C and 8D claims that hold a guaranty of a secured claim must first look to their collateral for satisfaction of their claims before receiving a distribution as a Class 8 claimant.  The Proponents reserve the right to assert at the confirmation hearing that

1    Class 8B and 8C Claims are Unimpaired.

2         **9.    Class 9 Subordinated Claims against Specialty Trust (BONY)**

3    Classification:  Class 9 consists of the Claims of Unsecured Noteholders.

4    Impairment:  Impaired

5    Voting Rights:  Class 9 is entitled to vote on the plan.

6         Treatment:  Holders of Allowed Claims in Class 9 will receive the same treatment as holders

7    in Class 8A, except that any distribution to Allowed Claims in Class 9 will be subject to the

8    subordination provisions set forth in the Unsecured Noteholders Indenture.  The Debtors believe

9    that pursuant to such subordination provisions in the Unsecured Noteholders Indenture, the Class 9

10   claimants are only subordinated to the Claims of the Deutsche Bank New Secured Noteholders and

11   Old Secured Noteholders (as opposed to being subordinated to other Creditors), and distributions

12   under the Plan will effectuate such subordination.  However, notwithstanding the foregoing, any

13   Creditor can challenge the Debtor's position that the Unsecured Noteholders are only subordinated

14   to the Deutsche Bank Old Secured Noteholders and New Secured Noteholders, or the position that

15   the Unsecured Noteholders are even subordinated to the Deutsche Bank Old Secured Noteholders

16   and New Secured Noteholders, by filing a motion with the Bankruptcy Court within sixty days after

17   the Effective Date.

18        In addition to any other distribution to which the holders of Allowed Claims in Class 9 may

19   be entitled, each holder of an Allowed Class 9 Claim shall receive one (1) Class B share in

20   reorganized ST for every $1,000 of Allowed Claim held by that Class 9 Claimant.

21        **10.    Class 10 (Interests)**

22   Classification:  Class 10 consists of Interests asserted against the applicable Debtor on the chart

23   below:

| Plan Subclass | Debtor against which Interest is asserted |
|---|---|
| 10A | ST |
| 10B | SAC |
| 10C | SAC II |
| 10D | SAC D-1 |

80662-002\DOCS_LA:238951.1238951.6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### a.    Class 10A – ST

<u>Impairment</u>:  Impaired

<u>Voting Rights</u>:  Class 10A is entitled to vote on the Plan.

<u>Treatment</u>:  Upon the Effective Date, the equity interests in ST held by the Holders of Interests in Class 10A (Shareholders) will be cancelled and of no further force of effect.  Notwithstanding the cancellation of their Interests in ST, the holders of Allowed Interests in Class 10A shall receive, pro rata in accordance with the number of Allowed Interests held by each Interest holder, all funds remaining after the holders of all Allowed Claims against ST have been paid in full, and after the Northlight Exit Facility and all costs of Debtors' liquidation have been repaid in full, in accordance with the Plan.

### b.    Class 10B – SAC

<u>Impairment</u>:  Unimpaired

<u>Voting Rights</u>:  Class 10B is not entitled to vote on the Plan.

<u>Treatment</u>:  ST, as the holder of 100 % of the Interests in SAC, will retain its Interests in the stock of SAC.

### c.    Class 10C – SAC II

<u>Impairment</u>:  Unimpaired

<u>Voting Rights</u>:  Class 10C is not entitled to vote on the Plan.

<u>Treatment</u>:  ST, as the holder of Interests in SAC II, will retain its Interests in SAC II.

### d.    Class 10D – SAC D-1 LLC

<u>Impairment</u>:  Impaired

<u>Voting Rights</u>:  Class 10D is not entitled to vote on the Plan.

<u>Treatment</u>:  SAC, as the holder of Interests in SAC D-1, will retain its Interests in SAC D-1.

### 11.    <u>Class 11 City National Allowed ST Secured Claim</u>

<u>Classification</u>:  Class 11 consists of the City National Bank Allowed Secured Claim against ST.

<u>Impairment</u>:  Impaired

<u>Voting Rights</u>:  Class 11 is entitled to vote on the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Treatment: The Holder of an Allowed Class 11 Claim will retain its lien on the City National Bank collateral and will receive, in full and final satisfaction of its Allowed Class 11 Secured Claim the City National Bank Restructured Note, which shall bear the following terms:

    1.    A restructured promissory note in the principal amount of its Allowed Class 11 Secured Claims on the Effective Date.

    2.    Interest: The interest rate will be 4.25% per annum, or such other rate of interest as is necessary to comply with section 1129(b) of the Bankruptcy Code, with interest to accrue.

    3.    Amortization: None

    4.    Maturity Date: Three (3) years from the Effective Date

    5.    Prepayment Penalty: None.

For purposes of clarification, Northlight is not receiving a lien that is senior or equal to City National's liens, but is receiving a junior lien to the liens of City National.

### III.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**     **Assumption of Executory Contracts and Unexpired Leases.**

    **1.**     **Assumption of Agreements.**

On the Effective Date, the Debtors shall assume all executory contracts and unexpired leases of the Debtors listed on the Schedule of Assumed Agreements.

The Debtors reserve the right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date to: (a) delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (b) add any executory contract or unexpired lease and provide for its assumption under the Plan. The Debtors will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to any agreement affected by the amendment.

80662-002\DOCS_LA:238951.1238951.6

1    The Confirmation Order will constitute a Court order approving the assumption, on the

2    Effective Date, of all executory contracts and unexpired leases identified on the Schedule of

3    Assumed Agreements as of the date of the Confirmation Hearing. Any executory contracts that are

4    to be assumed or assigned after the date of the Confirmation Hearing and prior to the Effective Date

5    will be the subject of a separate motion to be heard by the Court between the date of the

6    Confirmation Hearing and the Effective Date.

7    **2.    Cure Claims.**

8    Exhibit C to the Plan Supplement contains a list of proposed amounts of Cure Claims for all

9    contracts or leases scheduled to be assumed. The Debtors or the Reorganized Debtors shall pay

10   Allowed Cure Claims on or before ten days following the Effective Date, or on such other terms as

11   the parties to each such executory contract or unexpired lease may otherwise agree. In the event of

12   a dispute regarding (a) the amount of any Cure Claim, (b) the ability of the Reorganized Debtors to

13   provide "adequate assurance of future performance" (within the meaning of section 365 of the

14   Bankruptcy Code) under the contract or lease to be assumed, if applicable, or (c) any other matter

15   pertaining to assumption, the Cure Claim shall be paid promptly following the time when an order

16   resolving the dispute and approving the assumption becomes a Final Order. Pending a Final Order

17   resolving such a dispute, the applicable lease or contract shall be neither assumed nor rejected, and

18   the Reorganized Debtors may, no later than ten days following a Final Order resolving such dispute,

19   elect to reject the lease or contract subject to the dispute.

20   **3.    Objections to Assumption.**

21   Any entity who is a party to an executory contract or unexpired lease that will be assumed

22   under the Plan and that objects to such assumption or the amount of the proposed Cure Claim must

23   File with the Court and serve upon interested parties a written statement and supporting declaration

24   stating the basis for its objection. This statement and declaration must be Filed and served by no

25   later than May 23, 2011. Any entity that fails to timely File and serve such a statement and

26   declaration will be deemed to waive any and all objections to the proposed assumption of its

27   contract or lease and the amount of the proposed Cure Claim. In the absence of a timely objection

28   by an entity who is a party to an executory contract or unexpired lease, the Confirmation Order shall

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

27

1    constitute a conclusive determination as to the amount of any cure and compensation due under the

2    executory contract or unexpired lease, and that the Reorganized Debtors have demonstrated

3    adequate assurance of future performance with respect to such executory contract or unexpired

4    lease. If the Debtors amend Exhibit C to the Plan Supplement, then any entity that is a party to an

5    executory contract or unexpired lease that is affected by the amendment shall have fourteen (14)

6    days from the giving of notice of any such amendment to object to the amendment.

7            **4.    Resolution of Claims Relating to Assumed Agreements.**

8            In accordance with the procedures set forth in Section III.A.2 relating to the payment of the

9    Cure Claims with respect to executory contracts or unexpired leases that will be assumed under the

10    Plan, payment of the Cure Claim shall be deemed to satisfy, in full, any pre petition or post-petition

11    arrearage or other Claim asserted in a filed proof of Claim or listed in the Schedules, irrespective of

12    whether the amount of the Cure Claim is less than the amount set forth in such proof of Claim or the

13    Schedules. Upon the tendering of the payment of the Cure Claim, any such Claim with respect to

14    such agreement shall be Disallowed, without further order of the Court or action by any party.

15    **B.    Rejection of Executory Contracts and Unexpired Leases.**

16            **1.    Rejected Agreements.**

17            On the Effective Date, the Debtors will reject all executory contracts and unexpired leases

18    set forth on the Schedule of Rejected Agreements as well as all executory contracts and unexpired

19    leases that are not set forth on the Schedule of Assumed Agreements or on the Schedule of Rejected

20    Agreements. The Confirmation Order will constitute a Court order approving the rejection, on the

21    Effective Date, of the executory contracts and unexpired leases not previously assumed or deferred

22    under the Plan. Except as otherwise provided in this Plan or any contract, instrument, release, or

23    other agreement or document entered into in connection with this Plan, Indemnification Obligations

24    shall be rejected on the Effective Date, but only to the extent executory. Nothing in this Plan shall

25    be deemed to release the Debtors' insurers from any claims that might be asserted by counter-parties

26    to contracts or agreements providing the indemnification by and of the Debtors, to the extent of

27    available coverage. Nothing in this Plan shall be deemed to affect the parties' rights or release the

28    Debtors or the Reorganized Debtors herein from any Indemnification Obligation, whether by

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

28

1 contract or otherwise, to the extent not executory, or to affect the rights of others, if any, to object to

2 any claim relating to an Indemnification Obligation on any grounds.

3      **2.**    **Bar Date for Rejection Damage Claims.**

4      Any Rejection Damage Claim or other Claim for damages arising from the rejection of an

5 executory contract or unexpired lease under the Plan must be Filed and served upon the Plan

6 Representative and counsel to the Reorganized Debtors within thirty days after the mailing of notice

7 of the occurrence of the Effective Date. Any such Claims that are not timely filed and served will

8 be forever barred and unenforceable against the Debtors, the Reorganized Debtors, the Plan

9 Representative, the Estates, and their respective properties, and any persons or entities holding such

10 claims or claiming to have such claims, will be barred from receiving any distributions under the

11 Plan on account of such untimely claims.

12 **C.**    **Post-Petition Contracts and Leases.**

13      Except as expressly provided in the Plan or the Confirmation Order, all contracts, leases, and

14 other agreements that the Debtors entered into after the Petition Date will be retained by the

15 Reorganized Debtors.

16                                 **IV.**

17     **MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN**

18 **A.**    **Funding of the Plan; Sales and Loan Modifications.**

19      Obligations required to be satisfied in cash under the Plan on and after the Effective Date

20 will be satisfied from the Reorganized Debtors' cash on hand, the lease or sale of assets, revenues,

21 and the proceeds of the Northlight Exit Facility, substantially on the key terms and conditions

22 described below. ~~Unless such sale has been approved by unanimous vote of Reorganized ST's~~

23 ~~Board of Directors~~Following the Effective Date, Court approval will not be necessary for the

24 Reorganized Debtors to sell any of their assets or modify the terms of any of their loans.~~ In~~

25 ~~considering such approval, the Court shall apply the standards otherwise applicable to sales~~

26 ~~pursuant to Bankruptcy Code section 363(b).~~

27      **1.**    **Northlight Exit Facility.**

28      The Debtors will enter into the Northlight Exit Facility ~~(unless a higher and better proposal~~

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    is submitted by another entity pursuant to the Plan Bid Procedures) upon the Effective Date, which

2    is described in detail in the Northlight Exit Facility Term Sheet attached to the Plan as Exhibit A.

3    Under the Northlight Exit Facility, up to $~~28~~28.5 million of new senior secured indebtedness will be

4    incurred to pay off US Bank's Claims at a discount, as well as the DIP Lender's interests in the DIP

5    Facility, with the balance to be used by the Debtors in connection with the operations under the Plan

6    (the "Northlight Loan") for the following purposes (i) pay professional expenses as they relates to

7    the Cases; (ii) fund $300,000 into a segregated account for the pursuit of the Causes of Action; (iii)

8    pay for operating expenses during the liquidation of the portfolio; (iv) pay for carrying costs

9    associated with REO property in the portfolio; (v) fund an interest reserve account and operating

10   reserve account; (vi) pay for such other working capital needs of the Reorganized Debtors as may

11   be approved by Northlight from time to time; and (vii) pay for other costs and expenses associated

12   with the closing of the Northlight Exit Facility. The loans under the Northlight Exit Facility have a

13   four year term, with two one-year extensions.

14        The material terms of the Northlight Exit Facility are described in the Northlight Exit

15   Facility Term Sheet, including, but not limited to: (i) the structure of the loan depending upon

16   whether Class 2B accepts or rejects the Plan; (ii) the term of the loan; (iii) the commitment and

17   extension fee; (iv) the non-default and default interest rates, as well as amortization; (v) the cash

18   waterfall from the proceeds derived from the sale, disposition or use of the assets of the Estate,

19   including Northlight's Incentive Payment Plan as defined in Exhibit C to such term sheet

20   (Northlight does not receive an Incentive Payment based upon any litigation recoveries from the

21   pursuit of Causes of Action); and (vi) the primary terms of the Northlight Asset Management and

22   Service Agreement. The Release Price Supplement to the Northlight Exit Facility Term Sheet is

23   attached to the Plan as Exhibit B. The Northlight Exit Facility Term Sheet and the Release Price

24   Supplement to same are only summaries, and the actual terms are governed by the Northlight Exit

25   Facility and Northlight Asset Management and Service Agreement which are attached the Plan

26   Supplement. The actual release prices set forth in the chart on the Release Price Supplement and

27   the Northlight Exit Facility are redacted. The actual release prices will be provided to Creditors

28   upon the signing of a confidentiality agreement and will be filed under seal.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  In addition, the holders of claims or interests in Classes 8A, 9 and 10 will also have the

2  option to participate as lenders in the Northlight Exit Facility, in an amount up to 49% of the total

3  amount of the loan by notifying the Debtors and Northlight of their intention to participate no later

4  than 30 days prior to the scheduled closing date of the Northlight Exit Facility.  However, in the

5  event that Class 2B votes to reject the Plan, holders of Class 8A claims resulting in a deficiency

6  claim as a result of being a member of Class 2B shall not be allowed to participate as a lender in the

7  Northlight Exit Facility.

8  A draft of the proposed Northlight Exit Facility document(s) is attached to the Plan

9  Supplement as Exhibit A.

10  **B.** **Continued Corporate Existence and Vesting of Assets in Reorganized Debtors**

11  On and after the Effective Date, each of the Reorganized Debtors will continue to exist as a

12  separate corporation or a limited liability company (as the case may be depending on the entity

13  structure currently being used by each Debtor).  Such corporate or limited liability company

14  existence shall be deemed to be continued notwithstanding any provision of applicable non-

15  bankruptcy law triggering the dissolution of any business entity upon the cancellation or

16  extinguishment of all of its equity interests or the termination of the sole remaining equity interest

17  holder.

18  Except as otherwise provided in the Plan, on and after the Effective Date, all assets and

19  property of the Estates, and any property acquired by such Debtors under or in connection with the

20  Plan will vest in the applicable Reorganized Debtor free and clear of all Claims, liens, charges, other

21  encumbrances and Interests.

22  **C.** **Management of the Reorganized Debtors.**

23  **1.** **Appointment of Plan Representative; Supervisory Board.**

24  After the Effective Date, the Reorganized Debtors will be managed under normal rules of

25  corporate governance.  Further provisions regarding the governance and management of the

26  Reorganized Debtors are set forth in the Bylaws and Articles of Incorporation of ST attached to the

27  Plan Supplement.  The approval of the Plan by the ST shareholders is hereby deemed equivalent to

28  an approval of the Articles of Incorporation, as set forth in the Plan Supplement, at a special

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

31

1    meeting of stockholders.

2        **2.    Powers and Duties of the Reorganized Debtors.**

3        The Reorganized Debtors, through the Plan Representative, shall make distributions to

4    creditors consistent with the Plan and otherwise hold and liquidate all assets and property of the

5    Estates in accordance with the provisions of the Plan.   The Reorganized Debtors, the Plan

6    Representative, and the Supervisory Board shall not be required to post a bond in favor of the

7    United States.

8        The Reorganized Debtors, acting through the Plan Representative, shall have the power and

9    authority to perform the following acts, in addition to any powers granted by law or conferred by

10    any other provision of the Plan and orders of the Bankruptcy Court; provided, however, that

11    enumeration of the following powers shall not be considered in any way to limit or control the

12    power of the Reorganized Debtors or the Plan Representative, subject to the authority of the

13    Supervisory Board, to act as specifically authorized by any other provision of the Plan or orders of

14    the Bankruptcy Court, and to act in such manner as the Plan Representative may deem necessary, or

15    desirable to discharge all obligations assumed by the Reorganized Debtors as provided herein, and

16    to conserve and protect the assets of the Estates, including without limitation and by example only:

17        a.    manage all property of the Estates and to execute, acknowledge and deliver any and

18    all instruments as may be appropriate or necessary;

19        b.    make interim and final distributions of the Estates' assets to the holders of Allowed

20    Claims and Interests pursuant to the terms of the Plan;

21        c.    file objections to the allowance or priority of Claims, Administrative Expenses or

22    Interests;

23        d.    determine tax issues or liabilities in accordance with section 505 of the Bankruptcy

24    Code;

25        e.    administer the collection, prosecution, settlement, assignment, conveyance or

26    abandonment of the Causes of Action;

27        f.    file all tax and regulatory forms, returns, reports and other documents required by

28    applicable federal, state and local laws and regulations; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

32

1    g.    file suit or any appropriate motion for relief in the Court or in any other court of

2    competent jurisdiction to resolve any claim, disagreement, conflict or ambiguity in connection with

3    the exercise of its rights, powers or duties.

4    In connection with the above, the Reorganized Debtors shall, as of and after the Effective

5    Date, be a representative of the Estates pursuant to Bankruptcy Code section 1123, appointed for the

6    purposes of, among other things, pursuing the Causes of Action.  In furtherance of that objective,

7    the Reorganized Debtors shall have the rights of a trustee under Bankruptcy Code section 1106 as it

8    relates to the Causes of Action.  The Reorganized Debtors shall have the full power and authority to

9    commence, if not already commenced, prosecute, settle, assign, convey and abandon any action

10   related to the Causes of Action.    The Reorganized Debtors shall be authorized to retain

11   professionals without Court approval (which may include existing professionals retained by the

12   Committee, and which need not be "disinterested").  The reasonable professional fees (including

13   any contingency fees), expenses, and costs of such professionals are to be paid out of the assets of

14   the Reorganized Debtors.

15   **3.    Management of the Debtors' Mortgage Loan and Real Property Portfolio.**

16   The Debtors will enter into the Northlight Asset Management and Servicing Agreement in

17   substantially in the form of Exhibit B to the Plan Supplement.   The Asset Management and

18   Servicing Agreement provides for asset management services for the Debtors' real estate and

19   mortgage loan portfolio (the "Asset Manager"), and the material terms are summarized in Exhibit B

20   to the Northlight Exit Facility Term Sheet.

21   **D.    Objections to Claims or Interests.**

22   Except as otherwise provided herein (regarding allowance of Administrative Claims),

23   objections to any Claims or Interests shall be Filed and served upon the holder of the affected Claim

24   or Interest no later than the date that is the later of (a) six months after the Effective Date, unless

25   extended by the Court, and (b) six months after the date on which the affected proof of Claim or

26   Interest has been filed, unless extended by the Court.

27   **E.    Distribution of Property Under the Plan.**

28   The following procedures set forth in the Plan apply to distributions made pursuant to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

33

Plan by the Reorganized Debtors, which will make all distributions under the Plan unless otherwise provided. In connection with the Plan, to the extent applicable, the Reorganized Debtors, when making distributions under the Plan, shall comply with all tax withholding and reporting requirements imposed on them by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.

Distributions to the Old Secured Noteholders (Class 2A) and to the Old Secured Noteholders (Class 2B) shall be made to Deutsche Bank, which may deduct any fees, expenses or other charges to which it is entitled under the terms of the applicable indenture, following which Deutsche Bank shall remit any remaining distribution to the Reorganized Debtors for distribution directly to the holders of Class 2A or Class 2B Claims (or on account of any deficiency claim held by the Old Secured Noteholders or New Secured Noteholders, as applicable). Unless the Court orders otherwise, in order to give effect to the subordination provisions of the indenture governing the Unsecured Noteholders, until the Claims of the Old Secured Noteholders and the New Secured Noteholders have been paid in full, any distribution to which the Unsecured Noteholders may be entitled shall be distributed as provided above with respect to the distributions to the Old Secured Noteholders and the New Secured Noteholders. Following payment in full of the Claims held by the Old Secured Noteholders and the New Secured Noteholders distributions on account of the Unsecured Noteholders Claim shall be made to the Unsecured Noteholders Indenture Trustee to be applied in accordance with the Unsecured Noteholders Indenture.

**1.    Manner of Payments Under the Plan.**

Payments to domestic entities holding Allowed Claims will be tendered in U.S. Dollars and will be made by checks drawn on a domestic bank or by wire transfer from a domestic bank. Payments made to any foreign Creditors holding Allowed Claims may be paid, at the option of the Reorganized Debtors, as applicable, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**2.    No De Minimis Distributions.**

Notwithstanding anything to the contrary in the Plan, no payment of less than $100.00 will be made to any entity pursuant to the Plan. No consideration will be provided in lieu of the de

34

1   minimis distributions that are not made under this Section.

2         3.    **No Distribution With Respect to Disputed Claims.**

3         No payments, distributions of other property, or other consideration of any kind shall be

4   made on account of any Disputed Claim or Disputed Interest unless and until such Claim or Interest

5   becomes an Allowed Claim or Allowed Interest or is deemed to be such for purposes of distribution,

6   and then only to the extent that the Claim or Interest becomes, or is deemed to be for distribution

7   purposes, an Allowed Claim or Allowed Interest.  Unless otherwise provided herein, any holder of a

8   Claim or Interest that becomes an Allowed Claim or an Allowed Interest after the Effective Date

9   will receive its distribution within ten days from the date that such Claim or Interest becomes an

10   Allowed Claim or Allowed Interest.

11        4.    **Delivery of Distributions and Undeliverable/Unclaimed Distributions.**

12         a.    **Delivery of Distributions in General.**

13         Except as provided with respect to the Claims held by the Old Secured Noteholders, the

14   New Secured Noteholders, and the Unsecured Noteholders, the Reorganized Debtors shall make

15   distributions to each holder of an Allowed Claim or Allowed Interest by mail as follows:  (a) at the

16   address set forth on the proof of Claim or proof of Interest filed by such holder of an Allowed Claim

17   or Allowed Interest; (b) at the address set forth in any written notice of address change delivered to

18   the Plan Representative after the date of any related proof of Claim; (c) at the address reflected in

19   the Schedules if no proof of Claim or proof of Interest is filed and the Plan Representative has not

20   received a written notice of a change of address; and (d) with respect to Administrative Claims, the

21   address provided by the holder of the Claim or, if none is provided, at the address set forth in the

22   Debtors' books and records.

23        b.    **Undeliverable and Unclaimed Distributions.**

24         If the distribution to the holder of any Allowed Claim or Allowed Interest is returned as

25   undeliverable, no further distribution shall be made to such holder unless and until a Reorganized

26   Debtor, as applicable, is notified in writing of such holder's then current address.  Subject to the

27   other provisions of the Plan, undeliverable distributions shall remain in the possession of the

28   Reorganized Debtor pursuant to this Section until such time as a distribution becomes deliverable.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    All undeliverable cash distributions will be held in unsegregated, interest-bearing bank accounts for

2    the benefit of the entities entitled to the distributions.  These entities will be entitled to any interest

3    actually earned on account of the undeliverable distributions.  The bank account will be maintained

4    in the name of the Reorganized Debtor, but it will be accounted for separately.

5         Any holder of an Allowed Claim or Allowed Interest who does not assert a claim in writing

6    for an undeliverable distribution within one year after the Effective Date shall no longer have any

7    claim to or interest in such undeliverable distribution, and shall be forever barred from receiving

8    any distributions under the Plan, or from asserting a claim against the Debtors, the Estates, the

9    Reorganized Debtors or their respective property, and the Claim giving rise to the undeliverable

10   distribution will be discharged.  The Reorganized Debtors will be enabled and empowered to retain

11   all such undeliverable distributions for distribution as otherwise provided for in Debtor's Plan.

12        Nothing contained in the Plan shall require the Debtors or Reorganized Debtors to attempt to

13   locate any holder of an Allowed Claim or Allowed Interest.

14        **5.    Estimation of Disputed Claims or Interest for Distribution Purposes.**

15        The Debtors or the Reorganized Debtors, as applicable, may move, pursuant to Bankruptcy

16   Code section 502(c), for a Court order estimating any Disputed Claim or Disputed Interest.  The

17   estimated amount of any Disputed Claim or Disputed Interest so determined by the Court shall

18   constitute the maximum recovery that the holder thereof may recover after the ultimate liquidation

19   of its Disputed Claim or Disputed Interest, irrespective of the actual amount ultimately allowed.

20        **6.    Cancellation of Unsecured Notes and Unsecured Noteholders Indenture**

21        Except to the extent the notes are reinstated or unimpaired  under the Plan, as of the

22   Effective Date the notes issued under the Unsecured Noteholders Indenture together with the

23   Unsecured Noteholders Indenture shall be cancelled and deemed null and void and of no further

24   force or effect without any further action on the part of the Court, the Debtors, or any other person;

25   *provided, however,* that the cancellation of the Unsecured Noteholders Indenture: (i) shall not

26   impair the rights of the Unsecured Noteholders under the Plan; and (ii) shall not impair the rights of

27   the Unsecured Noteholders Indenture Trustee under the Unsecured Noteholders Indenture and the

28   Plan, including the right of the Unsecured Noteholders Indenture Trustee to enforce the Unsecured

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

36

1    Noteholders Indenture Trustees' lien under the Unsecured Noteholders Indenture.

2    **F.    Full Satisfaction.**

3    The Plan Representative shall make, and each holder of a Claim or Interest shall receive, any

4    distributions provided for in the Plan in full satisfaction and discharge of such Claim or Interest.

5    Such satisfaction shall not release or discharge the liability of any non-debtor entity on account of

6    such Claim, except to the extent that such liability is reduced by virtue of a distribution made

7    pursuant to the Plan.

8    **G.    Compliance with Tax Requirements.**

9    The Plan Representative shall comply with all withholding and reporting requirements

10    imposed on it by governmental units, if any, and all distributions pursuant to the Plan shall be

11    subject to such withholding and reporting requirements.

12    **H.    Setoff, Recoupment and Other Rights.**

13    Notwithstanding anything to the contrary contained in the Plan, the Debtors or the

14    Reorganized Debtors may, but shall not be required to, setoff, recoup, assert counterclaims or

15    withhold against the distributions to be made pursuant to the Plan on account of any claims that the

16    Debtors, the Estates or the Reorganized Debtors may have against the entity holding an Allowed

17    Claim; provided, however, that neither the failure to effect such a setoff or recoupment, nor the

18    allowance of any Claim against the Debtors or the Reorganized Debtors, nor any partial or full

19    payment during the Cases or after the Effective Date in respect of any Allowed Claim, shall

20    constitute a waiver or release by Debtors, the Estates or the Reorganized Debtors of any claim that

21    they may possess against such holder.

22    **I.    Conditions to Effectiveness.**

23    The Plan shall not become binding unless and until the Effective Date occurs.  The Effective

24    Date is the first Business Day on which all of the following conditions have been satisfied as set

25    forth below or waived:

26    1.    The Confirmation Order shall have become a Final Order.

27    2.    No request for revocation of the Confirmation Order under section 1144 of the

28    Bankruptcy Code has been made, or, if made, remains pending.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    3.    Each exhibit, document or agreement to be executed in connection with the Plan

2    shall be in final form acceptable to the Debtors and Northlight.

3    4.    The Northlight Exit Facility shall have closed and be in full force and effect and all

4    conditions therein to the obligations of the parties to such loans shall have been satisfied or waived

5    as set forth in the Northlight Exit Facility.

6    5.    All other agreements, writings and undertakings required under the Plan shall be

7    executed and ready for consummation.

8    6.    The Reorganized Debtors shall mail a "Notice of Occurrence of Effective Date" to

9    all Creditors and Interest holders of record as of the date of entry of the Confirmation Order upon

10    the occurrence of the Effective Date.

11    Except as specified above, the requirement that the conditions to the occurrence of the

12    Effective Date be satisfied may be waived in whole or in part, and the time within which any such

13    conditions must be satisfied may be extended by the Debtors with the consent of Northlight.

14    **J.    Authorization of Entity Action.**

15    Each of the matters provided for under the Plan or any action to be taken by or required of

16    the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided

17    herein, and shall be authorized, approved and, to the extent taken prior to the Effective Date, ratified

18    in all respects without any requirement of further action by equityholders, creditors, or managers,

19    officers or directors of the Debtors, or any of them.

20    **V.**

21    **OTHER PLAN PROVISIONS**

22    **A.    Exculpation:  No Liability for Solicitation or Prosecution of Confirmation.**

23    Conditioned on the occurrence of the Effective Date, none of the Debtors, the Estates, the

24    CRO, the ~~lenders and agent~~Committee, the lender under the Northlight Exit Facility, the DIP

25    ~~Lenders~~Lender, or any of the foregoing parties' respective Associated Released Parties shall have or

26    incur any liability to any holder of a Claim or Interest, or to one another, for any act or omission

27    occurring on or after the Petition Date through to and including the Effective Date in connection

28    with, related to, or arising out of the Cases, the pursuit of confirmation of the Plan, the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  consummation or administration of the Plan, or property to be distributed under the Plan, except to

2  the extent that the act or omission is determined by Final Order to be solely due to its own

3  respective willful misconduct or gross negligence, and in all respects, the Debtors, the Estates, the

4  CRO, the ~~lenders and agent~~Committee, the lender under the Northlight Exit Facility, the DIP

5  ~~Lenders~~Lender, or any of the foregoing parties' respective Associated Released Parties shall be

6  entitled to rely on the advice of their respective counsel with respect to their duties and

7  responsibilities during the Cases and under the Plan.

8  **B.    Revocation of Plan/No Admissions.**

9     The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.

10  Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective

11  Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the

12  Disclosure Statement will:  (a) be deemed to be an admission by the Debtors with respect to any

13  matter set forth in the Plan, including liability on any Claim or the propriety of any Claim's

14  classification; (b) constitute a waiver, acknowledgment, or release of any Claims against, or any

15  Interests in, the Debtors or the Estates, or of any claims of the Debtors or the Estates; or (c)

16  prejudice in any manner the rights of any party in any further proceedings.

17  **C.    Modifications of the Plan.**

18     The Plan may be modified at any time before or after confirmation, subject to sections 1125

19  and 1127 of the Bankruptcy Code by the Debtors.

20  **D.    Dissolution of Committee.**

21     On the Effective Date, the Committee shall be released and discharged from the rights and

22  duties arising from or related to the Cases, except with respect to final applications for

23  professionals' compensation.   The professionals retained by the Committee and the members

24  thereof shall not be entitled to compensation or reimbursement of expenses for any services

25  rendered or expenses incurred after the Effective Date except for services rendered and expenses

26  incurred in connection with any applications by such professionals or Committee members for

27  allowance of compensation and reimbursement of expenses pending on the Effective Date or timely

28  filed after the Effective Date as provided in the Plan, as approved by the Court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**E.      Exemption from Certain Transfer Taxes.**

In accordance with Bankruptcy Code section 1146(c), the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer or mortgage under the Plan (including the Northlight Exit Facility) may not be taxed under any law imposing a stamp tax or similar tax. The Confirmation Order shall direct all governmental officials and agents to forego the assessment and collection of any such tax, recording fee or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax , recording fee or other governmental assessment.

**F.      Successors and Assigns.**

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

**G.      Saturday, Sunday or Legal Holiday.**

If any payment or act under the Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**H.      Headings.**

The headings used in the Plan are inserted for convenience only and do not constitute a portion of the Plan or in any manner affect the provisions of the Plan or their meaning.

**I.      Governing Law.**

Unless a rule of law or procedure is supplied by (a) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (b) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Nevada without giving effect to the principles of conflict of laws thereof.

80662-002\DOCS_LA:238951.1238951.6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**J.**    **Form of Agreements and Documents.**

All documents and agreements to be Filed with the Court as part of the Plan or which are to become Exhibits to the Plan, the Disclosure Statement, the Plan Supplement or which are to be executed or delivered in connection with the Plan, and any revisions or amendments thereto prior to the Effective Date, shall be in form and substance acceptable to the Debtors in their sole discretion prior to any Filing, execution, delivery or amendment.

**VI.**

**EFFECT OF CONFIRMATION OF THE PLAN**

**A.**    **Discharge and Injunction.**

The rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature whatsoever arising prior to the Effective Date, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Estates and their property.

Except as otherwise provided in the Plan or the Confirmation Order, the Plan and Confirmation Order shall, on the Effective Date: (a) discharge and release the Debtors, the Estates, the Reorganized Debtors and their property to the fullest extent permitted by Bankruptcy Code sections 524 and 1141, from all Claims and Interests, including all debts, obligations, demands, liabilities, Claims, and Interests that arose before the Effective Date, and all debts of the kind specified in Bankruptcy Code sections 502(g), 502(h), or 502(i) (collectively, "Discharged Liabilities"), regardless of whether or not (i) a proof of Claim or Interest based on such Discharged Liability is filed or deemed filed, (ii) a Claim or Interest based on such Discharged Liability is allowed pursuant to Bankruptcy Code section 502, or (iii) the holder of a Claim or Interest based on such Discharged Liability has or has not accepted the Plan; (b) void any judgment underlying a Discharged Liability discharged hereunder; and (c) preclude all entities from asserting against the Debtors, the Estates, the Reorganized Debtors, or their respective property any Discharged Liability based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date.

Except as otherwise provided in the Plan or the Confirmation Order, on and after the

41

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1 Effective Date, all entities who have held, currently hold, or may hold a Discharged Liability

2 against the Debtors, the Estates, the Reorganized Debtors or their respective property that is based

3 upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to

4 the Effective Date, that otherwise arose or accrued prior to the Effective Date, or that is otherwise

5 discharged pursuant to the Plan, shall be permanently enjoined from taking any of the following

6 actions on account of any such Discharged Liability (the "Permanent Injunction"): (a) commencing

7 or continuing in any manner any action or other proceeding against the Debtors, the Estates, the

8 Reorganized Debtors or their respective property that is inconsistent with the Plan or the

9 Confirmation Order; (b) enforcing, attaching, collecting, or recovering in any manner any judgment,

10 award, decree, or order against the Debtors, the Estates, the Reorganized Debtors or their respective

11 property other than as specifically permitted under the Plan or the Confirmation Order; (c) creating,

12 perfecting, or enforcing any lien or encumbrance against the Debtors, the Estates, the Reorganized

13 Debtors or their respective property; and (d) commencing or continuing any action, in any manner,

14 in any place that does not comply with or is inconsistent with the provisions of the Plan, the

15 Confirmation Order, or the discharge provisions of Bankruptcy Code section 1141. Any entity

16 injured by any willful violation of such Permanent Injunction shall recover actual damages,

17 including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive

18 damages, from the willful violator.

19 **B.**    **Payment of U.S. Trustee Fees.**

20      The Debtors or the Reorganized Debtors shall pay all of their respective U.S. Trustee Fees in

21 accordance with Section II.B.2.

22 **C.**    **Retention of Jurisdiction.**

23      Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective

24 Date, the Court shall retain jurisdiction over the Cases after the Effective Date to the fullest extent

25 provided by law, including the jurisdiction, consistent with the Confirmation Order, to:

26      1.    Allow, disallow, determine, liquidate, classify, establish the priority or secured or

27 unsecured status of, estimate, or limit any Claim or Interest, including the claims of governmental

28 units pursuant to Section 505 of the Bankruptcy Code;

80662-002\DOCS_LA:~~238951.1~~238951.6

2.      Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.      Resolve any motions pending on the Effective Date to assume, assume and assign, or reject any executory contract or unexpired lease to which one or more of the Debtors is a party or with respect to which one or more of the Debtors may be liable and to hear, determine and, if necessary, liquidate, any and all Claims arising therefrom;

4.      Enforce or adjudicate any disputes regarding the Northlight Exit Facility, or any alternative exit facility;

5.      Ensure that distributions to holders of Allowed Claims or Allowed Interests, including but not limited to Administrative Claims, are accomplished pursuant to the provisions of the Plan;

6.      Adjudicate, determine and resolve any and all applications, motions, adversary proceedings, and contested or other matters involving the Debtors, including any relating to the Causes of Action that may be pending on the Effective Date or that may be instituted thereafter in accordance with the terms of the Plan;

7.      To effectuate, if requested by the Reorganized Debtors, any sales of assets.

8.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents entered into in connection with the Plan;

9.      Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any entity's rights or obligations in connection with the Plan;

10.     Modify the Plan before or after the Effective Date pursuant to Bankruptcy Code section 1127, or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any order of the Court, the Plan, the Disclosure Statement or any contract, instrument, release, or other agreement or document created

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    in connection with the Plan or the Disclosure Statement, in such manner as may be necessary or

2    appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

3        11.    Issue injunctions, enter and implement other orders, or take such other actions as

4    may be necessary or appropriate to restrain interference by any entity with consummation or

5    enforcement of the Plan;

6        12.    Adjudicate, determine and resolve any claims and causes of action provided for and

7    retained under the Plan or pursuant to the Confirmation Order, including the Causes of Action;

8        13.    Enter and implement such orders as are necessary or appropriate if the Confirmation

9    Order is for any reason modified, stayed, reversed, revoked, or vacated;

10       14.    Determine any other matters that may arise in connection with or relate to the Plan,

11   the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other

12   agreement or document created in connection with the Plan; and

13       15.    Enter orders closing the Cases.

14       If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over

15   any matter, this section shall have no effect upon and shall not control, prohibit, or limit the exercise

16   of jurisdiction by any other court having competent jurisdiction with respect to such matter.

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

44

## VII.

## RECOMMENDATION AND CONCLUSION

The CRO and the Debtors believe that Plan confirmation and implementation are preferable to any alternatives available to creditors and results in the greatest recovery for the greatest number of constituents under the circumstances. Accordingly, the CRO and the Debtors submit that confirmation of the Plan should be supported by creditors as the most favorable alternative.

Dated: ~~April~~May ____, 2011

PACHULSKI STANG ZIEHL & JONES LLP
Ira D. Kharasch (CA Bar No. 109084)
Victoria A. Newmark (CA Bar No. 183581)

and

DOWNEY BRAND LLP

By: /s/ Sallie B. Armstrong
    Sallie B. Armstrong (NV Bar No. 1243)
    Michelle N. Kazmar (NV Bar No. 10098)

*Attorneys for Debtors and Debtors in Possession*

Approved by:

DATED: _____, 2011

Specialty Trust, Inc.


By: _____

Its: _____


DATED: _____, 2011

Specialty Acquisition Corp.


By: _____

Its: _____

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

45

DATED: _____, 2011

SAC II


By: _____

Its: _____


DATED: _____, 2011

SAC D-1, LLC


By: _____

Its: _____


DATED: _____, 2011

By:     Grant Lyons
        Chief Restructuring Officer

_____

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Document comparison by Workshare Professional on Thursday, June 02, 2011 2:41:25 PM

**Input:**

| Document 1 ID | pcdocs://docs_la/238951/1 |
|---|---|
| Description | #238951 v1 - Second Amended Plan |
| Document 2 ID | pcdocs://docs_la/238951/6 |
| Description | #238951 v6 - Second Amended Plan |
| Rendering set | standard |

**Legend:**

| | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

**Statistics:**

| | Count |
|---|---|
| Insertions | 109 |
| Deletions | 82 |
| Moved from | 1 |
| Moved to | 1 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 193 |